# In the United States Court of Appeals for the Eleventh Circuit

---

Stefan Passantino,

*Appellant*

v.

United States of America,

*Appellee*

---

On Appeal from the United States District Court
for the Northern District of Georgia
District Court Case Number 4:23-cv-00300-ELR

---

## APPELLANT STEFAN PASSANTINO'S OPENING BRIEF

---

Jesse R. Binnall
Jared J. Roberts
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
jared@binnall.com

Bryan P. Tyson
CLARK HILL PLC
3630 Peachtree Road NE,
Suite 550
Atlanta, Georgia 30326
Tel: 678-370-4377
btyson@clarkhill.com

**COUNSEL FOR APPELLANT**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Ben-David, Neeli

Binnall, Jesse R.

Buchanan, Ryan

Flynn, Shawn M.

Jackson, A. Jonathan

Mendel, Gabriel A.

Moultrie, Jr., Richard S.

Passantino, Stefan

Roberts, Jared J.

Ross, Elanor L. Honorable

Sandoval, Andres H.

Tyson, Bryan P.

United States of America

# STATEMENT REGARDING ORAL ARGUMENT

Appellant believes oral argument would assist the Court in deciding the issues presented by this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .......................................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................. ii

TABLE OF CONTENTS .......................................................... iii

TABLE OF CITATIONS ............................................................v

STATEMENT ON SUBJECT MATTER AND  APPELLATE JURISDICTION .................................................................. xi

INTRODUCTION ................................................................ 1

STATEMENT OF THE ISSUES ................................................. 3

STATEMENT OF THE CASE .................................................... 4

SUMMARY OF THE ARGUMENT ........................................... 17

ARGUMENT ...................................................................... 19

I.    The district court abused its discretion in setting aside its entry of default and allowing the Government to file an out-of-time Answer..................................................... 19

      a.   The district court erred by finding that the Government acted in good faith............................................. 21
      b.   The district court erred in finding that setting aside default would not prejudice Mr. Passantino. ................. 25
      c.   The district court erred in finding that the Government presented meritorious defenses. ..................... 27
      d.   The district court erred in finding that public policy weighed in favor of setting aside default......................... 27

II.    The district court abused its discretion in denying Mr. Passantino's Motion for Default Judgment as moot.............28

III.   The district court erred in granting the Government's Motion for Judgment on the Pleadings. ............................................30

    a.  Because the Government did not Answer to the Complaint, judgment on the pleadings was improper. ......................30
    b.  Regardless of whether it properly considered it, the district court erred in granting the Government's motion on the merits.................................................................................34
    c.  Invasion of Privacy ...........................................42
    d.  Civil Conspiracy. ..............................................45

CONCLUSION........................................................................47

CERTIFICATE OF COMPLIANCE........................................48

CERTIFICATE OF SERVICE.................................................49

# TABLE OF CITATIONS

Cases

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009) ......................................................................24, 48

*Bartnicki v. Vopper*,

532 U.S. 514, 554-55 (2001) (Rehnquist, J., dissenting) ......................50

*Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2007) ......................................................................24, 48

*Block v. Neal*,

460 U.S. 289 (1983) ......................................................................44, 45

*Burn Hookah Bar, Inc. v. City of Southfield, Michigan*,

No. 2:19-cv-11413, 2021 WL 1546534, at *2-3 (E.D. Mich. Apr. 20, 2021)

......................................................................................................38

*Cadman v. United States*,

541 F. App'x 911, 914 (11th Cir. 2013) ................................................42

*Compania Interamericana Export-Import, S.A. v. Compania Dominicana*,

88 F.3d 948, 951 (11th Cir. 1996) ......................................................25

v

*Coon v. Grenier*,

    867 F.2d 73, 76 (1st Cir. 1989) ............................................................25

*Dormakaba USA Inc. v. Dormakaba USA Co. Inc.*,

    No. 1:21-CV-01488-JPB, 2022 WL 19930701, at *2 (N.D. Ga. June 17,

    2022) ...........................................................................................34, 35

*E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*,

    896 F.2d 524, 527–28 (11th Cir. 1990).................................................25

*Earthlink, Inc. v. Long On Am., Inc.*,

    No. 1:02-cv-1921, 2006 WL 783360, at *1 (N.D. Ga. Mar. 24, 2006)...34

*Edelen v. Campbell Soup Co.*,

    265 F.R.D. 676, 689 (N.D. Ga. 2010).....................................................34

*Feliciano v. Reliant Tooling Co.*,

    691 F.2d 653, 656 (3d Cir. 1982) ..........................................................26

*Friends Christian High School v. Geneva Financial Consultants*,

    39 F. Supp. 3d 58, 64-65 (D.D.C. 2014)...........................................51, 52

*Functional Prod. Trading, S.A. v. JITC, LLC*,

    No. 1:12-cv-0355, 2014 WL 3749213, at *11 (N.D. Ga. July 29, 2014)35

*Glover v. City of Pensacola*,

    372 Fed. Appx. 952, 954 (11th Cir. 2010) .......................................22, 26

*Greenberg v. General Mills Fun Group, Inc.,*

    478 F.2d 254, 256 (5th Cir. 1973)..........................................................47

*Horsaley v. Feldt,*

    304 F.3d 1125, 1131 (11th Cir. 2002)...................................................47

*In re Knight,*

    833 F.2d 1515, 1516 (11th Cir. 1987)...................................................28

*In re Worldwide Web Systems, Inc.,*

    328 F.3d 1291, 1295 (11th Cir. 2003)...................................................22

*Insituform Techs., Inc. v. AMerik Supplies, Inc.,*

    588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008).......................................26

*International Erectors, Inc. v. Wilhoit Erectors and Rental Service,*

    400 F.2d 465 (5th Cir. 1968)................................................................47

*Marziliano v. Heckler,*

    728 F.2d 151, 156 (2d Cir. 1984) ........................................................26

*Matthews v. Drew Chemical Corp.,*

    475 F.2d 146 (5th Cir. 1973)................................................................47

*McLaughlin v. City of LaGrange, Ga.,*

    662 F.2d 1385, 1387 (11th Cir. 1981)...................................................28

*Meehan v. Snow,*

652 F.2d 274, 277 (2d Cir. 1981) ...........................................................26

*Mitchell v. Brown & Williamson Tobacco Corp.,*

294 F.3d 1309, 1316 (11th Cir. 2002)..............................................22, 34

*Palmeri & Cay, Inc. v. Marsh & McLennan Companies,*

404 F.3d 1297, 1303, 1306, 1311 (11th Cir. 2005)................................47

*Perez v. Wells Fargo N.A.,*

774 F.3d 1329, 1335 (11th Cir. 2014).......................................22, 37, 38

*Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship,*

507 U.S. 380, 395 (1993) ......................................................................26

*Saucier v. Countrywide Home Loans,*

64 A.3d 428, 445–46 (D.C. 2013) ..........................................................51

*Sec. & Exch. Comm'n v. Newton*

No. 11-61455-CIV, 2012 WL 13005863, at *1 (S.D. Fla. Feb. 3, 2012)39

*Surtain v. Hamlin Terrace Found.,*

789 F.3d 1239, 1244–45 (11th Cir. 2015).............................................35

*United States v. One Parcel of Real Property,*

763 F.2d 181, 183 (5th Cir. 1985)..........................................................25

*United States v. One Urban Lot, Etc.,*

865 F.2d 427, 429 (1st Cir. 1989) ..........................................................25

*Wolf v. Regardie*,

   553 A.2d 1213, 1216–17 (D.C. Ct. App. 1989) ....................................48

   Statutes

28 U.S.C. § 1291 ....................................................................................vi

28 U.S.C. § 1331 ....................................................................................vi

28 U.S.C. § 1346(b)(1) ...........................................................................vi

28 U.S.C. § 2680(h) ..........................................................................25, 46

   Other Authorities

5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

   PROCEDURE § 1367 (3d ed. 2004) ..................................................41, 42

DISTRICT OF COLUMBIA OFFICE OF DISCIPLINARY COUNSEL (Feb. 2, 2024),

   https://static01.nyt.com/newsgraphics/documenttools/c3f8da0e4bae8a

   90/7ffb8cdb-full.pdf ..................................................................35

STATE BAR OF GEORGIA STATE DISCIPLINARY BOARD (Feb. 26,

   2024),https://static01.nyt.com/newsgraphics/documenttools/37252e37e

   c21f5dd/b30b04b3-full.pdf ...................................................35

   Rules

FED. R. CIV. P. 6.............................................................................23, 26

FED. R. CIV. P. 6(b)(1)(B) ...........................................................37

FED. R. CIV. P. 8(a) .................................................................49

FED. R. CIV. P. 12 ..................................................................39

FED. R. CIV. P. 12(b) .............................................................20

FED. R. CIV. P. 12(c) .........................................................24, 37

FED. R. CIV. P. 26(f) .............................................................20

FED. R. CIV. P. 55 ..................................................................39

FED. R. CIV. P. 55(b) .............................................................34

FED. R. CIV. P. 55(b)(2) .........................................................36

FED. R. CIV. P. 55(c) .........................................................23, 25

FED. R. CIV. P. 55(d).........................................................24, 35

## STATEMENT ON SUBJECT MATTER AND
## APPELLATE JURISDICTION

The district court had subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1346(b)(1) because it arises under federal law and the United States is a defendant. This Court has subject-matter jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 as it is an appeal of a final judgment.

The district court issued its Order and Judgment dismissing Mr. Passantino's claims on January 22, 2025. Docs. 45, 46. Mr. Passantino timely filed his notice of appeal on February 13, 2025. Doc. 47.

## INTRODUCTION

This case stems from a brazen abuse of governmental power that sought to demolish the impeccable reputation of Appellant, Stefan Passantino, a veteran attorney with over 30 years of distinguished service, including as Deputy White House Counsel. In a calculated and malicious campaign, the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee") flouted ethical boundaries and constitutional limits, leaking confidential details of Mr. Passantino's attorney-client relationship with a witness, Cassidy Hutchinson, to the media. These actions were not mere oversights, but rather, deliberate strikes to damage Mr. Passantino's career as an attorney.

Appellee, the United States of America (the "Government") failed to timely respond to Mr. Passantino's Complaint, despite having notice for over a year after he filed his Federal Tort Claims Act ("FTCA") administrative claim on April 10, 2023. The Government simply could not be bothered to address its egregiously wrongful conduct, as outlined in the Complaint it chose to ignore. After the requisite six-month FTCA

period lapsed and Appellant filed his Complaint in the district court, the Government continued to cavalierly ignore the Federal Rules of Civil Procedure and the norms of civil litigation in this case. It failed to establish good, or any plausibly legitimate, cause for its literal last-minute request for an extension of time, failed to meet its deadline to file a responsive pleading, and failed to establish excusable neglect or good cause for its delinquency. The Government had multiple opportunities to present good cause or excusable neglect for its actions, yet it failed to do so.

The district court's decisions were in error and an abuse of discretion, compounding the significant harm inflicted on Mr. Passantino by endorsing the Government's cavalier disregard for the procedural rules and substantive law. The district court's rulings, erroneously setting aside the Government's default, allowing an untimely answer, denying Mr. Passantino's well-founded Motion for Default Judgment, and granting the Government's flawed Motion for Judgment on the Pleadings, lent credence to the theme that has taken shape in this litigation: the Government is above the law. These rulings not only absolved the Government's year-long inaction and failure to respond to

Mr. Passantino's claims but also mischaracterized his well-pled claims for invasion of privacy and civil conspiracy as barred. Accordingly, Mr. Passantino respectfully requests that this Court reverse the district court's rulings and reinstate the Government's default, grant Appellant default judgment, or, minimally, remand for a fair adjudication of Mr. Passantino's claims.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in setting aside its entry of default.

2. Whether the district court erred in granting the United States' motion to file an out-of-time Answer.

3. Whether the district court erred in denying Mr. Passantino's Motion for Default Judgment.

4. Whether the district court erred in granting the United States' Motion for Judgment on the Pleadings, dismissing Mr. Passantino's Complaint.

**STATEMENT OF THE CASE**

1.    **Factual Background**

This matter arises under the FTCA due to acts of government officials involved with the Committee and their acts to wrongfully invade the privacy of Appellant, Stefan Passantino. From January 2017 until August 2018, Mr. Passantino served as Deputy White House Counsel, focusing on federal compliance and government ethics. Following his time in the White House, Mr. Passantino returned to private practice at the firm Michael Best & Friedrich, LLP, where he led the firm's Political Law group. Compl. at ¶ 11. In total, Mr. Passantino has been a lawyer for over 30 years, with extensive experience handling sensitive ethical, political, and legal issues for high-profile clients. *Id.*

Mr. Passantino represented multiple clients before the Committee, spanning many hours of testimony, including representing Ms. Hutchinson in three extended interviews amounting to approximately 20 hours. *Id.* at ¶ 14. The Committee first sought Ms. Hutchinson's testimony through a subpoena issued on or about November 9, 2021, and she was served on or about January 26, 2022, with a return date for documents in mid-February 2022. *Id.* at ¶ 17.

4

According to Ms. Hutchinson's testimony, she reached out to numerous lawyers but was worried about the cost to retain counsel. *Id.* at ¶ 18. She sought assistance to pay for legal counsel from multiple sources, including from Save America PAC. *Id.* Through Ms. Hutchinson's outreach, she was connected with individuals who were responsible, in part, for vetting the use of Save America PAC funds. *Id.* at ¶ 19. Specifically, Ms. Hutchinson was connected with Liz Horning, who reached out to representatives for Save America PAC, who then connected Ms. Hutchinson with Mr. Passantino through his law partners. *Id.*

Mr. Passantino treated Ms. Hutchinson no differently than any other client. *Id.* at ¶ 20. He engaged in proper protocols to ensure that there were no conflicts of interest. *Id.* Mr. Passantino did not perceive Ms. Hutchinson to have an adverse interest to any other clients; Ms. Hutchinson was merely a fact witness providing testimony. *Id.* At the time of Mr. Passantino's first meeting with Ms. Hutchinson, he was aware and operating upon the knowledge that Ms. Hutchinson had contacted Save America PAC in the hopes the PAC would retain counsel on her behalf. *Id.* Mr. Passantino was further aware and operating upon

the knowledge that members of his own firm had engaged in communications with Ms. Hutchinson about Save America PAC's agreement to pay the fees associated with his representation of her. *Id.*

Mr. Passantino made it clear in his first meeting with Ms. Hutchinson that despite the fee arrangement, he was her lawyer and owed her a duty and that the only people he could talk to about her case were his law firm partners unless he had first received her consent. *Id.* at ¶ 21. Ms. Hutchinson advised that she did not want to provide any information that was harmful to President Trump. *Id.* at ¶ 22. Mr. Passantino, however, recommended that Ms. Hutchinson should cooperate with the Committee, notwithstanding her stated reluctance to do so. *Id.* at ¶ 23.

Mr. Passantino gave Ms. Hutchinson standard lawyering instructions for a witness at a deposition or recorded interview, including but not limited to instructions not to speculate, to speak only from direct knowledge, to not seek out extraneous information in preparation for the deposition or interview, and to speak to her recollection of facts she recalled. *Id.* at ¶ 24. Mr. Passantino informed Ms. Hutchinson that she must limit her testimony to her personal knowledge. *Id.* at ¶ 25. Mr.

Passantino repeatedly reminded Ms. Hutchinson that she should not speculate about things that she did not know. *Id.* at ¶ 26. Mr. Passantino specifically informed Ms. Hutchinson not to assume parts of conversations of which she could only hear part. *Id.* Further, Mr. Passantino encouraged Ms. Hutchinson to comply with the subpoenas and to testify truthfully. *Id.* at ¶ 27. Mr. Passantino instructed Ms. Hutchinson to answer questions truthfully and honestly but not to concoct "probable answers" to questions to which she could not know or recall the answers, or which called for expert opinion evidence. *Id.* at ¶ 28. Ms. Hutchinson even testified that "Stefan never told me to lie. He specifically told me 'I don't want you to perjure yourself.'" *Id.* at ¶ 29.

Despite all of this, during Mr. Passantino's representation of Cassidy Hutchinson, the Committee took actions against Mr. Passantino that injured his property and person. *Id.* at ¶ 34. Specifically, the Committee interfered with Mr. Passantino's representation of his client and leaked private information to news agencies in order to harm Mr. Passantino and advance a preordained political and legal narrative. *Id.* These actions invaded Mr. Passantino's privacy by publicizing private information, resulting in significant damage to his personal and business

relationships as well as causing him significant emotional trauma. *Id.* The Committee maliciously concocted these actions without providing any notice or process to Mr. Passantino. *Id.*

According to Ms. Hutchinson's testimony, following her second voluntary interview, a member of the House of Representatives communicated directly with Ms. Hutchinson, knowingly bypassing her lawyer, Mr. Passantino. *Id.* at ¶ 35. According to Ms. Hutchinson, the representative told her that because Mr. Passantino was being paid by a Trump-affiliated third party he would not be advancing her interests and instead would be advancing those of former President Trump and his allies. *Id.* Ms. Hutchinson and the representative concealed their communication from Mr. Passantino. *Id.* at ¶ 36. This communication unjustifiably and baselessly undermined Ms. Hutchinson's trust in Mr. Passantino, as it was intended to do, and improperly disrupted their attorney-client relationship. *Id.*

Thereafter, upon information and belief based upon Ms. Hutchinson's sworn testimony, she, together with Congresswoman Liz Cheney and Counsel Dan George of the Committee, established a

"backchannel" of communication.[1] *Id.* at ¶ 37. Either directly or through an intermediary, Ms. Hutchinson provided information to the Committee and arranged for the Committee to summon her for a third interview. *Id.* At all times during this backchannel, the Committee was aware that it was communicating with Ms. Hutchinson, a represented party, without going through her counsel of record, and the Committee concealed those communications from Mr. Passantino. *Id.* at ¶ 38. The Committee then, in complete violation of Constitutional limitations upon its authority as a legislative body and without any semblance of due process for Mr. Passantino, attempted to set up a secret law enforcement "sting" operation in Congressional offices seeking to induce Mr. Passantino to obstruct Congress during a third interview of Ms. Hutchinson. *Id.* at ¶ 39.

On May 12, 2022, Mr. Passantino accompanied Ms. Hutchinson to a third appearance before Congresswoman Cheney and Senior Investigative Counsel George of the Committee. *Id.* at ¶ 40. Counsel for

---

[1] As attorneys, Ms. Cheney and Mr. George were aware that their actions were serious violations of the ethical rules on professional responsibility.

the Committee participated in this appearance even though it was the fruit of improper, illegal, and unethical surreptitious backchannel communications between Ms. Hutchinson and the Committee. *Id.* Following the May 12, 2022, interview, certain information about the interview was leaked. Mr. George denied responsibility for leaking information about the May 12 interview while admitting that only he, Congresswoman Cheney, and a few staff members knew it had occurred at the time. *Id.* at ¶ 42. Mr. George advised Mr. Passantino that other members of the Committee had been unaware of the May 12, 2022, interview at the time it took place. *Id.*

After the third interview, Ms. Hutchinson engaged new counsel. *Id.* at ¶ 43. Ms. Hutchinson then sat for additional Committee interviews on September 14 and 15, 2022. *Id.* at ¶ 44. Following these interviews, the transcripts of Ms. Hutchinson's September interviews, in which Mr. Passantino's representation of her was discussed, were leaked by the Committee to the news media without Mr. Passantino ever having been interviewed, notified of the allegations made against him, or given an opportunity to respond and defend his reputation. *Id.* at ¶ 45. On December 19, 2022, Pam Brown and Katelyn Polantz, reporters with

CNN, called Mr. Passantino and informed him that CNN would be publishing a piece about his representation of Ms. Hutchinson. *Id.* at ¶ 46. Ms. Brown informed Mr. Passantino that she was in possession of at least one transcript of Ms. Hutchinson's testimony and believed that the Committee would allege he had counseled Ms. Hutchinson to not answer the Committee's questions fully and honestly. *Id.* The only way that Ms. Brown and Ms. Polantz could have obtained the transcript of Ms. Hutchinson's testimony is from a member or a staffer of the Committee. *Id.* at ¶ 47. The Committee had not, at that time, officially released the transcripts of Ms. Hutchinson's testimony. *Id.* Therefore, it is clear that a member of the Committee or a staffer for the Committee, or both, had leaked this transcript to CNN to ensure maximum damage was done to Mr. Passantino's reputation and to his existing and future legal, political, and business clients. *Id.*

In sum, these interviews were wholly private yet were somehow leaked to the media, nonetheless. *Id.* at ¶ 57. The transcripts for the interviews were not publicly released until after the Committee released the final report. *Id.* at ¶ 58. Therefore, only a member or staffer of the Committee, or both, was in a position to be able to leak the transcript to

CNN. *Id.* The Committee deliberately leaked information to news media before it would have quietly become public in order to bring attention to private facts (the intimate details of Mr. Passantino's representation of Ms. Hutchinson) and, in so doing, damage Mr. Passantino. *Id.* at ¶ 70.

The actions of the Committee were so egregious that President Biden issued preemptive pardons for the Committee's members. Such an action, which protects these actors from criminal liability, implicitly calls into question the legal validity of these actions.

### 2.  Prior Proceedings

Mr. Passantino first served his FTCA claim on the House of Representatives on April 10, 2023. Doc. 22.1 at ¶ 3. The Government, therefore, had over a year to respond to Mr. Passantino's allegations. *Id.* After Mr. Passantino brought this litigation on December 20, 2023, he properly served the Government on February 14, 2024. *Id.* at ¶ 4 (citing Dkt. No. 17-1). Based on this date of service and the Federal Rules of Civil Procedure, the deadline for the Government to file an Answer or other responsive filing was April 15, 2024. *Id.* at ¶ 5.

Long after business hours on the due date of April 15, 2024, the Government sent an email at night to Mr. Passantino's counsel, seeking

consent for a seven-day extension to respond to the Complaint. *Id.* at ¶ 6.

Instead of sending the request to all counsel of record in the case, the

Government only sent the request to local co-counsel, Mr. Tyson, not to

lead counsel, and sent it while Mr. Tyson was in trial in the Northern

District and did not see the request prior to the expiration of the deadline.

*See id.* at Exhibit 1.

Later that same night, about two hours after requesting Mr.

Passantino's consent, the Government moved to extend this deadline. *See*

*id.* at ¶ 7 (citing Doc. 18). Mr. Passantino later consented to the motion

on the morning of April 16, 2024, which was noted in an amended motion

filed with the Court shortly thereafter. *Id.* (citing Doc. 19). Nevertheless,

the district court promptly denied the Government's motion by minute

order on April 16, 2024, because the movant failed to establish good

cause. *Id.*

Once the district court denied the motion Mr. Passantino had

consented to, the Government then contacted the district court's

chambers, *ex parte,* and without prior notice to Mr. Passantino's counsel,

to seek direction from the Court's staff. *Id.* at ¶ 8. The district court's staff

advised counsel to not engage in further *ex parte* communication and copied Mr. Passantino's counsel on its response. *Id.* at Exhibit 2 at 7-8.

Counsel for the parties then agreed to meet and confer to seek an agreed path forward in the litigation. *Id* at ¶ 9. During a telephone conference on April 19, 2024, the Government agreed that if Mr. Passantino would consent to it filing an Answer (and not any motion pursuant to Rule 12(b)) and if the parties agreed to hold a Rule 26(f) discovery conference on April 24, 2024, then Mr. Passantino would agree that the Government could file an Answer on or before May 3, 2024. *Id.* The Government did not circulate its proposed consent filing until 4:58 p.m. on April 23, 2024. *See id.* at Exhibit 3.

Mr. Tyson responded to that email as follows: "While we continue to consent to the relief as we previously discussed, we do not consent to the motion as drafted. We have some revisions to the motion that should be straightforward. Are you available for a call tomorrow?" *See id.* at Exhibit 4. As a result of this email, and despite the fact that the Government had already represented to the Court's staff by email that a Rule 26(f) conference would occur on April 24, 2024, the Government

decided to alter its agreement with Mr. Passantino's counsel to file only an Answer and hold a prompt Rule 26(f) conference. *See id.* at Exhibit 5.

On April 24, 2024, the district court instructed Mr. Passantino to show cause as to why his case should not be dismissed for failure to prosecute. Doc. 20. On April 25, 2024, Mr. Passantino, in compliance with this district court's Order to Show Cause, moved for the clerk to enter default against the Government. Doc. 22. The clerk entered default against the Government on April 26, 2024. Shortly before Mr. Passantino moved for default, the Government filed another motion to extend time. Doc. 21.

*After default was entered*, the Government filed several motions. First, the Government filed an Answer. Doc. 24. *Only after filing this Answer*, the Government filed a Motion to Set Aside Default. Doc. 25. After filing that motion, the Government then filed both a Motion for Judgment on the Pleadings and a Motion to Stay Discovery, all while in default. Docs. 27, 28. Mr. Passantino filed his Motion for Default Judgment on June 12, 2024. Doc. 35. On January 22, 2025, the district court set aside the default, allowed the Government to file an out-of-time Answer, denied Mr. Passantino's Motion for Default Judgment as moot,

and granted the Government's Motion for Judgment on the Pleadings. Docs. 45, 46.

### 3.    Standards of Review

Most of this Court's review of this appeal is for abuse of discretion. The district court's Order setting aside the default is reviewed for abuse of discretion. *See In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). This Court also reviews the district court's Order granting the Government's motion to file an out-of-time Answer for abuse of discretion. *See Glover v. City of Pensacola*, 372 Fed. Appx. 952, 954 (11th Cir. 2010). It is also abuse of discretion review for the district court's denial of Mr. Passantino's Motion for Default Judgment. *See Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002).

But this Court reviews the district court's Order granting the Government's Motion for Judgment on the Pleadings *de novo. See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

## SUMMARY OF THE ARGUMENT

The district court abused its discretion by setting aside the Government's default and permitting an out-of-time Answer, misapplying the "good cause" standard under Federal Rule of Civil Procedure 55(c) and the "excusable neglect" standard under Rule 6. Despite having over a year to respond to Mr. Passantino's FTCA claim, the Government waited until the last minute to seek an extension, offering inadequate excuses such as counsel's busy schedule. Its subsequent *ex parte* contact with the district court and cavalier attitude in its subsequent motions and pleadings, filed while in default, demonstrated a willful disregard for the court's procedural rules, prejudicing Mr. Passantino. In setting aside default, the district court placed the Government above the law.

Compounding these errors, the district court improperly denied Mr. Passantino's Motion for Default Judgment as moot. Mr. Passantino's Complaint sufficiently pleaded invasion of privacy and civil conspiracy, supported by allegations of the Government's unethical interference and leaking of private information, meeting the requirements for default

judgment against the United States under Rule 55(d). These rulings effectively shielded the Government from accountability for its actions, which were designed to damage Mr. Passantino's reputation for political purposes.

Finally, the district court erred in granting the Government's Motion for Judgment on the Pleadings, which was both procedurally and substantively defective. Procedurally, the motion was improper because the Government's Answer, filed while in default and before seeking leave, was inoperative, leaving the pleadings unclosed under Rule 12(c). Substantively, the district court misapplied 28 U.S.C. § 2680(h), wrongly categorizing Mr. Passantino's claims as barred by the libel or slander exceptions when the claims actually address the content-neutral dissemination of private information. Additionally, the district court incorrectly found that Mr. Passantino failed to state claims despite his allegations meeting the requisite pleading standards by detailing the release of private facts not of public concern and a conspiracy with media to harm him. Mr. Passantino seeks reversal of these rulings, reinstatement of the default, granting of his default judgment motion, or,

at minimum, remand for further proceedings to ensure justice for the harm inflicted by the Government's actions.

## ARGUMENT

I.  **The district court abused its discretion in setting aside its entry of default and allowing the Government to file an out-of-time Answer.**

Federal Rule of Civil Procedure 55(c) grants courts discretion to set aside an entry of default for good cause. *See also E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 527–28 (11th Cir. 1990). "'Good cause' is a mutable standard, varying from situation to situation." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana*, 88 F.3d 948, 951 (11th Cir. 1996) (quoting *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989)). While the standard is liberal, it is "not so elastic as to be devoid of substance." *Id.* (quoting *Coon,* 867 F.2d at 76). Common factors to consider are "whether the default was [culpable or] willful, whether setting it aside would prejudice the adversary, and whether [the defaulting party] presents a meritorious defense. . ." *Id.* (citing *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir. 1985); accord *United States v. One Urban Lot, Etc.*, 865 F.2d 427, 429 (1st Cir. 1989) (citing treatise); *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir.

1984) (citing further authority); *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981); cf. *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982) (similar; removal of default judgment)).

While public policy favors deciding cases on the merits, defendants still bear the burden on a motion to set aside default to establish good cause. *Insituform Techs., Inc. v. AMerik Supplies, Inc.*, 588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008). Here, the district court erred in finding that the Government met its burden.

Similar to this standard, a motion for an extension of time under Federal Rule of Civil Procedure 6 requires excusable neglect. *Glover v. City of Pensacola*, 372 Fed. Appx. 952, 955 (11th Cir. 2010). This involves a four-prong test: (1) the danger of prejudice to the opposing party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.* at 955 n.6 (citing *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship,* 507 U.S. 380, 395 (1993)). Taking in turn the motion to set aside factors, in combination with the excusable neglect factors, the district

court erred in setting aside default and allowing the Government to file an out-of-time Answer.

> a.   The district court erred by finding that the Government acted in good faith.

The district court found that the Government acted in good faith because, in its view, the United States acted promptly to cure the default. Doc. 45 at 10–11. While the Government made multiple filings while in default, this should have been weighed against the fact that Mr. Passantino submitted his Form 95, detailing his claims, over a year before the Government went into default. The Government had an entire year to weigh Mr. Passantino's claims, however, its first motion to extend was filed only hours after making its *first attempt at contact* following this year-long period. This first attempt at contact, on the last day of the responsive deadline, was a single email to a single local counsel representing Mr. Passantino, late on the night it was due. The Government did not see fit to email all of the listed counsel, nor did it see fit to make a single phone call. Such conduct is hardly good faith.

The district court's ruling also ignores that the Government did not have good reason for its delay, as necessary for allowing the filing of the

out-of-time Answer. As this Court has held, "the setting aside of a default judgment where no good reason has been offered for the default constitutes an abuse of discretion." *In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987). This Court found that a counsel's "oversight" did not constitute excusable neglect. *Id*. Therefore, this Court concluded, "the interests of justice will be better served by enforcing the rule of procedure than by allowing this case to proceed on the merits." *Id*. This Court has further found that "[t]he fact that counsel has a busy practice does not establish 'excusable neglect' under Rule 6(b)." *McLaughlin v. City of LaGrange, Ga.*, 662 F.2d 1385, 1387 (11th Cir. 1981).

The primary argument that the Government advanced in support of its motion to extend was that its legal counsel was too busy to finish the brief in time. Doc. 21 at 3 (stating that counsel had just returned from parental leave and was faced with multiple deadlines). As noted above, this is decidedly *not* good cause. This Court was forceful and clear in its determination in this regard.

The only additional reasons that were offered were that it was difficult to get in touch with the Members of Congress involved in this Complaint. Doc. 22 at 3. This, however, is plainly another way of

presenting that counsel was too busy and unprepared for this litigation. This is not good cause.

Therefore, the reason for the delay weighs against a finding of either good cause or excusable neglect. Under this Court's precedent, it was an abuse of discretion to set aside default where the only reason proffered for doing so was "oversight" and a busy schedule.

Furthermore, the record evinces that the Government acted willfully and not in good faith. Regarding its procedural sins, the Government blithely stated it "sought an extension—albeit on the same day as the filing deadline." Doc. 21 at 4. This is taking almost no responsibility for acting so cavalierly. In its Motion to Set Aside, while offering slightly more, the Government still denies any responsibility for the denial of its previous motion. Doc. 25-1 at 4 (claiming that its revised motion to extend time cures its prior lack of good cause). Even if the Government had good cause, the inability to recognize other attendant issues that arise by asking for an extension at the literal eleventh hour weighs in favor of a finding that the Government did not act in good faith, but rather, acted willfully.

The remainder of the Government's argument as to good faith amounted to a single statement: "there was no intent to gain an advantage." Doc. 21 at 4. The Government presented no additional argument beyond this simple statement. This is facially insufficient as it is an unsupported allegation of fact with no affidavit or other support. Indeed, there is not even a single well-reasoned argument offered in support of the assertion. Quite frankly, that is because none exists.

The Government's willful conduct did not cease with default. After denial of its original motion to extend, the Government contacted the Court *ex parte*. The Government then filed pleadings and motions while in default, without waiting for a ruling on its Motion to Set Aside. The Government evinced a total disregard for the rules of civil litigation. It started with the Government's blasé attitude towards seeking consent for a motion to leave and culminated in multiple filings while in default. Frankly, it was an abuse of discretion to find that any of the Government's conduct amounted to good faith.

The Government's actions, which evince a total lack of respect for the rules of civil procedure and common courtesy, show that the Government does not believe it is bound by the same rules as other

parties. Rather, it brazenly claimed that stating an opposing party had consented, when it actually had not, was a simple "typographical error," and then filed an Answer, Motion for Judgment on the Pleadings, and Motion to Stay, despite being in default.

### b. The district court erred in finding that setting aside default would not prejudice Mr. Passantino.

Contrary to the district court's conclusion, setting aside default did cause Mr. Passantino prejudice. The district court's assertion that because the proceedings were only delayed two weeks, Mr. Passantino is not prejudiced, fails to account for the record as a whole. Doc. 45 at 11.

As outlined in the Complaint, the Government recklessly and deliberately tried to destroy the career of a highly respected and accomplished 30-plus year attorney with an unblemished record in order to advance a baseless narrative. The Government did so because he happened to have worked in President Trump's White House and was faithfully and diligently representing his client, who needed counsel after being called before the Committee. The Government could not be bothered with any of the damages caused to Mr. Passantino and chose to ignore Mr. Passantino's FTCA claim during the requisite six-month

window prior to Mr. Passantino being permitted to file in the district court. The Government further ignored the litigation for months thereafter until the literal last minute when an answer or responsive pleading was required. Thus, setting aside default in the wake of these facts and circumstances would indicate to the Government, and to the public, that it is perfectly acceptable conduct to run roughshod over anyone, personally and professionally, and treat their case as noise for over a year, without consequence.

To be sure, Mr. Passantino has been significantly prejudiced by virtue of the Government's conduct, as further reflected, in part, by the numerous false and defamatory articles published by the media and by virtue of organizations conspiring to attack and besmirch Mr. Passantino's character.[2] It would demonstrate that the Government is

---

[2] On March 6, 2023, Lawyers Defending American Democracy, Inc., and 36 co-signatories, filed a bar complaint with the District of Columbia bar association. On February 15, 2023, The 65 Project filed a bar complaint with the State Bar of Georgia. Both of those baseless complaints were dismissed without discipline. *See* DISTRICT OF COLUMBIA OFFICE OF DISCIPLINARY COUNSEL (Feb. 2, 2024), https://static01.nyt.com/newsgraphics/documenttools/c3f8da0e4bae8a90/7ffb8cdb-full.pdf; STATE BAR OF GEORGIA STATE DISCIPLINARY BOARD (Feb. 26, 2024),

treated favorably despite its behavior during all of this harrowing experience. If ever there was a case which does not warrant setting aside default, this is that case.

### c. The district court erred in finding that the Government presented meritorious defenses.

The district court found that the Government presented meritorious defenses because such defenses entirely resolve this case. As explained in detail below in Section III, however, that is not the case. Instead, this conclusion relies on a misreading of Mr. Passantino's Complaint.

### d. The district court erred in finding that public policy weighed in favor of setting aside default.

Finally, the district court set aside default on the grounds that it was in the public interest to have the case decided on the merits, and default served its purpose by getting the Government to respond. Doc. 45 at 12–13. This, however, ignores, as discussed, that the Government did not present any good reason for its delay and did not act in good faith.

---

https://static01.nyt.com/newsgraphics/documenttools/37252e37ec21f5dd/b30b04b3-full.pdf.

Instead, setting aside default sends a message that the Government is above the law simply by virtue of being the Government. Such a message is contrary to public interest. Accordingly, the district court abused its discretion in setting aside the Government's default and allowing it to file its out-of-time Answer.

## II. The district court abused its discretion in denying Mr. Passantino's Motion for Default Judgment as moot.

"[E]ntry of a default judgment is appropriate when a party against whom a judgment for affirmative relief is sought has failed to timely plead or otherwise defend and that fact is made to appear by affidavit or otherwise." *Edelen v. Campbell Soup Co.*, 265 F.R.D. 676, 689 (N.D. Ga. 2010) (citing FED. R. CIV. P. 55(b); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1316 (11th Cir. 2002)). "The court may grant default judgment [only] on those claims brought by Plaintiff[s] that are legally sufficient and supported by well-pleaded allegations." *Dormakaba USA Inc. v. Dormakaba USA Co. Inc.*, No. 1:21-CV-01488-JPB, 2022 WL 19930701, at *2 (N.D. Ga. June 17, 2022) (quoting *Earthlink, Inc. v. Long On Am., Inc.*, No. 1:02-cv-1921, 2006 WL 783360, at *1 (N.D. Ga. Mar. 24, 2006); *see also Functional Prod. Trading, S.A. v.*

*JITC, LLC*, No. 1:12-cv-0355, 2014 WL 3749213, at *11 (N.D. Ga. July 29, 2014) (stating that "a default judgment cannot stand on a complaint that fails to state a claim")). Therefore, at least in concept, "a motion for default judgment is like a reverse motion to dismiss for failure to state a claim, and Plaintiff must show that the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face against Defendants." *Dormakaba USA Inc.*, 2022 WL 19930701, at *2. (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015)) (internal quotation marks omitted).

Federal Rule of Civil Procedure 55(d) provides, "[a] default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court." While Rule 55(d) limits a court's ability to enter a default judgment against the United States, it does not prohibit it.

As discussed below, Mr. Passantino sufficiently pled invasion of privacy and civil conspiracy. Accordingly, because it was an abuse of discretion to set aside default, and Mr. Passantino sufficiently pled a claim, the district court abused its discretion in denying Mr. Passantino's

Motion for Default Judgment. Mr. Passantino even offered to have an evidentiary hearing in which he would present additional evidence that:

> [D]uring the course of Mr. Passantino's representation of Ms. Hutchinson, Defendant interfered in the attorney-client relationship by going behind Mr. Passantino's back to communicate with Ms. Hutchinson, in violation of clear ethics rules, and then convinced Ms. Hutchinson to testify to the January 6th Committee without Mr. Passantino's knowledge, and then published private information about Mr. Passantino's representation of Ms. Hutchinson to various media companies.

Doc. 35.1 at 6 n.1. Importantly, Rule 55 allows for such hearings to take place. *See* FED. R. CIV. P. 55(b)(2). Minimally, it was an abuse of discretion to deny Mr. Passantino the opportunity to present evidence of his case.

## III. The district court erred in granting the Government's Motion for Judgment on the Pleadings.

### a. Because the Government did not Answer to the Complaint, judgment on the pleadings was improper.

Because it was an abuse of discretion for the district court to set aside default and allow the Government's out-of-time Answer, the Government's Motion for Judgment on the Pleadings was procedurally improper. This is especially true considering that the Government filed its Answer *before* moving for an extension of time. Federal Rule of Civil

Procedure 6(b)(1)(B) requires a motion to file an out-of-time pleading. The Government, however, filed its Answer before any such motion, rendering the Answer inoperative. The district court granted the eventual motion for extension. But that does not matter because it was an error to accept the previously filed Answer as the operative Answer. The Answer was improperly filed before the motion for an extension of time was filed or resolved. Furthermore, there certainly was not an operative Answer when the Government filed its Motion for Judgment on the Pleadings, which is a prerequisite for such a motion. Therefore, the Government could not be entitled to judgment on the pleadings without having filed an operative Answer.

Federal Rule of Civil Procedure 12(c) provides "a means of disposing of cases when ... a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings...." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (3d ed. 2004) (emphasis in original)).

In *Perez*, Wells Fargo obtained an entry of default on its counterclaim against the plaintiff, Perez. *Perez*, 774 F.3d at 1335.

Thereafter, Wells Fargo moved for judgment on the pleadings. *Id.* Importantly, Perez had not yet filed an answer because Perez was in default. *Id.* at 1336 (citing 5C CHARLES AAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 at n. 10 (3d ed. 2004) (compiling case law demonstrating that judgment on the pleadings is proper only after the defendant has answered)).

Under Rule 12(c), "the pleadings do not 'close' until an answer has been filed." *Id.* The Eleventh Circuit again emphasized this on the following page, holding: "When a defendant fails to answer, Rule 12(c) precludes a judgment on the pleadings because the pleadings have not yet closed, and competing pleadings do not exist." *Id.* at 1337. Because failure to respond means pleadings have not closed, evaluation of a motion for judgment on the pleadings is premature. *Id.* at 1339. *See also Burn Hookah Bar, Inc. v. City of Southfield, Michigan*, No. 2:19-cv-11413, 2021 WL 1546534, at *2-3 (E.D. Mich. Apr. 20, 2021) (holding that the court could not consider a motion for judgment on the pleadings while the defendant was in default because the defendant had not properly filed an answer, so the pleadings were not closed). This also comports with the Federal Rules of Civil Procedure, which specify a procedure when a party

is in default, including seeking default judgment rather than seeking judgment on the pleadings. *See* FED. R. CIV. P. 12, 55.

The same logic applies here. Because there was not an operative, legally effective Answer, and therefore, there was not competing pleadings in compliance with the rules of practice and procedure, it was an error to grant judgment on the pleadings. While the Government belatedly attempted to file an Answer, it was plainly inoperative because it was filed while in default, the default had not been set aside, and it was even filed before any motion to set aside. A similar situation was presented in *Sec. & Exch. Comm'n v. Newton*. There, the defendant filed an Answer while in default and without leave, just as the Government did in this case, and the Southern District of Florida granted the plaintiffs' motion to strike because the defendant "was not entitled to file an Answer." *Sec. & Exch. Comm'n v. Newton*, No. 11-61455-CIV, 2012 WL 13005863, at *1 (S.D. Fla. Feb. 3, 2012).

In this case, default had already been entered, thereby effectively removing the Government's ability to file an Answer, and requiring approval from the Court to make such a filing. Therefore, it is a matter of fact and procedure that pleadings had not closed in this case to the

extent of serving as a basis for a purported Motion for Judgment on the Pleadings, and it was an error for the district court to consider the motion.

Accordingly, the district court erred in granting the Government's Motion for Judgment on the Pleadings. First, the district court abused its discretion in allowing the Government to file its out-of-time Answer. Second, once the motion was granted, there was no subsequently filed operative Answer. Third, the Government's Motion for Judgment on the Pleadings was procedurally improper because when it filed the motion, there was no operative answer on file.

       **b.**    **Regardless of whether it properly considered it, the district court erred in granting the Government's motion on the merits.**

Even if the district court did not err in considering the Government's Motion for Judgment on the Pleadings, the district court erred in granting the motion. First, the district court erred in finding that 28 U.S.C. § 2680(h) bars Mr. Passantino's claims. Second, the district court erred in finding that Mr. Passantino failed to state a claim.

### 1. The district court erred in finding that Mr. Passantino's claims are barred by 28 U.S.C. § 2680(h)

Section 2680(h) provides the United States with immunity from claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Importantly, this does not include Appellant's claims of invasion of privacy or civil conspiracy. Any finding to the contrary requires a misreading of the Complaint.

A plain reading of the Complaint specifically states that the Government leaked "wholly private" interviews to the media in an attempt to harm Mr. Passantino by invading his attorney-client relationship with Ms. Hutchinson. Compl. at ¶¶ 57, 69, 72, 82, 83. As the Complaint explains, through Cassidy Hutchinson's outreach, she got in touch with Mr. Passantino, who began representing her before the Committee. Compl. at ¶ 19. Mr. Passantino immediately gave Ms. Hutchinson standard and appropriate legal advice before testifying. *Id.* at ¶¶ 20-33. This relationship, as well as the confidential internal discussions, instructions, and advice, were privileged.

The transcripts discussing this relationship were not available to the public and could have only been leaked by an employee or agent of the Government. *Id.* at ¶ 58. Specifically: "The Committee deliberately leaked information to news media, immediately before it would have quietly become public, in order to bring attention to private facts and, in doing so, damage Mr. Passantino." *Id.* at ¶ 70. Importantly, as with every other attorney-client relationship, the public had no interest in the attorney-client relationship between Mr. Passantino and Ms. Hutchinson. *Id.* at ¶ 69.

The district court erred in finding that Mr. Passantino's claims arose from libel and/or slander, improperly finding *Cadman v. United States* analogous. Doc. 45 at 18 - 20. *Cadman*, however, is not instructive here because there was no discussion regarding the release of private information. Rather, the plaintiff there merely attempted to argue the statement was not defamation because the information was not false. *Cadman v. United States*, 541 F. App'x 911, 914 (11th Cir. 2013). But as explained above, Mr. Passantino's harm stems from the release of private information, not defamatory remarks. While Mr. Passantino reserves the

right to contest the truth or falsity of the Government's statements writ large, he understands that this is not the forum for such a contest.

Contrary to the district court's assertion that Mr. Passantino's claims rely on the information being false, this is not so. Doc. 45 at 19. The elements to prove defamation and invasion of privacy are distinct. While they do overlap in some regards, the information that is necessary to prove the elements of each are different. Here, Mr. Passantino will be seeking the details and contents of the communications between Congress and outside third parties, such as CNN, not because of any potentially defamatory content, but rather, primarily because of the details regarding the information transmitted itself, regardless of content.

Discovery would include seeking the communications and will request information from individuals about with whom they communicated, exactly when those communications were made, the identities of all individuals involved in any way in conspiring to make such communications and what the content of those communications were regarding Mr. Passantino's personal nonpublic information. This is a content-neutral inquiry and is completely unlike defamation, which

would require a context-intensive inquiry. Thus, while Mr. Passantino may very well have had a claim for defamation against the Government, Mr. Passantino recognizes that Congress is immune from defamation. That's why he did not bring such a claim. Instead, he is seeking recovery for the invasion of privacy and dissemination of his personal nonpublic information that was in the possession of Congress, which Congress conspired to give to CNN. It was CNN that used the information to lie and defame him.

In many ways, this case resembles *Block v. Neal*, 460 U.S. 289 (1983). In *Block*, the court denied the United States' motion because it found that the plaintiff pleaded an injury that was independent from an exempt claim the plaintiff brought and the otherwise immune claim. *Id.* The same can be said for this case.

Specifically, in *Block*, the plaintiff utilized a government program for financial and technical support in home buying. *Id.* at 290. After construction was completed on the home that the plaintiff had financed to buy, a government employee performed an inspection and found no defects. *Id.* at 292. Shortly after moving in, however, the plaintiff found significant defects and sued the government for negligence based on its

inspection of the home. *Id.* The government argued the claim really arose out of misrepresentation, not negligence, and, therefore, it was immune pursuant to § 2680(h). *Id.* at 294. The Supreme Court discussed the differences between misrepresentation and negligence and found that because there were misstatements, the plaintiff could have had a misrepresentation claim if not for the government's immunity. *Id.* at 297. But that did not end the plaintiff's claim for negligence, which did not rely on any misrepresentations, and instead relied on a different government breach of duty. *Id.* Therefore, the negligence claim did not arise out of a claim for misrepresentation and remained actionable. *Id.* Simply because the plaintiff had a claim for misrepresentation did not mean she was barred from pursuing a different claim arising out of other aspects of the government's conduct. *Id.*

This case, like *Block*, involves a distinct set of conduct different from defamation. As discussed, Mr. Passantino brought this suit because the Government conspired and disseminated private information, not because the Government defamed him (even though it did).

The district court found *Block* inapposite because it found that Mr. Passantino's harm was "wholly attributable" to the Government's

defamatory statements. As alleged, however, the Government, through its agents, conspired with the media to disseminate private information that would not have otherwise been public. Compl. at ¶ 89. It is the release of this private information that caused Mr. Passantino harm, which is distinguishable from any harm Mr. Passantino suffered as a result of defamation. At the very least, it is premature to find that *all* the statements released were defamatory as opposed to private information before any discovery has been conducted.

The underlying governmental conduct is not any defamatory statement, but rather, is the content-neutral dissemination of Mr. Passantino's personal nonpublic information. While the statements that disseminated that information may be defamatory, Mr. Passantino is not seeking recovery for the defamatory elements of the statements. Accordingly, the district court erred in finding that Mr. Passantino's claims are based in defamation and are barred.

### 2. *The district court erred in finding that Mr. Passantino failed to state a claim.*

Furthermore, Mr. Passantino pleaded a claim for invasion of privacy and civil conspiracy. "Judgment on the pleadings is appropriate

where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Palmeri & Cay, Inc. v. Marsh & McLennan Companies*, 404 F.3d 1297, 1303, 1306, 1311 (11th Cir. 2005). The existence of any disputed issue of material fact precludes the entry of judgment on the pleadings. *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973) (citing cases). Where the court finds that there is ambiguity that can only be clarified by the introduction of evidence, it should not enter judgment on the pleadings. *Id.* (citing *Matthews v. Drew Chemical Corp.*, 475 F.2d 146 (5th Cir. 1973); *International Erectors, Inc. v. Wilhoit Erectors and Rental Service*, 400 F.2d 465 (5th Cir. 1968).

On a motion for judgment on the pleadings, courts must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *Horsaley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002). Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* That standard is not met here.

### c.  Invasion of Privacy

A claim for invasion of privacy claim has five elements: "1) publicity; 2) absent waiver or privilege; 3) given to private facts; 4) in which the public has no legitimate concern; and 5) which would be highly offensive to a reasonable person of ordinary sensibilities." Dkt. No. 27 at 15 (citing *Wolf v. Regardie*, 553 A.2d 1213, 1216–17 (D.C. Ct. App. 1989)). The district court found that Mr. Passantino failed to plead the third, fourth, and fifth elements, but that was wrong.

First, the released information included private facts. The district court found that Mr. Passantino did not sufficiently plead what private information from his representation of Ms. Hutchinson that the Government disclosed. This, however, is contrary to the *Twombly* and *Iqbal* standards. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As alleged, the transcripts from the Committee hearings, which contained information relating to the details of Mr. Passantino's representation of Ms. Hutchinson, were not publicly available, yet the Government released the transcripts, nonetheless, to bring attention to the private facts relating to the representation. Compl. at ¶¶ 58, 70. Mr.

Passantino's representation of and advice to Ms. Hutchinson was, at that time, private. The Government, however, disclosed that representation, as well as the details of it and the advice given. Mr. Passantino was not required to allege every statement between the Government and another person with specificity—that is what discovery is for.

Rather, as outlined by Federal Rule of Civil Procedure 8(a) and the *Twombly* and *Iqbal* standards, Mr. Passantino was required to plead a short and plain statement of his entitlement to relief that plausibly alleges each element of his claim. On a motion for judgment on the pleadings, the relevant question is whether there is a material fact in dispute. At that stage in the pleadings, Mr. Passantino pleaded that the Government, through its agents, disseminated his private information to the media, resulting in damage to Mr. Passantino. This may not have been through the leaking of the transcripts. Instead, it may have been through direct conversations between agents of the Committee and outside third parties. Only discovery will bear out the actual facts here, but this tie goes to the non-moving party because the non-moving party has properly pled that agents of the Committee did leak personal and private information about Mr. Passantino.

Second, the intimate details of Mr. Passantino's representation of Ms. Hutchinson was not a matter of public concern, which is also pleaded. Compl. at ¶¶ 69, 82. And third, the release of this information was highly offensive to a reasonable person. The district court found that both of these elements failed because Mr. Passantino did not sufficiently plead the third elements, detailing the private facts. Doc. 45 at 29–30. As discussed above, however, Mr. Passantino met his burden.

As noted by Chief Justice Rehnquist, along with Justices Thomas and Scalia, "[e]ven where the communications involve public figures or concern public matters, the conversations are nonetheless private and worthy of protection." *Bartnicki v. Vopper*, 532 U.S. 514, 554-55 (2001) (Rehnquist, J., dissenting). The same logic applies here in that intimate details of Mr. Passantino's representation of Ms. Hutchinson, as in all attorney-client relationships, were not a matter of public concern.

Furthermore, releasing information relating to the details of Mr. Passantino's representation of Ms. Hutchinson is highly offensive to a reasonable person. The fact that the Government released private information about an attorney-client relationship was highly offensive. Minimally, this remains a question for the jury. Accordingly, Mr.

Passantino properly stated a claim for invasion of privacy, and the district court erred in finding the contrary.

### d. Civil Conspiracy.

As for civil conspiracy, this claim has three elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme." *Friends Christian High School v. Geneva Financial Consultants*, 39 F. Supp. 3d 58, 64-65 (D.D.C. 2014) (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 445–46 (D.C. 2013)). The district court found that Mr. Passantino failed to state a claim for conspiracy because he did not plead an underlying tort. Doc. 45 at 30–31. The district court erred in coming to this conclusion because, as described above, this is not so.

Furthermore, Mr. Passantino satisfactorily pled his conspiracy claim. In *Friends Christian High School*, the court found the following to be satisfactory at the pleading stage:

> Lezell, Geneva and Ghosh "formed an agreement between and among themselves to withhold the escrowed funds and provide false and misleading information regarding their

ability to obtain construction financing for [FCHS's] project" (¶ 32), "agreed, in violation of any agreements of the parties, to use escrowed funds for impermissible purposes and to withdraw those funds prior to those funds being earned" (¶ 33), "misl[ed] [FCHS] as to their ability to obtain financing" and "their relative qualifications/background" (¶ 34), "took possession of escrow funds in advance of those funds being earned" (¶ 34), and "materially withheld information related to the location and status of those funds" (¶ 34), acting "[a]t all time ... in furtherance of the common scheme or plan to defraud [FCHS] of the escrow funds." (¶ 35.)

*Id.* Here, Mr. Passantino's allegations are similar. Specifically, he pled that the Government worked with unknown co-conspirators and media companies to invade Mr. Passantino's privacy. Compl. at ¶¶ 74, 89. That they had the common goal to harm Mr. Passantino's law practice. *Id.* And that in furtherance of this plan, the media disseminated this private information, which would have otherwise not become a news story, and it harmed Mr. Passantino. *Id.* at ¶¶ 89, 90. There was no way for the media companies to have the information but for working in concert with the Government. *Id.* at ¶¶ 47, 55, 56, 57, 58. Thus, as was the case in *Friends Christian High School*, Mr. Passantino pleaded each element, satisfying his burden.

## CONCLUSION

For the foregoing reasons, Appellant, Stefan Passantino, respectfully requests that this Court reverse the district court's rulings setting aside default and allowing an out-of-time Answer, denying Mr. Passantino's Motion for Default Judgment, and granting the Government's Motion for Judgment on the Pleadings.

Dated: April 30, 2025

Respectfully, submitted

*/s/    Jesse R. Binnall*
Jesse R. Binnall
Jared J. Roberts
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
jared@binnall.com

Bryan P. Tyson
CLARK HILL PLC
3630 Peachtree Road NE
Suite 550
Atlanta, Georgia 30326
Phone: 678-370-4377
btyson@clarkhill.com

*Counsel for Appellant*
*Stefan Passantino*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this Petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1), as well as 11th Cir. R. 32-4, excluding the parts of the Petition exempted by Federal Rule of Appellate Procedure 32(f), it contains 9,131 words.

Undersigned counsel certifies that this Petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century font.

Dated: April 30, 2025                    Respectfully submitted,

*/s/ Jesse R. Binnall*
Jesse R. Binnall

*Counsel for Appellant*
*Stefan Passantino*

**CERTIFICATE OF SERVICE**

I certify that on April 30, 2025, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ *Jesse R. Binnall*
Jesse R. Binnall

*Counsel for Appellant*
*Stefan Passantino*