# United States Court of Appeals

*for the*

# Eleventh Circuit

STEFAN PASSANTINO,

*Plaintiff-Appellant,*

— v. —

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA IN NO. 4:23-CV-00300-ELR
(HONORABLE ELEANOR LOUISE ROSS)

## APPENDIX

BRYAN P. TYSON
CLARK HILL PLC
3630 Peachtree Road NE, Suite 550
Atlanta, Georgia 30326
(678) 370-4377
btyson@clarkhill.com

JESSE R. BINNALL
JARED J. ROBERTS
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
(703) 888-1943
jesse@binnall.com
jared@binnall.com

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

**TAB DS** – District Court Docket Sheet ................................................................... 1

**TAB 1** – Complaint
              Filed December 20, 2023 ............................................................. 7

**TAB 18** – Motion for Extension of Time to File Answer with Brief in Support
     by the United States of America
              Filed April 15, 2024 .................................................................. 33

**TAB 19** – Amended Motion for Extension of Time to File Answer with Brief
     in Support by the United States of America
              Filed April 16, 2024 .................................................................. 39

**TAB 20** – Order to Show Cause
              Filed April 24, 2024 .................................................................. 45

**TAB 21** – Motion for Extension of Time to File Answer with Brief in Support
     by the United States of America
              Filed April 25, 2024 .................................................................. 47

**TAB 22** – Motion for Clerks Entry of Default by Stefan Passantion
              Filed April 25, 2024 .................................................................. 56

**TAB 22-1** – Declaration of Jesse R. Binnall in Support of Plaintiff's Motion
     for Clerk's Entry of Default
              Filed April 25, 2024 .................................................................. 60

**TAB 24** – Answer to Complaint by the United States of America
              Filed April 29, 2024 .................................................................. 64

**TAB 25** – Motion to Set Aside Default with Brief in Support by the
     United States
              Filed April 29, 2024 .................................................................. 81

**TAB 25-1** – Memorandum in Support
              Filed April 29, 2024 .................................................................. 85

i

**TAB 35 –** Motion for Default Judgment as to the United States of America
Filed June 12, 2024 .......................................................................... 98

**TAB 35-1 –** Brief Memorandum in Support of Default Judgment
Filed June 12, 2024 ........................................................................ 101

**TAB 45 –** Order Granting the United States Construed Motion to File
an Out-of-Time Answer
Filed January 22, 2025 ................................................................... 127

**TAB 46 –** Judgment
Filed January 22, 2025 ................................................................... 159

**TAB 47 –** Notice of Appeal
Filed February 13, 2025 ................................................................. 160



TAB DS

# U.S. District Court
## Northern District of Georgia (Rome)
## CIVIL DOCKET FOR CASE #: 4:23–cv–00300–ELR

Passantino v. United States of America
Assigned to: Judge Eleanor L. Ross
 Case in other court:  11th Circuit, 25–10500–C
Cause: 28:2674 Federal Tort Claims Act

Date Filed: 12/20/2023
Date Terminated: 01/22/2025
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Stefan Passantino**

represented by **Bryan P. Tyson**
Clark Hill PLC
3630 Peachtree Rd NE
Suite 550
Atlanta, GA 30326
678–370–4377
Fax: 678–370–4358
Email: btyson@clarkhill.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jared J. Roberts**
Binnall Law Group, PLLC
717 King Street
Suite 200
Alexandria, VA 22314
585–297–0202
Email: jared@binnall.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jesse R. Binnall**
Binnall Law Group, PLLC
717 King Street
Suite 200
Alexandria, VA 22314
703–888–1943
Email: jesse@binnall.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shawn M. Flynn**
Binnall Law Group, PLLC
717 King Street
Suite 200
Alexandria, VA 22314
703–888–1943
Email: shawn@binnall.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States of America**

represented by **Alfred Jonathan Jackson**
DOJ–USAO
75 Ted Turner Dr. SW
Suite 600

Atlanta, GA 30303
404–581–6000
Email: Jonathan.Jackson2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Andres H. Sandoval**
Office of the United States
Attorney–ATL600
Northern District of Georgia
600 United States Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404–581–6096
Email: andres.sandoval@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Neeli Ben–David**
Office of the United States
Attorney–ATL600
Northern District of Georgia
600 United States Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404–581–6303
Email: neeli.ben–david@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/20/2023 | 1 | COMPLAINT with Jury Demand filed by Stefan Passantino. (Filing fee $405, receipt number AGANDC–13112921) (Attachments: # 1 Proposed Summons– **NOT ISSUED (form is incomplete, lacks address for defendant)**, # 2 Civil Cover Sheet)(tmf) Please visit our website at http://www.gand.uscourts.gov/commonly–used–forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. Modified on 12/21/2023 to edit date(tmf). (Entered: 12/21/2023) |
| 12/20/2023 | 2 | Certificate of Interested Persons and Corporate Disclosure Statement by Stefan Passantino. (tmf) (Entered: 12/21/2023) |
| 12/22/2023 | 3 | ORDER OF RECUSAL. Judge William M. Ray, II recused. Case reassigned to Judge Mark H. Cohen for all further proceedings NOTICE TO ALL COUNSEL OF RECORD: The Judge designation in the civil action number assigned to this case has been changed to 4:23–cv–00300–MHC. Please make note of this change in order to facilitate the docketing of pleadings in this case. Signed by Judge William M. Ray, II on 12/22/2023. (tmf) (Entered: 12/22/2023) |
| 12/22/2023 | 4 | ORDER OF RECUSAL. Judge Mark H. Cohen recused. Case reassigned to Judge Eleanor L. Ross for all further proceedings NOTICE TO ALL COUNSEL OF RECORD: The Judge designation in the civil action number assigned to this case has been changed to 4:23–cv–00300–ELR. Please make note of this change in order to facilitate the docketing of pleadings in this case. Signed by Judge Mark H. Cohen on 12/22/2023. (tmf) (Entered: 12/22/2023) |
| 12/22/2023 | 5 | Letter from Clerk re: LR 83.1 Pro Hac Vice requirements sent to Jesse R. Binnall. Clerk to follow–up by 1/2/2024. (cpp) (Entered: 12/22/2023) |
| 12/22/2023 | 6 | Letter from Clerk re: LR 83.1 Pro Hac Vice requirements sent to Shawn M. Flynn. Clerk to follow–up by 1/2/2024. (cpp) (Entered: 12/22/2023) |
| 12/22/2023 | 7 | Letter from Clerk re: LR 83.1 Pro Hac Vice requirements sent to Jared J. Roberts. Clerk to follow–up by 1/2/2024. (cpp) (Entered: 12/22/2023) |
| 12/27/2023 | 8 | AMENDED ORDER of Recusal to correct typographical error. All other information contained in the original Order [Doc 3] remains the same. Signed by Judge William M. Ray, II on 12/27/2023. (dob) (Entered: 12/27/2023) |

| 12/28/2023 | 9 | NOTICE FROM THE COURT: INSTRUCTIONS FOR CIVIL CASES ASSIGNED TO THE HONORABLE ELEANOR L. ROSS. (mlb) (Entered: 12/28/2023) |
|---|---|---|
| 12/28/2023 | | Clerk's Certificate of Mailing to Attorneys Jared Roberts, Jesse Binnall and Shawn Flynn as to Stefan Passantino re 9 Order. (mlb) (Entered: 12/28/2023) |
| 01/11/2024 | 10 | APPLICATION for Admission of Jesse R. Binnall Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13149738).by Stefan Passantino. (Tyson, Bryan) *Documents for this entry are not available for viewing outside the courthouse.* (Entered: 01/11/2024) |
| 01/11/2024 | 11 | APPLICATION for Admission of Jared Roberts Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13149799).by Stefan Passantino. (Tyson, Bryan) *Documents for this entry are not available for viewing outside the courthouse.* (Entered: 01/11/2024) |
| 01/11/2024 | 12 | APPLICATION for Admission of Shawn Flynn Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13149818).by Stefan Passantino. (Tyson, Bryan) *Documents for this entry are not available for viewing outside the courthouse.* (Entered: 01/11/2024) |
| 01/12/2024 | | APPROVAL by Clerks Office re: 10 APPLICATION for Admission of Jesse R. Binnall Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13149738).. Attorney Jesse R. Binnall added appearing on behalf of Stefan Passantino. E−filing access may be requested after an order granting the application is entered. (djs) (Entered: 01/12/2024) |
| 01/12/2024 | | APPROVAL by Clerks Office re: 11 APPLICATION for Admission of Jared Roberts Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13149799).. Attorney Jared J. Roberts added appearing on behalf of Stefan Passantino. E−filing access may be requested after an order granting the application is entered. (djs) (Entered: 01/12/2024) |
| 01/12/2024 | | APPROVAL by Clerks Office re: 12 APPLICATION for Admission of Shawn Flynn Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13149818).. Attorney Shawn M. Flynn added appearing on behalf of Stefan Passantino. E−filing access may be requested after an order granting the application is entered. (djs) (Entered: 01/12/2024) |
| 01/12/2024 | | MINUTE ORDER (by docket entry only) GRANTING 10 Application for Admission Pro Hac Vice by Jesse Binnall; GRANTING 11 Application for Admission Pro Hac Vice by Jared Roberts; and GRANTING 12 Application for Admission Pro Hac Vice by Shawn Flynn. Approved by District Judge Eleanor L. Ross on 1/12/24. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(mlb) (Entered: 01/12/2024) |
| 01/12/2024 | | Clerk's Certificate of Mailing (via email) to Attorneys Jesse Binnall, Jared Roberts and Shawn Flynn as to Stefan Passantino re Order on Application for Admission PHV. (mlb) (Entered: 01/12/2024) |
| 02/06/2024 | 13 | PROPOSED SUMMONS filed by Stefan Passantino *to United States of America* (Tyson, Bryan) (Entered: 02/06/2024) |
| 02/06/2024 | 14 | PROPOSED SUMMONS filed by Stefan Passantino *to United States of America c/o US Attorney's Office for the NDGA* (Tyson, Bryan) (Entered: 02/06/2024) |
| 02/07/2024 | 15 | Electronic Summons Issued as to United States of America. (Attachments: # 1 Summons US Atty)(ces) (Entered: 02/07/2024) |
| 03/11/2024 | 16 | DOCUMENT FILED IN ERROR Return of Service Executed by Stefan Passantino. United States of America served on 2/20/2024, answer due 4/22/2024. (Binnall, Jesse) Modified per attorney phone call (wrong document) on 3/12/2024, see 17 for corrected entry (nmb). (Entered: 03/11/2024) |
| 03/12/2024 | 17 | Return of Service Executed by Stefan Passantino. United States of America served on 2/20/2024, answer due 4/22/2024. (Attachments: # 1 Affidavit Return Service as to U.S. Attorney's Office)(Binnall, Jesse) Modified text on 3/12/2024 (nmb). (Entered: 03/12/2024) |

| 04/15/2024 | 18 | MOTION for Extension of Time to File Answer with Brief In Support by United States of America. (Attachments: # 1 Text of Proposed Order)(Jackson, Alfred) (Entered: 04/15/2024) |
|---|---|---|
| 04/16/2024 | 19 | Amended MOTION for Extension of Time to File Answer with Brief In Support by United States of America. (Attachments: # 1 Text of Proposed Order)(Jackson, Alfred) (Entered: 04/16/2024) |
| 04/16/2024 | | MINUTE ORDER (by docket entry only). The Court finds that where Defendant has waited until the filing deadline of April 15, 2024 to request an extension "to review the documents and information regarding the allegations," Defendant has failed to show good cause for an extension. Accordingly, Defendant's motions [Docs. 18, 19] are hereby DENIED. Approved by District Judge Eleanor L. Ross on 4/16/24. (mlb) (Entered: 04/16/2024) |
| 04/24/2024 | 20 | ORDER: The Court DIRECTS Plaintiff to SHOW CAUSE within fourteen (14) days of the date of this order as to why his claims against Defendant should not be dismissed for want of prosecution. Signed by Judge Eleanor L. Ross on 4/24/24. (ces) (Entered: 04/24/2024) |
| 04/25/2024 | 21 | MOTION for Extension of Time to File Answer with Brief In Support by United States of America. (Attachments: # 1 Text of Proposed Order)(Jackson, Alfred) (Entered: 04/25/2024) |
| 04/25/2024 | 22 | MOTION for Clerks Entry of Default by Stefan Passantino. (Attachments: # 1 Affidavit Declaration of Jesse R. Binnall, # 2 Exhibit Exhibit 1 to Declaration, # 3 Exhibit Exhibit 2 to Declaration, # 4 Exhibit Exhibit 3 to Declaration, # 5 Exhibit Exhibit 4 to Declaration, # 6 Exhibit Exhibit 5 to Declaration)(Binnall, Jesse) (Entered: 04/25/2024) |
| 04/26/2024 | | Clerks Entry of Default as to United States of America (ces) (Entered: 04/26/2024) |
| 04/29/2024 | 23 | NOTICE of Appearance by Andres H. Sandoval on behalf of United States of America (Sandoval, Andres) (Entered: 04/29/2024) |
| 04/29/2024 | 24 | ANSWER to 1 COMPLAINT *(Answer and Affirmative Defenses)* by United States of America. Discovery ends on 9/26/2024.(Sandoval, Andres) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 04/29/2024) |
| 04/29/2024 | 25 | MOTION to Set Aside Default with Brief In Support by United States of America. (Attachments: # 1 Brief)(Sandoval, Andres) (Entered: 04/29/2024) |
| 05/01/2024 | 26 | NOTICE of Appearance by Neeli Ben–David on behalf of United States of America (Ben–David, Neeli) (Entered: 05/01/2024) |
| 05/03/2024 | 27 | MOTION for Judgment on the Pleadings with Brief In Support by United States of America. (Ben–David, Neeli) (Entered: 05/03/2024) |
| 05/03/2024 | 28 | MOTION to Stay with Brief In Support by United States of America. (Ben–David, Neeli) (Entered: 05/03/2024) |
| 05/08/2024 | 29 | RESPONSE TO ORDER TO SHOW CAUSE re: 20 Order to Show Cause filed by Stefan Passantino. (Binnall, Jesse) (Entered: 05/08/2024) |
| 05/09/2024 | | Submission of 20 Order to Show Cause to District Judge Eleanor L. Ross. (mlb) (Entered: 05/09/2024) |
| 05/09/2024 | 30 | RESPONSE in Opposition re 21 MOTION for Extension of Time to File Answer , 25 MOTION to Set Aside Default filed by Stefan Passantino. (Binnall, Jesse) (Entered: 05/09/2024) |
| 05/14/2024 | 31 | ORDER: The Court GRANTS Defendant United States of America's "Motion to Stay." 28 . Accordingly, the Court STAYS discovery and all related deadlines in this case except as outlined below until resolution of Defendant's "Motion to Set Aside Default" 25 and "Motion for Judgment on the Pleadings." 27 . The Court DIRECTS the Parties to abide by the following briefing schedule: (See Order for Deadlines). Signed by Judge Eleanor L. Ross on 5/14/24. (ces) (Entered: 05/14/2024) |

| 05/17/2024 | 32 | RESPONSE in Opposition re 27 MOTION for Judgment on the Pleadings filed by Stefan Passantino. (Binnall, Jesse) (Entered: 05/17/2024) |
|---|---|---|
| 05/23/2024 | 33 | REPLY BRIEF re 21 MOTION for Extension of Time to File Answer , 25 MOTION to Set Aside Default filed by United States of America. (Ben−David, Neeli) (Entered: 05/23/2024) |
| 05/24/2024 | | Submission of 25 MOTION to Set Aside Default, 21 MOTION for Extension of Time to File Answer, to District Judge Eleanor L. Ross. (ces) (Entered: 05/24/2024) |
| 05/31/2024 | 34 | REPLY BRIEF re 27 MOTION for Judgment on the Pleadings filed by United States of America. (Attachments: # 1 Exhibit A (House Resolution 503)(Ben−David, Neeli) (Entered: 05/31/2024) |
| 06/03/2024 | | Submission of 27 MOTION for Judgment on the Pleadings , to District Judge Eleanor L. Ross. (ces) (Entered: 06/03/2024) |
| 06/12/2024 | 35 | MOTION for Default Judgment as to United States of America with Brief In Support by Stefan Passantino. (Attachments: # 1 Brief Memo in Support Default Judgment)(Binnall, Jesse) (Entered: 06/12/2024) |
| 06/26/2024 | 36 | RESPONSE in Opposition re 35 MOTION for Default Judgment as to United States of America filed by United States of America. (Attachments: # 1 Exhibit A)(Ben−David, Neeli) (Entered: 06/26/2024) |
| 07/10/2024 | 37 | REPLY BRIEF re 35 MOTION for Default Judgment as to United States of America filed by Stefan Passantino. (Binnall, Jesse) (Entered: 07/10/2024) |
| 07/10/2024 | | Submission of 35 MOTION for Default Judgment as to United States of America to District Judge Eleanor L. Ross. (mlb) (Entered: 07/10/2024) |
| 11/12/2024 | 38 | Notice for Leave of Absence for the following date(s): 4/7/25 − 4/11/25; 5/27/25 − 6/6/25, by Bryan P. Tyson. (Tyson, Bryan) (Entered: 11/12/2024) |
| 11/14/2024 | 39 | MOTION for Judicial Notice with Brief In Support by Stefan Passantino. (Attachments: # 1 Brief)(Binnall, Jesse) Modified docket text on 11/15/2024 (ajw). (Entered: 11/14/2024) |
| 11/28/2024 | 40 | RESPONSE in Opposition re 39 MOTION for Judicial Notice filed by United States of America. (Ben−David, Neeli) (Entered: 11/28/2024) |
| 12/12/2024 | 41 | REPLY BRIEF re 39 MOTION for Judicial Notice filed by Stefan Passantino. (Binnall, Jesse) (Entered: 12/12/2024) |
| 12/14/2024 | | Submission of 39 MOTION for Judicial Notice, to District Judge Eleanor L. Ross. (bgt) (Entered: 12/14/2024) |
| 12/23/2024 | 42 | MOTION Judicial Notice with Brief In Support by Stefan Passantino. (Attachments: # 1 Brief)(Binnall, Jesse) (Entered: 12/23/2024) |
| 01/03/2025 | 43 | Unopposed MOTION for Extension of Time to File its Response to Plaintiff's Motion for Judicial Notice with Brief In Support by United States of America. (Attachments: # 1 Text of Proposed Order)(Ben−David, Neeli) (Entered: 01/03/2025) |
| 01/06/2025 | 44 | RESPONSE re 42 MOTION Judicial Notice filed by United States of America. (Ben−David, Neeli) (Entered: 01/06/2025) |
| 01/22/2025 | 45 | ORDER: The Court GRANTS the United States construed motion to file an out−of−time Answer Doc. 21 , Motion to Set Aside Entry of Default Doc. 25 , and Motion for Extension of Time Doc. 43 . The Court also GRANTS Passantino's Motions for Judicial Notice Docs. 39 ; 42 and DENIES AS MOOT his Motion for Default Judgment Doc. 35 . Additionally, the Court GRANTS the United States Motion for Judgment on the Pleadings Doc. 27 and DISMISSES the Complaint. The Court DIRECTS the Clerk to TERMINATE this case. Signed by Judge Eleanor L. Ross on 01/22/2025. (ajw) (Entered: 01/22/2025) |
| 01/22/2025 | 46 | CLERK'S JUDGMENT dismissing action. (ajw)—Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist−− (Entered: 01/22/2025) |

| | | |
|---|---|---|
| 01/22/2025 | | Civil Case Terminated. (ajw) (Entered: 01/22/2025) |
| 02/13/2025 | 47 | NOTICE OF APPEAL as to 46 Clerk's Judgment, 45 Order on Motion for Default Judgment,,, Order on Motion for Miscellaneous Relief,,,,,, Order on Motion for Extension of Time,,, Order on Motion for Extension of Time to Answer,,, Order on Motion to Set Aside Default,,, Order on Motion for Judgment on the Pleadings,, by Stefan Passantino. Case Appealed to USCA – 11th Circuit. Filing fee $ 605, receipt number AGANDC–14064797. Transcript Order Form due on 2/27/2025 (Binnall, Jesse) (Entered: 02/13/2025) |
| 02/18/2025 | 48 | Transmission of Certified Copy of Notice of Appeal, Judgment, Order, and Docket Sheet to USCA – 11th Circuit re 47 Notice of Appeal,. There is no Transcript. Appeal fees have been paid on receipt# AGANDC14064797. The District Judge is Eleanor L. Ross. (dob) (Entered: 02/18/2025) |
| 02/19/2025 | 49 | USCA Acknowledgment of 47 Notice of Appeal, filed by Stefan Passantino. Case Appealed to 11th Circuit Case Number 25–10500–C. (dob) (Entered: 02/19/2025) |
| 03/03/2025 | | TRANSCRIPT Order Form (No Form Received) re 47 Notice of Appeal,. Case Appealed to 11th Circuit, Case Number 25–10500–C. Fed.R.App.P. 11 Certification due on 3/17/2025 (dob) (Entered: 03/03/2025) |
| 03/03/2025 | | Pursuant to F.R.A.P.11(c), the Clerk certifies that the record is complete for purposes of this appeal, 47 Notice of Appeal. Case Appealed to 11th Circuit, Case Number 25–10500–C. The entire record on appeal is available electronically. (dob) (Entered: 03/03/2025) |
| 03/04/2025 | 50 | TRANSCRIPT Order Form re 47 Notice of Appeal,. (Roberts, Jared) (Entered: 03/04/2025) |

# TAB 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

**STEFAN PASSANTINO**,
c/o Binnall Law Group
717 King Street, Suite 200
Alexandria, Virginia 22314,

    *Plaintiff,*

**v.**

**UNITED STATES OF AMERICA**,

    *Defendant.*

Case No.: _____

**JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

1.    In or around December of 2022, the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee"), through its members and staff, chose to bring the full weight and credibility of Congressional authority against a private citizen, Stefan Passantino, to destroy his reputation and career. The Committee did so without ever contacting Mr. Passantino, without interviewing him, without providing him with notice of the claims against him, and without providing him with an opportunity to respond. This was in violation of law and the due process that should be afforded every American citizen and for the purpose of promoting a pre-ordained political and legal narrative against the forty-fifth President of the United States, Donald J. Trump.

2.     To promote its political and legal objectives, the Committee purposely and maliciously interfered in the attorney-client relationship between attorney Stefan Passantino and one of his clients, communicated with his client without his consent, generated a harmful narrative about that attorney-client relationship and the legal advice he gave his client, and, in concert with national cable news organizations, published private information and promoted that narrative.

3.     The Committee, which has proven itself time and time again to manipulate evidence in support of a bias against anyone associated with President Trump, had a deliberate goal to ruin Mr. Passantino because of a false assumption about his involvement in 2020 post-election activities, the role that he played as the chief ethics lawyer in President Trump's White House, and as an attorney for several former administration and campaign staff before the Committee.

4.     The Committee, through a backchannel directly to Mr. Passantino's client, in total disregard for the attorney-client relationship and Committee Members' and staffs' own ethical obligations as members of the bar, convinced Mr. Passantino's client to sit for additional interviews and give incredible testimony that could then be peddled by national news media friendly to the Committee to damage Mr. Passantino.

2

5.    Without providing any notice to Mr. Passantino or even contacting him to discern the veracity of the allegations lodged against him, the Committee, through its members or staff or both, leaked information to Cable News Network ("CNN"), Alyssa Farah Griffith, a highly compensated CNN political commentator, and possibly others, pertaining to Mr. Passantino and his representation of witnesses before the Committee to create a narrative that would injure Mr. Passantino. These leaks, which were wholly outside the Committee's constitutional and legal jurisdiction or any individual member's official legislative functions, resulted in serious personal damage to Mr. Passantino.

6.    The Committee gave an outrageous narrative to media sources about Mr. Passantino's non-existent efforts to obstruct their investigation by impacting the testimony of their "star" witness, Cassidy Hutchinson, to support its political narrative. The Committee knew or should have known that this was non-public information in which the public had no legitimate interest. Instead, the Committee deliberately violated Mr. Passantino's privacy and caused him significant economic, reputational, and emotional harm.

## **PARTIES**

7.    Plaintiff Stefan Passantino is an individual who is a citizen of the State of Georgia, who regularly represents clients in Washington, D.C., as an

attorney. At the time of the events and allegations in this Complaint, Mr. Passantino was counsel for a witness before the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States.

8.     Defendant United States of America includes the United States Congress and all government agencies and departments responsible for the wrongful acts of its employees acting within the scope or office of their employment while investigating the events of January 6 at the Capitol and bringing false allegations of Plaintiff and is sued under 28 U.S.C. § 1346 and 5 U.S.C. §§ 702–703.

## JURISDICTION AND VENUE

9.     This Court has original subject matter jurisdiction over Mr. Passantino's federal claims under 28 U.S.C. §§ 1331 and 1346(b)(1) because they arise under federal law and because the United States is a defendant.

10.    This Court is the proper venue pursuant to 28 U.S.C. § 1402(b) as Mr. Passantino resides in this District.

## FACTUAL BACKGROUND

### Background of the Parties

11.    From January 2017 until August 2018, Mr. Passantino served as Deputy White House Counsel, focusing on federal compliance and government

10

ethics. Following his time in the White House, Mr. Passantino returned to private practice at the firm Michael Best & Friedrich, LLP, where he led the firm's Political Law group. In total, Mr. Passantino has been a lawyer for over 30 years, with extensive experience handling sensitive ethical, political, and legal issues for high-profile clients.

12. After clerking for a judge on the U.S. District Court for the District of Maryland—who also served by designation on the U.S. Court of Appeals for the Fourth Circuit—Mr. Passantino worked at several prominent law firms. Chambers USA identified him as one of the leading political lawyers in the country. He is a co-author of the Handbook on Corporate Political Activity and other works relating to political compliance matters. After leaving his position as Deputy White House Counsel and joining the Michael Best law firm, Mr. Passantino helped form the law firm Elections, LLC.

13. Throughout his professional career, Mr. Passantino has been passionate about the legal profession and its ethics.

14. Mr. Passantino represented several witnesses before the United States House Select Committee on the January 6th Attack, including Cassidy Hutchinson. Mr. Passantino represented each of his witnesses honorably, ethically, and fully consistent with his legal and ethical obligations. In total, Mr. Passantino represented multiple clients before the Committee, spanning

many hours of testimony, including representing Ms. Hutchinson in three extended interviews amounting to approximately 20 hours.

15.     During Mr. Passantino's representation of Ms. Hutchinson, the Committee repeatedly thanked Mr. Passantino for his clarifying questions and for keeping Ms. Hutchinson on track during her interviews. Moreover, a review of Ms. Hutchinson's three transcripts when Mr. Passantino represented her makes it clear Mr. Passantino was not attempting to obstruct her testimony or shape it in any way. In fact, Mr. Passantino made it clear on multiple occasions to Ms. Hutchinson that he did not care what her testimony was as long as it was the truth.[1]

16.     Despite having made numerous public references to Mr. Passantino's conduct in defending Cassidy Hutchinson, the Committee only publicly made available the actual transcripts of Mr. Passantino's representation of Ms. Hutchinson on a single day, December 31, before those transcripts were removed. The Committee has never made publicly available the video recordings of Mr. Passantino representing any of his clients before the Committee. In fact, the Committee appears to have "destroyed or got rid

---

[1] These transcripts can be located at: https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000050113/pdf/GPO-J6-TRANSCRIPT-CTRL0000050113.pdf;
https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000051189/pdf/GPO-J6-TRANSCRIPT-CTRL0000051189.pdf;         and         https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000930041/pdf/GPO-J6-TRANSCRIPT-CTRL0000930041.pdf).

of" the videotapes of Ms. Hutchinson's interviews as well as other documentary evidence exonerating Mr. Passantino and supporting the claims set forth in the Complaint.[2]

### *THE COMMITTEE SEEKS CASSIDY HUTCHINSON'S TESTIMONY*

17.    The Select Committee first sought Ms. Hutchinson's testimony through a subpoena issued on or about November 9, 2021, and she was served on or about January 26, 2022, with a return date for documents in mid-February 2022.

18.    According to Ms. Hutchinson's testimony, she reached out to numerous lawyers but was worried about how she could afford to retain counsel. She sought assistance to pay for legal counsel from multiple sources, including from Save America PAC.

19.    Through Ms. Hutchinson's outreach, she was connected with individuals who were responsible, in part, for vetting the use of Save America PAC funds. Specifically, Ms. Hutchinson was connected with Liz Horning, who reached out to representatives for Save America PAC, who then connected Ms. Hutchinson with Mr. Passantino, through his law partners.

---

[2] John Solomon and Steven Richards, *Democrats' star J6 witness Cassidy Hutchinson made significant changes to her story, memo shows*, JUST THE NEWS (Nov. 30, 2023), https://justthenews.com/accountability/political-ethics/democrats-star-j6-witness-made-signficant-changes-testimony.

20.     Mr. Passantino treated Ms. Hutchinson as any other client. He engaged in proper protocols to ensure that there were no conflicts of interest. Mr. Passantino did not perceive Ms. Hutchinson to have an adverse interest to any other of his clients; Ms. Hutchinson was merely a fact witness providing testimony. At the time of Mr. Passantino's first meeting with Ms. Hutchinson, he was aware and operating upon the knowledge that Ms. Hutchinson had contacted Save America PAC in the hopes the PAC would retain counsel on her behalf. Mr. Passantino was further aware and operating upon the knowledge that members of his own firm had engaged in communications with Ms. Hutchinson about Save America PAC's agreement to pay the fees associated with his representation of her.

21.     Mr. Passantino made it clear in his first meeting with Ms. Hutchinson that despite the fee arrangement, he was her lawyer and owed her a duty and that the only people he could talk to about her case were his law firm partners unless he had first received her consent. All of Mr. Passantino's statements to any other third party were authorized by his client, Ms. Hutchinson.

22.     Ms. Hutchinson never told Mr. Passantino that she wanted a "non-Trump" lawyer or that she had any sensitivity about Mr. Passantino's previous work in the Trump White House. She did not express reservations to Mr. Passantino about him being paid by a Trump-related PAC; instead, she had

solicited that funding herself. Ms. Hutchinson advised that she did not want to provide any information that was harmful to President Trump.

23. Mr. Passantino recommended that Ms. Hutchinson should cooperate with the Committee, notwithstanding her stated reluctance to do so.

24. Mr. Passantino gave Ms. Hutchinson standard lawyering instructions for a witness at a deposition or recorded interview, including but not limited to instructions about not speculating, speaking only from direct knowledge, not seeking out extraneous information in preparation for the deposition or interview, and not stating that she had recollection of facts she did not recall.

25. Mr. Passantino informed Ms. Hutchinson that she must limit her testimony to her personal knowledge.

26. Mr. Passantino repeatedly reminded Ms. Hutchinson that she should not speculate about things that she did not know. Mr. Passantino specifically informed Ms. Hutchinson not to assume parts of conversations of which she could only hear part.

27. Further, Mr. Passantino encouraged Ms. Hutchinson to comply with the subpoenas and to testify truthfully.

28. Mr. Passantino instructed Ms. Hutchinson to answer questions truthfully and honestly but not to concoct "probable answers" to questions to

which she could not know or recall the answers, or which called for expert opinion evidence.

29.    Ms. Hutchinson testified that "Stefan never told me to lie. He specifically told me 'I don't want you to perjure yourself.'" She further testified that Mr. Passantino cautioned her that she could not say that she didn't recall events if she did recall them. She reiterated: "he didn't tell me to lie. He told me not to lie."

30.    Therefore, Mr. Passantino did NOT advise her that she could or should state that she does not recall in response to any questions where she does not recall all the details. Rather, Mr. Passantino gave her standard lawyering instructions that she should testify honestly to what she recalls and nothing else.

31.    Mr. Passantino also instructed Ms. Hutchinson not to answer a question immediately when he objected, but rather to think a moment, so as to give her the opportunity to think about the question and objection (such as "calls for speculation", "calls for revelation of attorney-client privileged communications", or "calls for information protected by Executive Privilege").

32.    Further, Mr. Passantino did not improperly leverage his effort to assist with Ms. Hutchinson's search for a job in any way to shape her testimony. At no time was this job search in any way connected with Mr. Passantino's representation of Ms. Hutchinson. In fact, Mr. Passantino has

worked to assist multiple former Trump administration staffers to find work after the administration because of the difficult employment environment faced by those who served in the Trump Administration.

33.    Additionally, regarding the payment of Ms. Hutchinson's legal fees, any assistance in searching for a job was provided separately from any decisions made regarding Ms. Hutchinson's subpoena, testimony, or legal decision-making. It was always made clear to Ms. Hutchinson that Mr. Passantino was her lawyer and Ms. Hutchinson's best interests came first.

### *THE COMMITTEE ESTABLISHED A BACKCHANNEL BEHIND MR. PASSANTINO'S BACK WITHOUT DUE PROCESS OR NOTICE*

34.    Despite all of this, during Mr. Passantino's representation of Cassidy Hutchinson, the Committee took actions against Mr. Passantino that injured his property and person. Specifically, the Committee interfered with Mr. Passantino's representation of his client and leaked private information to news agencies in order to harm Mr. Passantino and advance a preordained political and legal narrative. These actions invaded Mr. Passantino's privacy by publicizing private information, resulting in significant damage to his personal and business relationships as well as causing him significant emotional trauma. The Committee took these actions without providing any notice or process to Mr. Passantino.

35.     According to Ms. Hutchinson's testimony, following her second voluntary interview, a member of the House of Representatives communicated directly with Ms. Hutchinson, knowingly bypassing her lawyer Mr. Passantino. According to Ms. Hutchinson, the representative told her that because Mr. Passantino was being paid by a Trump-affiliated third-party he would not be advancing her interests and instead would be advancing those of former President Trump and his allies.

36.     Ms. Hutchinson and the representative concealed their communication from Mr. Passantino. This communication unjustifiably undermined Ms. Hutchinson's trust in Mr. Passantino and improperly disrupted their attorney-client relationship.

37.     Thereafter, upon information and belief based upon the sworn testimony of Ms. Hutchinson, Ms. Hutchinson, Congresswoman Liz Cheney, and Counsel Dan George of the Select Committee established a "backchannel" of communication. Either directly or through an intermediary, Ms. Hutchinson provided information to the Committee and arranged for the Committee to summon her for a third interview.

38.     At all times during this backchannel, the Committee was aware that it was communicating with Ms. Hutchinson, a represented party, without going through her counsel of record, and the Committee concealed those communications from Mr. Passantino.

39.    The Committee then, in complete violation of Constitutional limitations upon its authority as a legislative body and without any semblance of due process for Mr. Passantino, attempted to set up a secret law enforcement "sting" operation in Congressional offices seeking to induce Mr. Passantino to obstruct Congress during a third interview of Ms. Hutchinson.

40.    On May 12, 2022, Mr. Passantino accompanied Ms. Hutchinson to a third appearance before Congresswoman Liz Cheney and Senior Investigative Counsel Dan George of the Committee. Counsel for the Committee participated in this appearance even though it was the fruit of an improper, illegal, and unethical surreptitious backchannel communications between Ms. Hutchinson and the Committee (which at all times was represented by counsel and was at least conducted by Congresswoman Liz Cheney, who is a member of the bar herself, as well as others).

41.    Contrary to the hopes of the Committee, including Congresswoman Liz Cheney and Senior Investigative Counsel Dan George, Mr. Passantino did not obstruct or otherwise interfere with the testimony being provided by Ms. Hutchinson.  A videotape recording of this interview, if not subsequently destroyed by the Committee, supports this allegation.

42.    Following the May 12, 2022 interview, Dan George, Senior Investigative Counsel for the Committee, denied responsibility for leaking information about the May 12 interview but also admitted that only he,

Congresswoman Liz Cheney, and a few staff members knew it had occurred at the time. Mr. George advised Mr. Passantino that other members of the Committee had been unaware of the May 12, 2022 interview at the time it took place.

43.     After the third interview, Ms. Hutchinson engaged new counsel. Thereafter, she worked with the Committee to arrange for a public appearance on June 28, 2022, broadcast live by all major national cable news organizations and reported prominently by all major national media outlets.

44.     Following her public appearance, Ms. Hutchinson sat for additional Committee interviews on September 14 and 15, 2022.

45.     Following these interviews, the transcripts of Ms. Hutchinson's September interviews were leaked by the Committee to the news media without Mr. Passantino ever having been interviewed, notified of the allegations made against him, or given an opportunity to respond and defend his reputation.

46.     On December 19, 2022, Pam Brown and Katelyn Polantz, reporters with CNN, called Mr. Passantino and informed him that CNN was going to be publishing a piece about his representation of Ms. Hutchinson. Ms. Brown informed Mr. Passantino that she was in possession of at least one transcript of Ms. Hutchinson's testimony and believed that the Committee would allege

he had counseled Ms. Hutchinson to not answer the Committee's questions fully and honestly.

47.    The only way that Ms. Brown and Ms. Polantz could have obtained the transcript of Ms. Hutchinson's testimony is from a member or a staffer of the Committee. The Committee had not, at that time, officially released the transcripts of Ms. Hutchinson's testimony. Therefore, it is clear that a member of the Committee or a staffer for the Committee or both had leaked this transcript to CNN to ensure maximum damage was done to Mr. Passantino's reputation and his existing and future legal, political, and business clients.

48.    As has been found previously, a member of Congress or their staff or both are acting outside of the scope of their legislative function when they leak non-public investigative information to the media because such action is not tied to the official actions of Congress in any way.

49.    On Monday, December 19, 2022, the Committee released the executive summary of its final report. In this summary, the Committee stated, "[t]he Committee has substantial concerns regarding potential efforts to obstruct its investigation, including by certain counsel (some paid by groups connected to the former President) who may have advised clients to provide false or misleading testimony to the Committee."

50.    The Committee took these actions without providing any notice or opportunity to Mr. Passantino to respond to its allegations against him.

15

21

51.     A member of the Committee, a staffer, or both leaked the transcripts to CNN with the intent that CNN determine that Mr. Passantino was the counsel that was mentioned in the summary without specifically identifying Mr. Passantino. CNN took the bait and reached out to Mr. Passantino and eventually published the information.

52.     On or about December 20, 2022, and thereafter, Mr. Passantino became aware that CNN was in possession of contemporaneous text message communications between Ms. Hutchinson and others, which might serve to verify Mr. Passantino's version of events. Notwithstanding CNN's possession of this information, CNN refused Mr. Passantino's repeated requests to include information in its possession in its reporting to ensure CNN's reporting was balanced and accurate. In these text messages, which upon information and belief had been provided directly to CNN from the individual involved, Ms. Hutchinson advised a colleague, "I don't want to comply [with the Committee but] Stefan wants me to comply."  Ms. Polantz notified Mr. Passantino and his counsel that CNN had determined not to include any reference to these contemporaneous text messages between Ms. Hutchinson and others in their possession  in its reporting because the text messages were not "newsworthy."

53.     CNN's determination that the full and accurate truth was not newsworthy is pertinent because it highlights what an egregious invasion of privacy it was for the Committee and its members and staff to strategically

22

leak the information it leaked. The Committee leaked private information in order to cause a damaging news story. CNN has admitted that the true story exonerating Mr. Passantino's ethical conduct is not newsworthy, or in other words not something in which the public would have an interest.

54.   On December 21, 2022, CNN ran an article titled "Exclusive: Trump's former White House ethics lawyer told Cassidy Hutchinson to give misleading testimony to January 6 committee, sources say." In this article, CNN stated that the Committee had "made a startling allegation on Monday, claiming it had evidence that a Trump-backed attorney urged a key witness to mislead the committee about details they recalled."

55.   In the same article, CNN went on to claim, "Stefan Passantino, the top ethics attorney in the Trump White House, is the lawyer who allegedly advised his then-client, former White House aide Cassidy Hutchinson, to tell the committee that she did not recall details that she did, sources familiar with the committee's work tell CNN." This allegation to CNN was leaked by the Committee, either by a member or members of the Committee, or a staffer or staff of the Committee.

56.   This is evidenced by the fact that after Ms. Hutchinson returned to the Committee for her third confidential interview, it was quickly leaked to the media that this interview occurred.

57.     These interviews were, therefore, wholly private, yet were somehow leaked to the media, nonetheless.

58.     Moreover, the transcripts for interviews were not released until after the Committee released the final report. Therefore, only a member or staffer of the Committee or both would be able to leak the transcript to CNN.

59.     As the transcripts of Ms. Hutchinson's testimony make clear, she confirmed under oath that Mr. Passantino did not advise her to lie to the Committee or to perjure herself. Rather, Mr. Passantino gave her standard advice that she could respond that she did not recall information unless she actually recalled the information requested by a question. As Ms. Hutchinson put it on September 14, 2022, "*Stefan never told me to lie.*" (emphasis added).

60.     At all times, Mr. Passantino advised Ms. Hutchinson to respond to the Select Committee's questions truthfully and fully, even when Ms. Hutchinson expressed reluctance to do so. Ms. Hutchinson herself testified: "Stefan never told me to lie. He specifically told me 'I don't want you to perjure yourself.'" She further testified that Mr. Passantino cautioned her that she could not say that she didn't recall events if she did recall them. She reiterated: "he didn't tell me to lie. He told me not to lie."

61.     The CNN article went on to claim, "Trump's Save America political action committee funded Passantino and his law firm Elections, LLC, including paying for his representation of Hutchinson, other sources tell CNN.

The committee report notes the lawyer did not tell his client who was paying for the legal services."

62.   Ms. Hutchinson admitted, however, in her testimony that she had applied for funding from Mr. Trump's PACs. Ms. Hutchinson testified that she had been in touch with multiple organizations within and without, as she put it, "Trump World," seeking financial assistance in dealing with her subpoena. During this time, she was connected with a representative of Save America PAC, who connected her with Mr. Passantino.

63.   On February 4, 2021, Ms. Hutchinson emailed a senior aide to Former President Trump who was connected with a Pro-Trump Political Action Committee, the Save America Leadership PAC (the "PAC"). In that email she wrote that the return date for her subpoena was just days away and that she had been unable to retain counsel.

64.   She explained that she and her family were struggling financially and requested a referral to potential counsel as well as "financial assistance."

65.   Mr. Passantino had represented several other former aides who had been subpoenaed by the Committee and agreed to take Ms. Hutchinson on as a client. The fees for Ms. Hutchinson and several other former junior aides represented by Mr. Passantino were paid by Save America PAC. Save America PAC also paid for the legal fees of many other former aides who were represented by other law firms unaffiliated with Mr. Passantino and his firms.

19

66.     Moreover, Ms. Hutchinson never expressed any concerns to Mr. Passantino about who was paying her legal costs.

67.     In a statement to CNN before its publication, Mr. Passantino said he didn't advise Ms. Hutchinson to mislead the Committee. "I believed Ms. Hutchinson was being truthful and cooperative with the Committee throughout the several interview sessions in which I represented her."

68.     Despite this statement, which clearly outlines the issues with the leak and the story itself, CNN chose to run the story, likely because it was given to CNN by the Committee, a member of the Committee, or a staffer of the Committee; a source that CNN considered to be beyond reproach.

69.     The Committee's action in leaking these private facts resulted in significant reputational, emotional, and economic damage to Mr. Passantino due to the publication of information in which the public had no interest. The public had no interest in the attorney-client relationship between Mr. Passantino and Ms. Hutchinson.

70.     The Committee deliberately leaked information to news media, immediately before it would have quietly become public, in order to bring attention to private facts and, in doing so, damage Mr. Passantino.

71.     The Committee's damaging actions in leaking this information had their intended effect. Mr. Passantino separated from one of his firms, Michael Best, due to the allegations in the news media. In addition, Mr. Passantino is

now defending himself against bar complaints brought by third parties seeking funding and attention for themselves but having no particular knowledge of the facts and apparently no regard for fundamental legal notions of due process or presumption of innocence.

72.     This is all a result of the Committee's unjustifiable, outrageous, and malicious leaks of private information and interference in Mr. Passantino's representation of his clients.

73.     It is especially egregious that the Committee leaked this information considering that in an errata sheet dated September 22, 2022, containing Ms. Hutchinson's online signature, Ms. Hutchinson made 15 pages worth of material changes to her prior testimony to the Committee.[3] These extensive "corrections" indicate that she was not being truthful with her counsel or the Committee at first, but is now seeking to officially change her statements to reflect the more sensational story that she later told.

74.     As a consequence of the false actions taken against Mr. Passantino by the Committee, and those working in concert with the Committee for political ends, Mr. Passantino has suffered severe financial and reputational harm, has been exposed to numerous physical threats to himself and his family, harassment, has received numerous, well-publicized bar complaints

---

[3] *See supra* note 2.

filed by groups which Mr. Passantino never interacted with or had an opportunity to rebut, and has suffered significant emotional harm.

75.   Mr. Passantino, therefore, seeks restitution from the United States for the damage done to him by the Committee and its members and staff pursuant to the Federal Tort Claims Act. Mr. Passantino is entitled to be fully compensated for each and every one of his pecuniary and non-pecuniary losses resulting from the Committee's conduct against him.

## CAUSES OF ACTION

### COUNT I
### Federal Tort Claims Act
### Invasion of Privacy

76.   Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

77.   The Federal Tort Claims Act provides "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

78.   Plaintiff has exhausted his administrative remedies under 28 U.S.C. § 2675 of the Federal Tort Claims Act as a prerequisite to instituting a claim against the United States for money damages for injury or loss of property or personal injury caused by the negligent or wrongful act or omission

of any employee of the United States government while acting within the scope of his or her office or employment.

79.    By letter delivered April 14, 2022, Plaintiff presented his administrative claim to the United States House of Representatives.

80.    The House of Representatives has not responded within the prescribed statutory deadline to Mr. Passantino's Form 95 submission and, therefore, Mr. Passantino's Form 95 is, as of the filing of this Complaint, deemed denied, exhausting Mr. Passantino's administrative remedies and granting him the right to sue in this Court.

81.    Defendant is responsible for the actions of those named herein as Members of the Committee or their staff.

82.    The House of Representatives invaded Mr. Passantino's privacy by intentionally leaking and making public private facts that would not otherwise have become public concerning Mr. Passantino's representation of Ms. Hutchinson.

83.    Indeed, the House or its agents, all of whom are agents of Defendant, intentionally leaked private information, including private information that otherwise would have remained private, in order to cause the news media to publish a false story about these private facts that would damage Mr. Passantino. This suit is not based on the defamatory sting of the

ensuing publication; rather it is based on the publication of private information.

84.     This conduct deprived Mr. Passantino of his Due Process rights under the United States Constitution. Notably, Defendant released this private information without notice to Mr. Passantino, and without affording him the opportunity to confront his accusers or otherwise defend himself before imposing a "sentence" of the destruction of his professional career.

85.     The facts disclosed would be offensive to any reasonable person. Indeed, they impugn Mr. Passantino's character and ethics, traits that are essential to his work and all relationships, both personal and professional.

86.     Given that the House and its agents acted outside its scope by leaking non-public information, there was no privilege in the communication of these private facts or other actions of the House or its agents.

## COUNT II
## Civil Conspiracy

87.     Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

88.     Defendant and its agents engaged in the foregoing actions in agreement with unnamed co-conspirators, including individuals that worked at media companies, to accomplish their goal of invading Mr. Passantino's privacy and attorney-client relationship to cause harm to his practice of law

and standing in the community. They did so without affording Mr. Passantino any Due Process.

89.    This agreement is exemplified by the dissemination of private information that otherwise would not have become public or would have quietly become public in an attempt to create a damaging new story about Mr. Passantino based on private information.

90.    Mr. Passantino was harmed as a result of this conspiracy.

## JURY DEMAND

91.    Plaintiff demands a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

92.    Plaintiff respectfully requests this Court to enter a judgment in his favor and grant relief against the Defendants as follows:

    a.  Compensatory damages in an amount to be determined at trial;

    b.  Reasonable attorneys' fees with respect to all of Plaintiff's causes of action; and

    c.  Any other relief the Court deems proper.

Dated: December 20, 2023

STEFAN PASSANTINO
By Counsel


Respectfully submitted,

*/s/ Bryan P. Tyson*
Bryan P. Tyson (Ga. Bar No.
515411)
THE ELECTION LAW GROUP
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339
Phone: 678-336-7249
Email:
btyson@theelectionlawyers.com


Jesse R. Binnall (*pro hac vice*
forthcoming)
Shawn M. Flynn (*pro hac vice*
forthcoming)
Jared J. Roberts (*pro hac vice*
forthcoming)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com
        shawn@binnall.com
        jared@binnall.com

*Attorneys for Plaintiff*

32

**TAB 18**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| STEFAN PASSANTINO, | |
| PLAINTIFF, | Civil Action No. |
| *v.* | 4:23-cv-00300-ELR |
| UNITED STATES OF AMERICA, | |
| DEFENDANT. | |

## **DEFENDANT'S MOTION FOR EXTENSION OF TIME**

Defendant United States of America, by and through the United States Attorney for the Northern District of Georgia and the undersigned Assistant United States Attorney, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 6(b) for a 7-day extension of time in which to file a responsive pleading to Plaintiff Stefan Passantino's Complaint (Doc. 1), through and including April 22, 2024.  The grounds for this motion are more particularly set forth in the accompanying memorandum of law.

33

Dated: April 15, 2024.

RESPECTFULLY SUBMITTED,

RYAN K. BUCHANAN
   *United States Attorney*

/s/ A. Jonathan Jackson
_____

A. JONATHAN JACKSON
*Assistant United States Attorney*
Georgia Bar No. 852077
Jonathan.Jackson2@usdoj.gov
United States Attorney's Office
Richard B. Russell Federal Building
75 Ted Turner Drive SW, Suite 600
Atlanta, GA  30303-3309
Tel. (404) 581-6000   Fax (404) 581-6181

34

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEFAN PASSANTINO,

PLAINTIFF,

*v.*

UNITED STATES OF AMERICA,

DEFENDANT.

Civil Action No.

4:23-cv-00300-ELR

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME

Federal Rule of Civil Procedure 6(b) permits the Court broad discretion in granting extensions of time made prior to the expiration of the time originally permitted to make the subject filing.  *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) ("We recognize that district courts enjoy broad discretion in deciding how best to manage the cases before them."); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 859 (11th Cir. 1990) (discussing discretion afforded to district courts when ruling on requests for extensions of time); *see also* Wright & Miller, Federal Practice and Procedure § 1165 (1987).

The current deadline for Defendant to file a response to Plaintiff's Complaint is April 15, 2024.  The undersigned counsel needs additional time to review the documents and information regarding the allegations contained in

35

Plaintiff's Complaint to prepare a responsive pleading. Therefore, Defendant respectfully requests a 7-day extension of time, through and including April 22, 2024, to file a responsive pleading.[1]

For the Court's convenience, a proposed order granting the extension of time is attached.

Dated: April 15, 2024.

RESPECTFULLY SUBMITTED,

RYAN K. BUCHANAN
    *United States Attorney*

/s/ A. Jonathan Jackson
A. JONATHAN JACKSON
*Assistant United States Attorney*
Georgia Bar No. 852077
Jonathan.Jackson2@usdoj.gov
United States Attorney's Office
Richard B. Russell Federal Building
75 Ted Turner Drive SW, Suite 600
Atlanta, GA  30303-3309
Tel. (404) 581-6000   Fax (404) 581-6181

---

[1] On April 15, 2024, Defendant's counsel reached out to Plaintiff's counsel after business hours via email to assess whether this Motion could be filed without opposition from Plaintiff. Understandably, Plaintiff's counsel has not yet had an opportunity to respond.

2

36

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEFAN PASSANTINO,

PLAINTIFF,

v.

UNITED STATES OF AMERICA,

DEFENDANT.

Civil Action No.

4:23-cv-00300-ELR

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing document has been prepared using Book Antiqua, 13 point font.

*/s/ A. Jonathan Jackson*

A. JONATHAN JACKSON
*Assistant United States Attorney*

37

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEFAN PASSANTINO,

Plaintiff,

v.

LOUIS DEJOY, Postmaster
General, United States Postal
Services Agency,

Defendant.

Civil Action No.

4:23-cv-00300-ELR

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024 I electronically filed the foregoing

document with the Clerk of Court using the Court's CM/ECF system, which will

automatically send notification of such filing to the following attorneys of record:

Bryan P. Tyson (Ga. Bar No.
515411)
THE ELECTION LAW GROUP
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339
Phone: 678-336-7249
btyson@theelectionlawyers.com

*/s/ A. Jonathan Jackson*

A. JONATHAN JACKSON
*Assistant United States Attorney*

38

**TAB 19**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

STEFAN PASSANTINO,

        Plaintiff,

        *v.*

UNITED STATES OF AMERICA,

        Defendant.

Civil Action No.
4:23-cv-00300-ELR

## DEFENDANT'S AMENDED MOTION FOR EXTENSION OF TIME

Defendant United States of America, by and through the United States Attorney for the Northern District of Georgia and the undersigned Assistant United States Attorney, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 6(b) for a 7-day extension of time in which to file a responsive pleading to Plaintiff Stefan Passantino's Complaint (Doc. 1), through and including April 22, 2024. The grounds for this amended motion are more particularly set forth in the accompanying amended memorandum of law.

39

Dated: April 16, 2024.

RESPECTFULLY SUBMITTED,

RYAN K. BUCHANAN
    *United States Attorney*

*/s/ A. Jonathan Jackson*
_____
A. JONATHAN JACKSON
*Assistant United States Attorney*
Georgia Bar No. 852077
Jonathan.Jackson2@usdoj.gov
United States Attorney's Office
Richard B. Russell Federal Building
75 Ted Turner Drive SW, Suite 600
Atlanta, GA  30303-3309
Tel. (404) 581-6000   Fax (404) 581-6181

40

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEFAN PASSANTINO,

    PLAINTIFF,

    *v.*

UNITED STATES OF AMERICA,

    DEFENDANT.

Civil Action No.

4:23-cv-00300-ELR

**AMENDED MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR EXTENSION OF TIME**

Federal Rule of Civil Procedure 6(b) permits the Court broad discretion in granting extensions of time made prior to the expiration of the time originally permitted to make the subject filing. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) ("We recognize that district courts enjoy broad discretion in deciding how best to manage the cases before them."); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 859 (11th Cir. 1990) (discussing discretion afforded to district courts when ruling on requests for extensions of time); *see also* Wright & Miller, Federal Practice and Procedure § 1165 (1987).

The current deadline for Defendant to file a response to Plaintiff's Complaint was April 15, 2024. Defendant filed a Motion for Extension of Time on April 15, 2024—but the document included a typographical error. The

41

undersigned counsel still needs additional time to review the documents and information regarding the allegations contained in Plaintiff's Complaint to prepare a responsive pleading. Therefore, Defendant submits this Amended Motion respectfully reiterating its request for a 7-day extension of time, through and including April 22, 2024, to file a responsive pleading.[1]

For the Court's convenience, a proposed order granting the extension of time is attached.

Dated: April 16, 2024.

RESPECTFULLY SUBMITTED,

RYAN K. BUCHANAN
*United States Attorney*

/s/ A. Jonathan Jackson
A. JONATHAN JACKSON
*Assistant United States Attorney*
Georgia Bar No. 852077
Jonathan.Jackson2@usdoj.gov
United States Attorney's Office
Richard B. Russell Federal Building
75 Ted Turner Drive SW, Suite 600
Atlanta, GA  30303-3309
Tel. (404) 581-6000   Fax (404) 581-6181

---

[1] On April 15, 2024, Defendant's counsel reached out to Plaintiff's counsel after business hours via email to assess whether this Motion could be filed without opposition from Plaintiff. Understandably, Plaintiff's counsel has not yet had an opportunity to respond.

2

42

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

STEFAN PASSANTINO,

PLAINTIFF,

*v.*

UNITED STATES OF AMERICA,

DEFENDANT.

Civil Action No.

4:23-cv-00300-ELR

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing document has been prepared using Book Antiqua, 13-point font.

/s/ A. Jonathan Jackson
A. JONATHAN JACKSON
*Assistant United States Attorney*

43

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

STEFAN PASSANTINO,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No.

4:23-cv-00300-ELR

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2024, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will automatically send notification of such filing to the following attorneys of record:

Bryan P. Tyson (Ga. Bar No. 515411)
THE ELECTION LAW GROUP
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339
Phone: 678-336-7249
btyson@theelectionlawyers.com

*/s/ A. Jonathan Jackson*
A. JONATHAN JACKSON
*Assistant United States Attorney*

44

**TAB 20**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| STEFAN PASSANTINO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 4:23-CV-00300-ELR |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Defendant. | * | |
| | * | |

———————

**O R D E R**

———————

Plaintiff Stefan Passantino initiated this action on December 20, 2023.  See

Compl. [Doc. 1].  Plaintiff served Defendant United States of America on February

13, 2024.  [Doc. 17].  Thus, Defendant's deadline to file its answer or otherwise

respond to Plaintiff's Complaint was April 15, 2024.  See FED. R. CIV. P. 12(a)(2); id.

6(a)(1)(C).  However, the April 15, 2024 deadline has passed and Defendant has not

filed a response to Plaintiff's Complaint.[1]  Accordingly, the Court **DIRECTS** Plaintiff

to **SHOW CAUSE** within fourteen (14) days of the date of this order as to why his

claims against Defendant should not be dismissed for want of prosecution.[2]  See

---

[1] On April 15, 2024—the day of its deadline to respond to Plaintiff's Complaint—Defendant filed a motion for extension of time, which it amended by a subsequent motion the next day.  [See Docs. 18, 19].  The Court denied these motions via Minute Order for failure to show good cause.

[2] In the instant context, "showing cause" may include Plaintiff moving for a Clerk's entry of default pursuant to Federal Rule of Civil Procedure 55(a).

<u>Moskovits v. Aldridge Pite, LLP</u>, 677 F. App'x 510, 515 n.6 (11th Cir. 2017) (Rule 41(b) "permits dismissal for failure to prosecute or to comply with the Federal Rules of Civil Procedure or any order of court" (internal citation omitted)); <u>see also</u> LR 16.5, NDGa. ("[f]ailure to comply with the court's pretrial instructions may result in the imposition of sanctions, including dismissal of the case"); <u>id.</u> 41.3 (dismissal is authorized where a plaintiff fails or refuses to obey a lawful order of the Court).

     **SO ORDERED**, this 24th day of April, 2024.

Eleanor L. Ross
United States District Judge
Northern District of Georgia

46

**TAB 21**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

STEFAN PASSANTINO,

      PLAINTIFF,

      *v.*

UNITED STATES OF AMERICA,

      DEFENDANT.

Civil Action No.
4:23-cv-00300-ELR

### DEFENDANT'S MOTION FOR EXTENSION OF TIME

Defendant United States of America, by and through the United States Attorney for the Northern District of Georgia and the undersigned Assistant United States Attorney, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 6(b)(1)(B) for an extension of time in which to file a responsive pleading to Plaintiff Stefan Passantino's Complaint (Doc. 1), through and including May 3, 2024. Defendant seeks this extension of time on the grounds that failing to respond within the allotted time was a result of excusable neglect. And the Court should be made aware that it potentially lacks subject matter jurisdiction to hear the Plaintiff's claims.

47

Dated: April 25, 2024.

RESPECTFULLY SUBMITTED,

RYAN K. BUCHANAN
*United States Attorney*

*/s/ A. Jonathan Jackson*
A. JONATHAN JACKSON
*Assistant United States Attorney*
Georgia Bar No. 852077
Jonathan.Jackson2@usdoj.gov
United States Attorney's Office
Richard B. Russell Federal Building
75 Ted Turner Drive SW, Suite 600
Atlanta, GA  30303-3309
Tel. (404) 581-6000   Fax (404) 581-6181

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

STEFAN PASSANTINO,

      Plaintiff,

      *v.*

UNITED STATES OF AMERICA,

      Defendant.

Civil Action No.

4:23-cv-00300-ELR

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S  MOTION FOR EXTENSION OF TIME**

Defendant seeks an extension of time in which to file a responsive pleading under Fed. R. Civ. P. 6(b)(1)(B) on the grounds that its failing to do so within the allotted time was a result of excusable neglect.

## I.      Procedural History

On December 20, 2023, Plaintiff filed the subject Complaint [Doc. 1]. Plaintiff served Defendant on February 14, 2024 [Doc. 15-1]. The deadline for Defendant to file a response to Plaintiff's Complaint was April 15, 2024. Defendant filed a Motion for Extension of Time on April 15, 2024—but the document included a typographical error [Doc. 18]. Defendant then filed an Amended Motion for Extension of time on April 16, 2024 [Doc. 19]. The original and Amended motions were filed prior to Plaintiff's counsel having an opportunity to indicate whether

they would oppose their filing. On April 16, 2024, Plaintiff's counsel consented to the extension. However, on April 16, 2024, the Court denied Defendants motions for failure to show due cause. On April 17, 2024, Plaintiff's counsel withdrew consent to the Defendant's motions for extension.

## II.    Defendant's grounds for seeking extension.

### Defendant's Excusable Neglect Warrants Additional Time to Respond to Plaintiff's Complaint

Defendant's failure to file a responsive pleading satisfies the Supreme Court's four factor test for determining whether an oversight constitutes excusable neglect:

> The Supreme Court has designated four factors that a court should consider when determining whether a late filing results from excusable neglect: (1) "the danger of prejudice to the debtor"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control of the movant"; and (4) "whether the movant acted in good faith.

*Satco Prod., Inc. v. Seoul Semiconductor Co.*, 551 F. Supp. 3d 1329, 1331 (N.D. Ga. 2021).

### 1)  Reason for the delay

The undersigned counsel required additional time draft a complete responsive pleading at the time a response was due. Plaintiff's claims involve

2

50

allegations against the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol. Several of the Members of this Committee, some named in Plaintiff's Complaint, are high profile politicians that are not as readily accessible as typical executive agency employees—requiring more time to acquire records and determine the parties in possession of relevant documents. Moreover, undersigned Defendant's counsel had just returned from 3 months of parental leave when Plaintiff's complaint was served and was faced with multiple deadlines in other outstanding cases upon his return. While Defendant's counsel was in the process of drafting a responsive pleading at the time a response was due, he needed more time to draft one that fully encompassed all the Defendant's defenses. Moreover, Defendant believes that the Court needs to be made fully aware that it may not have subject matter jurisdiction to hear Plaintiff's claims. *See*, *McIntosh v. Royal Caribbean Cruises, Ltd*. 5 F.4th 1309, 1312 (11th Cir. 2021) (noting that: "A federal court has an independent duty to ensure that it has subject-matter jurisdiction"). Allowing Defendant more time to file a responsive pleading will ensure that the case is not improperly before the Court, as Defendant will be able to explain these issues, and the Plaintiff's complaint can be dismissed accordingly.

3

51

### 2)  Danger of prejudice

Less than 30 days have passed since the original deadline to file a responsive pleading. In light of these circumstances, there is no danger of undue prejudice to Plaintiff.

### 3)  Length of delay and potential impact on proceedings

As noted above, the delay here is minimal—less than 30 days, and the proceedings will not be impacted by the Defendant filing a responsive pleading.

### 4)  Defendant acted in good faith

Defendant made a good faith error in failing to respond to the Complaint—there was no intent to gain an advantage. More time was needed to respond, and Defendant sought an extension—albeit on the same day as the filing deadline. Whether the defendant sought to take advantage of an untimely filing is the main test courts use to assess the good faith prong of the excusable neglect test. *J.V.O. v. Fulton Cnty. Sch. Dist.*, No. 1:19-CV-01192, 2019 WL 12433361, at *3 (N.D. Ga. May 17, 2019) ("In the good-faith prong of the excusable-neglect inquiry, courts 'assess whether the movant intentionally sought advantage by untimely filing.' *Yang*, 435 F. App'x at 844 (citing *Cheney*, 71 F.3d at 850)).

4

52

### III.   Conclusion

For the reasons mentioned above, Defendant United States of America respectfully requests an extension of time, through and including May 3, 2024, to file a responsive pleading.

For the Court's convenience, a proposed order granting the extension of time is attached.

Dated: April 25, 2024.

RESPECTFULLY SUBMITTED,

RYAN K. BUCHANAN
*United States Attorney*

*/s/ A. Jonathan Jackson*
A. JONATHAN JACKSON
*Assistant United States Attorney*
Georgia Bar No. 852077
Jonathan.Jackson2@usdoj.gov
United States Attorney's Office
Richard B. Russell Federal Building
75 Ted Turner Drive SW, Suite 600
Atlanta, GA  30303-3309
Tel. (404) 581-6000   Fax (404) 581-6181

5

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

STEFAN PASSANTINO,

   PLAINTIFF,

   *v.*

UNITED STATES OF AMERICA,

   DEFENDANT.

Civil Action No.

4:23-cv-00300-ELR

## <u>CERTIFICATE OF COMPLIANCE</u>

  I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing document has been prepared using Book Antiqua, 13-point font.

       */s/ A. Jonathan Jackson*
       A. JONATHAN JACKSON
       *Assistant United States Attorney*

54

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

STEFAN PASSANTINO,

PLAINTIFF,

*v.*

UNITED STATES OF AMERICA,

DEFENDANT.

Civil Action No.

4:23-cv-00300-ELR

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2024, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will automatically send notification of such filing to the following attorneys of record:

Bryan P. Tyson (Ga. Bar No.515411)
THE ELECTION LAW GROUP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339

Jesse R. Binnall
Shawn M. Flynn
Jared J. Roberts
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314

*/s/ A. Jonathan Jackson*
A. JONATHAN JACKSON
*Assistant United States Attorney*

55

**TAB 22**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

**STEFAN PASSANTINO**,

    *Plaintiff,*

**v.**

    Case No. 4:23-CV-00300-ELR

**UNITED STATES OF AMERICA**,

    *Defendant.*

## MOTION FOR CLERK'S ENTRY OF DEFAULT
### PURSUANT TO RULE 55

Plaintiff Stefan Passantino requests that the clerk's office enter default against the Defendant, the United States of America, pursuant to Fed. R. Civ. P. 55(a), for failure to plead or otherwise defend this action. In support of default, Plaintiff provides a declaration of Jesse R. Binnall, which is attached to this Motion.

On December 20, 2023, Plaintiff filed his Complaint. Dkt. No. 1. The government was served with the complaint on February 13, 2024, at the United States Department of Justice, Dkt. No. 17, and on February 14, 2024, on the United States Attorney for the Northern District of Georgia, Dkt. No. 17-1. The government's response was due on April 15, 2024, pursuant to Fed. R. Civ. P. 12(a)(2). On the evening of April 15, 2024, the government moved for an extension of its deadline to respond. Dkt. Nos. 18, 19. On April 16, 2024, this

56

Court denied that extension of time by minute order. As of the time of this filing, the United States of America has not answered or otherwise responded to the Complaint and thus it is in default. Accordingly, Plaintiff requests that the clerk's office enter a default under Fed. R. Civ. P. 55(a). *See Ramb v. Paramatma*, No. 2:19-CV-21-RWS, 2021 WL 9349985, at *1 (N.D. Ga. Dec. 8, 2021) ("As of the date of this Order, the docket reflects that neither entity has legal representation, and the enlarged time period provided by the Court has expired. For this reason alone, entry of default against these entities pursuant to FED. R. CIV. P. 55(a) is appropriate." (citing *PBS&J Constructors, Inc. v. I.L. Fleming, Inc.*, 2015 WL 7779214, at *2 (N.D. Ga. Dec. 2, 2015)). Upon entry of the default, Plaintiff will proceed to seek a default judgment pursuant to Federal Rule Civil Procedure 55(d). *Id.* at n. 1 ("Rule 55(a) provides for *"entering a default"* against a party who "has failed to plead or otherwise defend" as opposed to granting or entering default judgment.") (citing FED. R. CIV. P. 55(a) (emphasis in original)). In contrast, pursuant to Federal Rule of Civil Procedure 55(d), "default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court." Therefore, Plaintiff will move for a default *judgment* separately following the entry of the default.

Dated: April 25, 2024                    STEFAN PASSANTINO
                                         By Counsel

57

Respectfully submitted,

*/s/ Jesse R. Binnall*
Jesse R. Binnall (*pro hac vice*)
Shawn M. Flynn (*pro hac vice*)
Jared J. Roberts (*pro hac vice*)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com
        shawn@binnall.com
        jared@binnall.com

Bryan P. Tyson (Ga. Bar No. 515411)
THE ELECTION LAW GROUP
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339
Phone: 678-336-7249
Email: btyson@theelectionlawyers.com

*Attorneys for Plaintiff*

3

58

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing motion was prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ Jesse R. Binnall
Jesse R. Binnall (*pro hac vice*)
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on April 25, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall (*pro hac vice*)
*Attorney for Plaintiff*

59

**TAB 22-1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

**STEFAN PASSANTINO**,

    *Plaintiff,*

**v.**

                                     Case No. 4:23-CV-00300-ELR

**UNITED STATES OF AMERICA**,

    *Defendant.*

## DECLARATION OF JESSE R. BINNALL IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CLERK'S ENTRY OF DEFAULT

I, Jesse R. Binnall, declare:

1.    I am an attorney admitted to practice before this Court *pro hac vice* and am managing partner at the law firm of the Binnall Law Group. I am counsel for Plaintiff, Stefan Passantino, in the above-captioned matter.

2.    I submit this Declaration in support of Plaintiff's Motion for Entry of Default submitted pursuant to Federal Rule of Civil Procedure 55(a).

3.    This matter arises under the Federal Tort Claims Act due to acts of government officials involved with the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol and their acts to wrongfully attack the reputation of Plaintiff Stefan Passantino.

The claim was first served on the House of Representatives on April 10, 2023. The government has had over a year to respond to Mr. Passantino's allegations.

4.     Defendant, United States of America, was properly served in this case on February 14, 2024. Dkt. No. 17-1.

5.     Based on this date of service and the Federal Rules of Civil Procedure, the deadline for Defendant to file an answer or other responsive filing was April 15, 2024.

6.     On the evening of April 15, 2024, the government sought Plaintiff's consent for a seven-day extension to respond to the Complaint. Instead of sending the request to all counsel of record in the case, the government only sent the request to my co-counsel, Mr. Tyson, who was concurrently counsel in a trial in this district and did not see the request prior to the expiration of the deadline. *See* Exhibit 1.

7.     On the evening of April 15, 2024, about two hours after requesting Plaintiff's consent, Defendant moved to extend this deadline. Dkt. 18. Plaintiff did consent to the motion, on the morning of April 16, 2024, which was noted in an amended motion filed with the Court shortly thereafter. Dkt. 19. Nevertheless, the Court promptly denied the motion by minute order on April 16, 2024 because the movant failed to establish good cause.

8.     Once the Court denied the motion Plaintiff had consented to, counsel for the government then contacted the Court's chambers *ex parte* and without prior

notice to Plaintiff to seek direction from the Court's staff. The Court's staff advised counsel to not engage in further *ex parte* communication and copied Plaintiff's counsel on its response. *See* Exhibit 2.

9.     Counsel for the parties then agreed to meet and confer to seek an agreed path forward in the litigation. A telephone conference was held on April 19, 2024, wherein the government agreed that if Plaintiff would consent to Defendant filing an answer (and not any motion pursuant to Rule 12(b)) and if the parties agreed to hold a Rule 26(f) discovery conference on April 24, 2024, then the government could file an answer on or before May 3, 2024. The government was also obligated to circulate its proposed consent filing to Plaintiff for review. It declined to do so until approximately 4:58 p.m. on April 23, 2024.  *See* Exhibit 3.

10.     Mr. Tyson responded to that email as follows: "While we continue to consent to the relief as we previously discussed, we do not consent to the motion as drafted. We have some revisions to the motion that should be straightforward. Are you available for a call tomorrow?" Exhibit 4.

11.     As a result of this email, and despite the fact that the government had already represented to the Court's staff by email that a Rule 26(f) conference would occur on April 24, 2024, counsel for the government decided to alter its agreement with Plaintiffs to file only an answer and hold a prompt Rule 26(f) conference. *See* Exhibit 5.

62

12.    On April 24, 2024, the Court instructed Plaintiff to show cause as to why his case should not be dismissed for failure to prosecute. Dkt. 20. Plaintiff is bringing this motion for a clerk's entry of default to comply with that order and show cause.

13.    Specifically, the government is in default; it did not file any responsive pleading within the deadline to do so.

14.    No answer or other responsive filing has been filed since April 15, 2024.

15.    Defendant is not a minor, an incapacitated person, or a person in the military.

16.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 25th day of April 2024, at Alexandria, Virginia.

/s/ Jesse R. Binnall
Jesse R. Binnall
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com

*Attorney for Plaintiff*

63

**TAB 24**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| STEFAN PASSANTINO, | |
| PLAINTIFF, | Civil Action No. |
| v. | 4:23-cv-00300-ELR |
| UNITED STATES OF AMERICA | |
| DEFENDANTS. | |

## DEFENDANT'S ANSWER AND DEFENSES TO COMPLAINT

Defendant United States of America hereby answer Plaintiff's Complaint (ECF No. 1) and presents its defenses as follows:

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims, which are expressly barred by the exceptions to the Federal Tort Claims Act under 28 U.S.C. § 2680.

### SECOND DEFENSE

Plaintiff's claims are barred by the doctrine of sovereign immunity.

### THIRD DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

64

## FOURTH DEFENSE

Plaintiff's alleged injuries and damages are not the direct and proximate result of any negligence, wrongful act, or omission by or attributable to Defendant.

## FIFTH DEFENSE

Plaintiff's recovery for any injury, damage, or loss should be reduced by Plaintiff's own degree of responsibility or fault for the injury, damages, or losses claimed.

## SIXTH DEFENSE

Plaintiff has failed to mitigate, obviate, diminish or otherwise act to avoid, lessen or reduce the injuries, damages, or losses alleged, and they must be limited accordingly.

## SEVENTH DEFENSE

Plaintiff's award of damages must be limited by the total amount of Plaintiff's administrative claim(s). 28 U.S.C. § 2675(b).

## EIGHTH DEFENSE

The Affirmative Defenses that have been asserted in this Answer are not exhaustive, and the United States hereby expressly reserves the right to amend this Answer to bring additional Affirmative Defenses over the course of this action, as the facts and evidence may warrant.

**RESPONSES TO SPECIFIC ALLEGATIONS IN COMPLAINT**

1.   Defendant denies the allegations in Paragraph 1 of the Complaint.

2.   Defendant denies the allegations in Paragraph 2 of the Complaint.

3.   Defendant denies the allegations in Paragraph 3 of the Complaint.

4.   Defendant denies the allegations in Paragraph 4 of the Complaint.

5.   Defendant denies the allegations in Paragraph 5 of the Complaint.

6.   Defendant denies the allegations in Paragraph 6 of the Complaint.

**PARTIES**

7.   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7 of the Complaint.

8.   Defendant admits that the United States of America is comprised, *inter alia*, of the United States Congress and its constituent federal government agencies and departments. Defendant admits that it is usually responsible for the negligent or wrongful acts of its employees or agents, acting within the scope of their employment or agency, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq*. Defendant otherwise denies the remaining allegations in Paragraph 8 of the Complaint.

## JURISDICTION AND VENUE

9.   Defendant admits that the claims in this case arise under federal law and the United States is a defendant; however, Defendant denies that the Court has subject matter jurisdiction over these claims and denies the remaining allegations in Paragraph 9 of the Complaint.

10. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10 of the Complaint.

## FACTUAL BACKGROUND

### Background of the Parties

11. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11 of the Complaint.

12. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12 of the Complaint.

13. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13 of the Complaint.

14. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14 of the Complaint.

15. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15 of the Complaint.

16. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16 of the Complaint.

### *THE COMMITTEE SEEKS CASSIDY HUTCHINSON'S TESTIMONY*

17. Defendant admits the allegations in Paragraph 17 of the Complaint.

18. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18 of the Complaint.

19. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19 of the Complaint.

20. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20 of the Complaint.

21. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21 of the Complaint.

22. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 of the Complaint.

23. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23 of the Complaint.

24. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24 of the Complaint.

25. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25 of the Complaint.

26. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26 of the Complaint.

27. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27 of the Complaint.

28. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28 of the Complaint.

29. Defendant admits the allegations in Paragraph 29 to the extent they accurately cite Ms. Hutchinson's testimony. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 29 of the Complaint.

30. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30 of the Complaint.

31. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31 of the Complaint.

32. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 of the Complaint.

33. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33 of the Complaint.

### THE COMMITTEE ESTABLISHED A BACKCHANNEL BEHIND MR. PASSANTINO'S BACK WITHOUT DUE PROCESS OR NOTICE

34. Defendant denies the allegations in Paragraph 34 of the Complaint.

35. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35 of the Complaint.

36. Defendant denies that the Committee acted "unjustifiably" or "improperly." Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 36 of the Complaint.

37. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 of the Complaint.

38. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38 of the Complaint.

39. Defendant denies the allegations in Paragraph 39 of the Complaint.

40. Defendant admits that Ms. Hutchinson appeared before Congresswoman Elizabeth Cheney on May 12, 2022. Defendant lacks knowledge or information sufficient to admit or deny whether Senior Investigative Counsel Dan George was present at that meeting. Defendant denies the remaining allegations in Paragraph 40 of the Complaint.

41. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41 of the Complaint.

42. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42 of the Complaint.

43. Defendant admits that Ms. Hutchinson appeared before the Committee on June 28, 2022. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 43 of the Complaint.

44. Defendant admits the allegations in Paragraph 44 of the Complaint.

45. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45 of the Complaint.

46. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46 of the Complaint.

47. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47 of the Complaint.

48. Defendant denies the allegations in Paragraph 48 of the Complaint.

49. Defendant admits the allegations in Paragraph 49 of the Complaint.

50. Defendant admits that the Committee issued an executive summary of its final report on December 19, 2022, without consulting Mr. Passantino as to the substance of the summary. Defendant denies that the Committee was required to consult Mr. Passantino regarding the substance of its executive summary and otherwise denies the allegations in Paragraph 50 of the Complaint.

51. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51 of the Complaint.

52. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52 of the Complaint.

53. Defendant lacks knowledge or information sufficient to determine the facts concerning what CNN deems is newsworthy and otherwise denies the remaining allegations in Paragraph 53 of the Complaint.

54. Defendant admits the allegations in Paragraph 54 of the Complaint to the extent they accurately describe and quote from the referenced CNN article.

55. Defendant admits the allegations in Paragraph 55 of the Complaint to the extent they accurately quote from the referenced CNN article. Defendant denies the remaining allegations in Paragraph 55 of the Complaint.

56. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 56 of the Complaint.

57. Defendant denies that appearing before a House Committee is "wholly private." Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 57 of the Complaint.

58. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 58 of the Complaint.

59. Defendant admits the allegations in Paragraph 59 to the extent they accurately cite Ms. Hutchinson's testimony. Defendant otherwise lacks

knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 59 of the Complaint.

60. Defendant admits the allegations in Paragraph 60 to the extent they accurately cite Ms. Hutchinson's testimony. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 60 of the Complaint.

61. Defendant admits the allegations in Paragraph 61 of the Complaint to the extent they accurately quote from the referenced CNN article. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 61 of the Complaint.

62. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62 of the Complaint.

63. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 63 of the Complaint.

64. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 64 of the Complaint.

65. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 65 of the Complaint.

66. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 66 of the Complaint.

67. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 67 of the Complaint.

68. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 68 of the Complaint.

69. Defendant denies that the public had no interest in the attorney-client relationship between Mr. Passantino and Ms. Hutchinson. The public has an interest in the subject matter of the Committee's investigation and the credibility of witness testimony. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 69 of the Complaint.

70. Defendant denies the allegations in Paragraph 70 of the Complaint.

71. Defendant denies that the Committee intended to cause harm to Mr. Passantino. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 71 of the Complaint.

72. Defendant denies that any of the Committee's actions are properly characterized as "unjustifiable, outrageous" or "malicious." Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 72 of the Complaint.

74

73. Defendant denies that any of the Committee's actions are properly characterized as "egregious." Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 73 of the Complaint.

74. Defendant denies that any of the Committee's actions are properly characterized as "false." Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 74 of the Complaint.

75. Defendant denies the allegations in Paragraph 75 of the Complaint.

## CAUSES OF ACTION

### COUNT I
**Federal Tort Claims Act
Invasion of Privacy**

76. Defendant responds to Paragraph 76 of the Complaint by re-incorporating and restating its responses to Paragraphs 1 through 75 of the Complaint.

77. Defendant admits the allegations in Paragraph 77 of the Complaint.

78. Defendant admits that Plaintiff filed an administrative claim under 28 U.S.C. § 2675(a) and that such claim has been denied by letter dated October 19, 2023. Defendant otherwise lacks knowledge or information sufficient to form a

belief about the truth of the remaining allegations in Paragraph 78 of the Complaint.

79. Defendant denies the allegations in Paragraph 79 of the Complaint. Defendant's records indicate that Plaintiff's administrative claim was received on April 18, 2023.

80. Defendant denies the allegations in Paragraph 80 of the Complaint. Plaintiff's administrative claim was denied by letter dated October 19, 2023.

81. In response to the allegations in Paragraph 81 of the Complaint, Defendant admits it is usually responsible for the negligent or wrongful acts of its employees or agents, acting within the scope of their employment or agency, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* However, Defendant denies any allegations of wrongdoing or liability under the Federal Tort Claims Act and otherwise denies the remaining allegations in Paragraph 81 of the Complaint.

82. Defendant denies the allegations in Paragraph 82 of the Complaint.

83. Defendant denies the allegations in Paragraph 83 of the Complaint.

84. Defendant denies the allegations in Paragraph 84 of the Complaint.

85. Defendant denies the allegations in Paragraph 85 of the Complaint.

86. Defendant denies the allegations in Paragraph 86 of the Complaint.

**COUNT II**
**Civil Conspiracy**

87. Defendants responds to Paragraph 87 of the Complaint by re-incorporating and restating its responses to Paragraphs 1 through 86 of the Complaint.

88. Defendant denies the allegations in Paragraph 88 of the Complaint.

89. Defendant denies the allegations in Paragraph 89 of the Complaint.

90. Defendant denies the allegations in Paragraph 90 of the Complaint.

**JURY DEMAND**

91. Defendant denies that Plaintiff may try his claims before a jury as a jury is not available to him on these claims under federal law. *See* 28 U.S.C. § 2402. Defendant otherwise denies the allegations in Paragraph 91 of the Complaint.

**PRAYER FOR RELIEF**

92. Defendant denies the allegations in Paragraph 92 of the Complaint and denies that Plaintiff is entitled to relief on his claims alleged in the Complaint.

93. Defendant denies any allegation not specifically addressed above.

WHEREFORE, having fully answered each and every allegation contained in the Complaint, the United States prays:

(a)     That this action be dismissed;

(b)     For an award of all allowable costs, including all court costs, against Plaintiff;

(c)  That pursuant to 28 U.S.C. § 1346(b) this action by Plaintiff is strictly

limited to the amount of his administrative claim; and

(d)  That the Court grant the United States such other relief as is just and

proper.

Dated: April 29, 2024.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

*/s/ Andres H. Sandoval*
A. JONATHAN JACKSON
*Assistant United States Attorney*
Georgia Bar No. 852077
Jonathan.Jackson2@usdoj.gov
ANDRES H. SANDOVAL
*Assistant United States Attorney*
Georgia Bar No. 643257
Andres.Sandoval@usdoj.gov
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404) 581-6000   Fax (404) 581-6181

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

STEFAN PASSANTINO,

PLAINTIFF,

v.

UNITED STATES OF AMERICA

DEFENDANTS.

Civil Action No.

4:23-cv-00300-ELR

**Certificate of Compliance**

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing

has been prepared using Book Antiqua, 13-point font.

Dated: April 29, 2024.

/s/ Andres H. Sandoval
ANDRES H. SANDOVAL
*Assistant United States Attorney*

79

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| STEFAN PASSANTINO, | |
| PLAINTIFF, | Civil Action No. |
| v. | 4:23-cv-00300-ELR |
| UNITED STATES OF AMERICA | |
| DEFENDANTS. | |

**Certificate of Service**

I served this document today by filing it using the Court's CM/ECF

system, which automatically notifies counsel of record.

Dated: April 29, 2024.

/s/ Andres H. Sandoval
ANDRES H. SANDOVAL
*Assistant United States Attorney*

80

**TAB 25**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

STEFAN PASSANTINO,

PLAINTIFF,

*v.*

UNITED STATES OF AMERICA

DEFENDANTS.

Civil Action No.

4:23-cv-00300-ELR

## DEFENDANT'S MOTION TO SET ASIDE DEFAULT

Defendant the United States of America respectfully moves the Court

under Federal Rule of Civil Procedure 55(c) to set aside the default entered

against it on April 26, 2024. The grounds for this motion are more particularly set

forth in the accompanying memorandum of law.

Dated: April 29, 2024.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

*/s/ Andres H. Sandoval*
A. JONATHAN JACKSON
*Assistant United States Attorney*
Georgia Bar No. 852077
Jonathan.Jackson2@usdoj.gov
ANDRES H. SANDOVAL
*Assistant United States Attorney*

81

Georgia Bar No. 643257
Andres.Sandoval@usdoj.gov
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404) 581-6000   Fax (404) 581-6181

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

STEFAN PASSANTINO,

      PLAINTIFF,

      *v.*

UNITED STATES OF AMERICA

      DEFENDANTS.

Civil Action No.

4:23-cv-00300-ELR

**Certificate of Compliance**

    I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing document has been prepared using Book Antiqua, 13-point font.

Dated: April 29, 2024.

/s/ Andres H. Sandoval
_____
ANDRES H. SANDOVAL
*Assistant United States Attorney*

83

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

STEFAN PASSANTINO,

    PLAINTIFF,

    *v.*

UNITED STATES OF AMERICA

    DEFENDANTS.

Civil Action No.

4:23-cv-00300-ELR

**Certificate of Service**

I served this document today by filing it using the Court's CM/ECF

system, which automatically notifies counsel of record.

Dated: April 29, 2024.

*/s/ Andres H. Sandoval*
ANDRES H. SANDOVAL
*Assistant United States Attorney*

84

**TAB 25-1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| STEFAN PASSANTINO, | |
| PLAINTIFF, | Civil Action No. |
| v. | 4:23-cv-00300-ELR |
| UNITED STATES OF AMERICA | |
| DEFENDANTS. | |

**<u>MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE DEFAULT</u>**

Good cause exists to set aside the default entered against Defendant for three reasons. First, Defendant has not acted culpably or willfully in not timely answering the Complaint. Second, there is no undue prejudice to Plaintiff in litigating this case on the merits since it is still in its very early stages. And, third, contemporaneously with the filing of this motion, Defendant has filed its answer to the Complaint, which presents meritorious defenses—including that the Court lacks subject matter jurisdiction.

**I.    <u>Facts</u>**

On December 20, 2023, Plaintiff filed a two-count Complaint, in which he asserts an Invasion of Privacy claim under the Federal Tort Claims Act and a Civil Conspiracy claim. The Complaint broadly asserts that the United States House Select Committee to Investigate the January 6th Attack on the United

85

States Capitol ("Select Committee") wrongfully acted to destroy Plaintiff's legal reputation and career. It alleges that the Select Committee issued a public communication in which it expressed concerns regarding potential efforts by "certain counsel" to obstruct its investigation and advise clients to provide false or misleading testimony. Complaint at ¶ 49. And, by then leaking certain transcripts of interviews, the Select Committee led media outlets to assume Mr. Passantino is one such counsel. *Id.* at ¶ 51.[1]

Service of the Complaint and Summons was effected on Defendant by certified mail to the U.S. Attorney General on February 13 and by personal service on the U.S. Attorney's Office on February 14. *See* ECF No. 17. Defendant's responsive pleading or motion was thus due on April 15. Fed. R. Civ. P. 12(a)(2).

On April 15, Defendant sought an additional seven days to respond to the Complaint.[2] *See* ECF No. 18. That motion was denied on April 16 by minute order, wherein the Court found that Defendant had failed to show good cause for an extension. The parties subsequently conferred on April 19 to determine if the they could agree to an extension of Defendant's deadline to respond to the Complaint. Though the parties attempted to reach an agreement, they ultimately did not.

---

[1]     Defendant restates, but does not concede, these facts for this motion.

[2]     Defendant amended its motion for an extension of time on April 16, due to a typographical error. *See* ECF No. 19.

On April 24, the Court entered an order to show cause, directed to Plaintiff, as to why this case should not be dismissed for want of prosecution. *See* ECF No. 20. In a footnote to that order, the Court indicated that "showing cause may include Plaintiff moving for a Clerk's entry of default pursuant to Federal Rule of Civil Procedure 55(a)." *Id.* at 1 n.2.

The following day, Defendant renewed its motion for an extension of time to file a responsive pleading to the Complaint (requesting through May 3 to file an answer) and provided additional grounds for the requested extension. *See* ECF No. 21. This motion remains outstanding. Separately, consistent with the order to show cause, Plaintiff filed a motion for entry of default. *See* ECF No. 22. The clerk of court entered a default against Defendant on April 26, in accordance with Rule 55(a) of the Federal Rules of Civil Procedure. To date, no default judgment has been entered against Defendant.

## II.  **Argument**

### A.  Applicable Law

Whenever possible, cases should be decided on their merits; for that reason, courts view defaults with disfavor. *See Valdez v. Feltman (In re Worldwide Web Sys.)*, 328 F.3d 1291, 1295 (11th Cir. 2003) ("However, there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor."). A default may be set aside under Rule 55(c) for "good cause." The

standard is intended to be a "liberal one."  *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 n.7 (11th Cir. 2014). Further, while "good cause" is not susceptible to a precise formula, courts generally consider whether the default was "culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).

> B.  <u>Good cause exists to set aside the default.</u>

Here, the default should be aside because: (1) Defendant has not acted culpably or willfully in not timely answering the Complaint; (2) there is no undue prejudice to Plaintiff in litigating this case on the merits since it is still in its very early stages; and (3) Defendant presents meritorious defenses in its answer (filed contemporaneously with this motion)—including that the Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims.

First, Defendant has not acted culpably or willfully in not timely answering the Complaint. Before the expiration of its original deadline, Defendant moved for a seven-day extension of time to respond to the Complaint. *See* ECF Nos. 18, 19. And though Defendant's first motion was denied, Defendant has filed a revised motion requesting until May 3 and providing additional grounds for why the extension is needed. *See* ECF No. 21. Moreover, Defendant has appeared through counsel, has been communicative with the Court and

Plaintiff's counsel (including by attempting to negotiate an extension of time), and is actively participating in this litigation. Similar to *Perez*, there is no "evidence suggesting a pattern of delay or willful conduct" on the part of Defendant. *Perez*, 774 F.3d at 1339.

Second, setting aside the default will not unduly prejudice Plaintiff. This case is still in its very early stages. The parties have not engaged in discovery, litigated dispositive motions, or otherwise taken substantive steps to bring this case to resolution. Further, Defendant's requested extensions amount to only three additional weeks beyond its original deadline, and the default has been outstanding for only two business days. By contrast, in *Compania Dominicana de Aviacion*, the court determined that the defendant acted willfully where it had been given ample time to comply with discovery orders and secure counsel but had failed to do so. *See Compania Dominicana de Aviacion*, 88 F.3d at 952 (noting, "when a litigant has been given ample opportunity to comply with court orders but fails to effect any compliance, the result may be deemed willful.").

However, permitting the default to stand will significantly prejudice Defendant's ability to defend. At this juncture, Defendant's misstep amounts to a single missed deadline. Defendant is regretful of this misstep and has acted quickly to correct it. But this misstep should not be the reason to catapult this litigation to the judgment phase. As the Court in *Perez* put it, "process matters.

89

And we have a strong preference for deciding cases on the merits—not based on a single missed deadline—whenever reasonably possible." *Perez*, 774 F.3d at 1332.

Third, Defendant's answer presents meritorious defenses. A threshold issue here is whether the Court has subject matter jurisdiction to adjudicate Plaintiff's claims. Purportedly arising under the Federal Tort Claims Act, Plaintiff's claim for "Invasion of Privacy" is libel or slander by another name. As such, it is expressly excepted from the ambit of the Federal Tort Claims Act and Plaintiff cannot show a waiver of sovereign immunity. *See* 28 U.S.C. § 2680(h) ("The provisions of [the Federal Tort Claims Act] shall not apply to. . .(h) [a]ny claim arising out of. . .libel, slander, misrepresentation, deceit, or interference with contract rights[.]"); *Block v. Neal*, 460 U.S. 289, 297 (1983) ("[T]he statutory exception undoubtedly preserves sovereign immunity with respect to a broad range of Government actions.").

For nearly forty years it has been the law of this Circuit that Invasion of Privacy claims of the type Plaintiff asserts here are excepted from the Federal Tort Claims Act under § 2680(h). In *Metz*, the Eleventh Circuit concluded that a plaintiff's claims for "false light" and intentional infliction of emotional distress ultimately arose out of the allegedly defamatory statements of government officials and were thus barred. *Metz v. United States*, 788 F.2d 1528, 1535 (11th Cir.

1986). The court reasoned that "the government officials' allegedly slanderous statements are essential to Mr. Metz's action for false light privacy and Ingrid Metz's claim for intentional infliction of emotional distress. . .These claims, therefore, 'arise out of' slander for the purposes of § 2680(h) and are not actionable under the FTCA." *Id.* (internal citation omitted).

      The Complaint here attempts to avoid this outcome by asserting that Plaintiff's claims are "not based on the defamatory sting" of an allegedly damaging news article; "rather [the claims] are based on the publication of private information." Complaint at ¶ 83. But substance—not form—controls whether a claim falls within the exception under § 2680(h). As the *Metz* court explained, "a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim." *Id.* at 1534; *see also O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001) (barring various negligence and tort claims by concluding they were based on "the release to the public, and in particular to the media, of greatly disparaging defamatory statements[.]");

*Cadman v. United States*, 541 F. App'x 911 (11th Cir. 2013) (affirming dismissal of false light/invasion of privacy claims under the libel and slander exceptions).[3]

Plaintiff claims the root of the alleged harm is the "publication of private information." But the complaint fails to identify what that information is. The damaging information does not appear to be purportedly private interview transcripts; to the contrary, Plaintiff alleges those transcripts benefit him by showing he did not act to obstruct the Select Committee's investigation. *See* Complaint at ¶ 59 ("As the transcripts of Ms. Hutchinson's testimony make clear, she confirmed under oath that Mr. Passantino did not advise her to lie to the Committee or perjure herself.").

Rather the asserted harm stems from the Select Committee's allegedly defamatory statements expressing concerns regarding potential efforts by "certain counsel" to obstruct its investigation. *See* Complaint at ¶ 49. The defamatory statements are the government action that is essential to all of Plaintiff's claims. Indeed, it is because of these statements from the Select

---

[3]     Federal courts in Washington D.C. (which supplies the "law of the place") have similarly concluded that in assessing the true nature of a claim to determine whether it is excepted by § 2680(h), a court "must scrutinize the alleged cause of [the] injury" rather than the name given to the claim. *Kugel v. United States*, 947 F.2d 1504, 1507 (D.C. Cir. 1991) (affirming dismissal of tort claims alleging injury due to the dissemination of allegedly defamatory information by the FBI); *see also Edmonds v. United States*, 436 F.Supp.2d 28, 36-37 (D.D.C. 2006) (dismissing, *inter alia*, "false light" invasion of privacy claim under D.C. law as barred by the libel/slander exception under § 2680(h)).

Committee that Plaintiff alleges the media outlets were able to put two and two together and determine that Mr. Passantino may be that "certain counsel." *See id.* at ¶ 51. Moreover, the Complaint repeatedly cites to the Select Committee's efforts to create a "narrative" or "story" against him, which caused him economic, reputational, and emotional harm. *See e.g.*, Complaint at ¶ 6 ("The Committee gave an outrageous narrative to media sources about Mr. Passantino's non-existent efforts to obstruct their investigation by impacting the testimony of their 'star' witness, Cassidy Hutchinson. . ."); *id.* at ¶ 68 (". . .CNN chose to run the story, *likely because it was given to CNN by the Committee, a member of the Committee, or a staffer of the Committee*; a source that CNN considered to be beyond reproach.") (emphasis added).[4]

Thus, the essential element at the heart of Plaintiff's claims is the allegedly defamatory statements (or "narrative," or "story") published by the Select Committee. *See* Complaint at ¶ 49. Plaintiff's claims therefore "arise out of"

---

[4]     In a similar situation, the plaintiff in *O'Ferrell* attempted to skirt the language of § 2680(h) by claiming the alleged injury flowed not from defamatory statements but from the "mental anguish as a result of their personally hearing and reading the false statements." *O'Ferrell*, 253 F.3d at 1266 (emphasis omitted). Unconvinced, however, the court reiterated that "the exceptions in the FTCA are not limited to the torts specifically named therein, but rather encompass situations where 'the underlying governmental conduct which constitutes an excepted cause of action is essential to plaintiff's claim.'" *Id.* (citing *Metz*, 788 F.2d at 1534). Here too, the Court should look beyond Plaintiff's characterizations of his claims.

93

slander or libel and are barred by the intentional tort exception under § 2680(h). *See Metz*, 788 F.2d at 1535.

      C. <u>The default is not likely to lead to a default judgment.</u>

Finally, the default should be set aside because it is not likely to lead to a default judgment. Federal Rule of Civil Procedure 55(d) bars the entry of a default judgment against the United States, its officers, or its agencies unless a claimant establishes a claim or right to relief by evidence that satisfies the Court. Fed. R. Civ. P. 55(d). Here, Plaintiff has provided no such evidence and could not do so in light of the jurisdictional defects with his claims.

**III.**   <u>**Conclusion**</u>

For these reasons, there is good cause to set aside the default and permit the parties to litigate this matter on the merits. Defendant respectfully requests that this motion be granted, the default be set aside, and the Court grant any further relief it deems appropriate.

Dated: April 29, 2024.

                    Respectfully submitted,

                    RYAN K. BUCHANAN
                    *United States Attorney*

                    */s/ Andres H. Sandoval*
                    A. JONATHAN JACKSON
                    *Assistant United States Attorney*
                    Georgia Bar No. 852077
                    Jonathan.Jackson2@usdoj.gov
                    ANDRES H. SANDOVAL
                    *Assistant United States Attorney*
                    Georgia Bar No. 643257
                    Andres.Sandoval@usdoj.gov
                    600 U.S. Courthouse
                    75 Ted Turner Drive SW
                    Atlanta, GA 30303
                    (404) 581-6000   Fax (404) 581-6181

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

STEFAN PASSANTINO,

    PLAINTIFF,

    *v.*

UNITED STATES OF AMERICA

    DEFENDANTS.

Civil Action No.

4:23-cv-00300-ELR

**Certificate of Compliance**

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing

document has been prepared using Book Antiqua, 13-point font.

Dated: April 29, 2024.

*/s/ Andres H. Sandoval*
ANDRES H. SANDOVAL
*Assistant United States Attorney*

96

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

STEFAN PASSANTINO,

PLAINTIFF,

v.

UNITED STATES OF AMERICA

DEFENDANTS.

Civil Action No.

4:23-cv-00300-ELR

**Certificate of Service**

I served this document today by filing it using the Court's CM/ECF

system, which automatically notifies counsel of record.

Dated: April 29, 2024.

/s/ Andres H. Sandoval
ANDRES H. SANDOVAL
*Assistant United States Attorney*

97

**TAB 35**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

**STEFAN PASSANTINO**,

    *Plaintiff,*

**v.**

    Case No. 4:23-CV-00300-ELR

**UNITED STATES OF AMERICA**,

    *Defendant.*

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff, Stefan Passantino, by counsel, respectfully moves, pursuant to Fed. R. Civ. P. 55, for default judgment against Defendant, the United States of America. In support of his motion, Plaintiff submits herewith his memorandum of law.

Dated: June 12, 2024        Respectfully submitted,

        */s/   Jesse R. Binnall*
        Jesse R. Binnall (*pro hac vice*)
        Shawn M. Flynn (*pro hac vice*)
        Jared J. Roberts (*pro hac vice*)
        BINNALL LAW GROUP, PLLC
        717 King Street, Suite 200
        Alexandria, Virginia 22314
        Phone: (703) 888-1943
        Fax: (703) 888-1930
        Email: jesse@binnall.com
               shawn@binnall.com
               jared@binnall.com

> Bryan P. Tyson (Ga. Bar No. 515411)
> THE ELECTION LAW GROUP
> 1600 Parkwood Circle
> Suite 200
> Atlanta, GA 30339
> Phone: 678-336-7249
> Email: btyson@theelectionlawyers.com
>
> *Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing motion was prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

> /s/   *Jesse R. Binnall*
> Jesse R. Binnall (*pro hac vice*)
> *Attorney for Plaintiff*

2

99

**CERTIFICATE OF SERVICE**

I certify that on June 12, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/    *Jesse R. Binnall*

Jesse R. Binnall (*pro hac vice*)

*Attorney for Plaintiff*

100

**TAB 35-1**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

**STEFAN PASSANTINO**,

　　*Plaintiff,*

**v.**

**UNITED STATES OF AMERICA**,

　　*Defendant.*

Case No. 4:23-CV-00300-ELR

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR DEFAULT JUDGMENT

101

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ..................................................................... ii

BACKGROUND ..................................................................................... 2

LEGAL STANDARDS ............................................................................ 4

ARGUMENT ........................................................................................... 7

   I.  Plaintiff has stated a claim for invasion of privacy and conspiracy. ...... 7

      a.   Defendant invaded Mr. Passantino's privacy. .................................. 7

      b.   Defendant entered into a civil conspiracy to invade Mr. Passantino's privacy. ................................................................................
           11

      c.   Plaintiff's claims are not barred by 28 U.S.C. § 2680(h). ............... 13

CONCLUSION ..................................................................................... 19

CERTIFICATE OF COMPLIANCE .................................................... 20

CERTIFICATE OF SERVICE ............................................................. 21

# TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal,*

556 U.S. 662 (2009) ........................................................................ 8

*Bartnicki v. Vopper,*

532 U.S. 514, 554-55 (2001) (Rehnquist, J., dissenting) ............................. 10

*Bell Atlantic Corp. v. Twombly,*

550 U.S. 544 (2007) ........................................................................ 8

*Block v. Neal,*

460 U.S. 289 (1983) .................................................................... 15, 16

*Buchanan v. Bowman,*

820 F.2d 359, 361 (11th Cir. 1987) .................................................... 4

*Cadman v. United States,*

541 Fed. Appx. 911, 914 (11th Cir. 2013) ...................................... 18

*Dormakaba USA Inc. v. Dormakaba USA Co. Inc.,*

No. 1:21-CV-01488-JPB, 2022 WL 19930701, at *2 (N.D. Ga. June 17, 2022)

.................................................................................................... 4, 5

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,*

561 F.3d 1298, 1307 (11th Cir. 2009) .......................................... 4

*Earthlink, Inc. v. Long On Am., Inc.,*

    No. 1:02-cv-1921, 2006 WL 783360, at \*1 (N.D. Ga. Mar. 24, 2006) ............ 4

*Edelen v. Campbell Soup Co.,*

    265 F.R.D. 676, 689 (N.D. Ga. 2010) ............................................................ 4

*Friends Christian High School v. Geneva Financial Consultants,*

    39 F. Supp. 3d 58, 64-65 (D.D.C. 2014) .................................................. 11, 12

*Functional Prod. Trading, S.A. v. JITC, LLC,*

    No. 1:12-cv-0355, 2014 WL 3749213, at \*11 (N.D. Ga. July 29, 2014) .......... 4

*In re RMS Titanic, Inc.,*

    569 B.R. 825, 839 (Bankr. M.D. Fla. 2017) .................................................... 6

*Lorenzo v. United States,*

    719 F. Supp. 2d 1208, 1213 (S.D. Cal. 2010) ............................................... 15

*Luxottica Grp. S.p.A. v. Individual, P'ship or Unincorporated Ass'n,*

    No. 17-CV-61471, 2017 WL 6949260, at \*2 (S.D. Fla. Oct. 3, 2017) (Bloom,

    J.)..................................................................................................................... 5

*Metz v. United States,*

    788 F.2d 1528, 1532 (11th Cir. 1986) ........................................................... 17

*Mitchell v. Brown & Williamson Tobacco Corp.,*

    294 F.3d 1309, 1316 (11th Cir. 2002) ............................................................. 4

*Nishimatsu Const. Co. v. Houston Nat'l Bank,*

    515 F.2d 1200, 1206 (5th Cir.1975) ................................................................ 4

*O'Ferrell v. United States,*

    253 F.3d 1257, 1265-66 (11th Cir. 2001) ....................................................... 17

*Saucier v. Countrywide Home Loans,*

    64 A.3d 428, 445–46 (D.C. 2013) ................................................................... 11

*Surtain v. Hamlin Terrace Found.,*

    789 F.3d 1239, 1244–45 (11th Cir. 2015) ........................................................ 5

*TracFone Wireless v. Anadisk LLC,*

    685 F. Supp. 2d 1304, 1310 (S.D. Fla. 2010) (King, J.) .................................. 5

*Weinstock v. Islamic Republic of Iran,*

    No. CV 17-23272-CIV, 2019 WL 1507255, at *1 (S.D. Fla. Apr. 5, 2019) ..... 5

*Wolf v. Regardie,*

    553 A.2d 1213, 1216–17 (D.C. Ct. App. 1989) ................................................ 7

**Statutes**

28 U.S.C. § 2680(h) ............................................................................... 13, 16, 17

**Rules**

Fed. R. Civ. P. 55(b) ...................................................................................... 4

Fed. R. Civ. P. 55(d) ...................................................................................... 5

Defendant, United States of America, has cavalierly ignored the Federal Rules of Civil Procedure and the norms of civil litigation in this case. It failed to establish good, or any plausibly legitimate, cause for its literal last-minute request for an extension of time, failed to meet its deadline to file a responsive pleading, and failed to establish excusable neglect or good cause for its delinquency.

Default has been entered against the United States. It has had multiple opportunities to present good cause or excusable neglect for its actions, yet it has failed to do so. Quite frankly, it cannot. Indeed, rather than engage in litigation by following the rules of practice and procedure through the normal course, and despite being admonished for its conduct by the Court once already, Defendant has continued to make excessive filings out of time, showing its disrespect and disregard for the time of the Court and Plaintiff. While in default and with a pending motion to set aside, Defendant filed a Motion for Judgment on the Pleadings and a Motion to Stay. For the same reasons that Defendant's Motion for Judgment on the Pleadings should fail, and objectively looking at what Defendant has done to Plaintiff and his career and reputation to advance a pre-ordained political narrative, this Motion for Default Judgment should be granted.

Defendant failed to timely respond to Plaintiff's claim, despite having notice for over a year since he filed his Federal Tort Claims Act ("FTCA")

administrative claim on April 10, 2023. Defendant simply could not be bothered to address its egregiously wrongful conduct as outlined in the Complaint it chose to ignore.

The Complaint states a claim for relief with more than sufficient details to be granted despite the heightened burden for default judgment against the United States. To the extent that the Court finds it to be helpful and appropriate, Plaintiff would very much welcome an evidentiary hearing to be scheduled wherein Plaintiff will adduce overwhelming evidence which will be more than sufficient to meet his burden in support of this motion to satisfy the requirements of Federal Rule of Civil Procedure 55(d).

## BACKGROUND

As noted, *supra*, this matter arises under the FTCA due to wrongful acts of government officials involved with the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol and their acts to wrongfully invade the privacy of Plaintiff, Stefan Passantino. *See* Dkt. No. 22-1 at ¶ 3. The FTCA claim was first served on the U.S. House of Representatives on April 10, 2023. *Id.* The government has, therefore, had nearly fourteen months to respond to Mr. Passantino's allegations. *Id.*

After litigation was filed on December 20, 2023, Defendant, United States of America, was properly served on February 14, 2024. *Id.* at ¶ 4 (citing

2

Dkt. No. 17-1). Based on this date of service and the Federal Rules of Civil Procedure, the deadline for Defendant to file an Answer or other responsive filing was April 15, 2024. *Id.* at ¶ 5.

Defendant failed to meet its deadline. *Id.* at ¶¶ 6-9. On April 24, 2024, the Court instructed Plaintiff to show cause as to why his case should not be dismissed for failure to prosecute. Dkt. No. 20. On April 25, 2024, Plaintiff, in compliance with this Court's Order to Show Cause, moved for the clerk to enter default against Defendant. Dkt. No. 22. The clerk entered default against Defendant on April 26, 2024. Shortly before Plaintiff moved for default, Defendant filed its latest motion to extend time, which Plaintiff timely opposed. A decision by this Court is pending. Dkts. 21, 30.

*After default was entered*, Defendant brazenly made several further filings. First, Defendant filed an Answer. Dkt. No. 24. *Only after filing this Answer*, Defendant filed a Motion to Set Aside Default. Dkt. No. 25. After those filings, Defendant then filed both a Motion for Judgment on the Pleadings and a Motion to Stay Discovery. Defendant engaged in such noncompliant conduct all while in default. Dkt. Nos. 27, 28. This Court recently granted Defendant's Motion to Stay and did so with regard to discovery and related deadlines other than to address the motions to Set Aside Default and for Judgment on the Pleadings. Dkt. 31. Plaintiff opposed Defendant's Motion for Judgment on the Pleadings on May 17, 2024. Dkt. 32.

## LEGAL STANDARDS

As an initial matter, "entry of a default judgment is appropriate when a party against whom a judgment for affirmative relief is sought has failed to timely plead or otherwise defend and that fact is made to appear by affidavit or otherwise." *Edelen v. Campbell Soup Co.*, 265 F.R.D. 676, 689 (N.D. Ga. 2010) (citing FED. R. CIV. P. 55(b); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002)). This is because, at least in part, by a default, a defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citing *Nishimatsu Const. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975); *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987)).

In turn, "[t]he court may grant default judgment [only] on those claims brought by Plaintiff[s] that are legally sufficient and supported by well-pleaded allegations." *Dormakaba USA Inc. v. Dormakaba USA Co. Inc.*, No. 1:21-CV-01488-JPB, 2022 WL 19930701, at *2 (N.D. Ga. June 17, 2022) (quoting *Earthlink, Inc. v. Long On Am., Inc.*, No. 1:02-cv-1921, 2006 WL 783360, at *1 (N.D. Ga. Mar. 24, 2006); see also *Functional Prod. Trading, S.A. v. JITC, LLC*, No. 1:12-cv-0355, 2014 WL 3749213, at *11 (N.D. Ga. July 29, 2014) (stating

that "a default judgment cannot stand on a complaint that fails to state a claim")). Therefore, at least in concept, "a motion for default judgment is like a reverse motion to dismiss for failure to state a claim, and Plaintiff must show that the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face against Defendants." *Dormakaba USA Inc.*, 2022 WL 19930701, at *2. (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015)) (internal quotation marks omitted). As on a motion to dismiss, "a defendant is 'not held to admit facts that are not well pleaded or to admit conclusions of law.'" *Weinstock v. Islamic Republic of Iran*, No. CV 17-23272-CIV, 2019 WL 1507255, at *1 (S.D. Fla. Apr. 5, 2019) (quoting *Luxottica Grp. S.p.A. v. Individual, P'ship or Unincorporated Ass'n*, No. 17-CV-61471, 2017 WL 6949260, at *2 (S.D. Fla. Oct. 3, 2017) (Bloom, J.)). Accordingly, "[t]he court must also establish that it has subject matter jurisdiction and personal jurisdiction over the defendant." *Id.* (citing *TracFone Wireless v. Anadisk LLC,* 685 F. Supp. 2d 1304, 1310 (S.D. Fla. 2010) (King, J.)).

Federal Rule of Civil Procedure 55(d) provides, "[a] default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court." While Federal Rule of Civil Procedure 55(d) limits the Court's ability to enter a default judgment against the United States, it does not prohibit it.

5

110

If this Court would find it beneficial to hear more evidence beyond that which is contained in the admitted, well-pleaded allegations of the Complaint, Plaintiff welcomes the opportunity to present additional, and overwhelming, evidence at a hearing which more than sufficiently carries his burden. *See In re RMS Titanic, Inc.*, 569 B.R. 825, 839 (Bankr. M.D. Fla. 2017) (scheduling an evidentiary hearing to provide for more evidence in support of default judgment).[1] Quite frankly, this matter puts a spotlight on remarkably egregious government conduct. Defendant has brazenly circumvented due process and disregarded Plaintiff's constitutional protections in order to advance a preordained narrative. Plaintiff relishes the opportunity for an evidentiary hearing.

---

[1] Given Defendant's egregious conduct, Mr. Passantino would welcome an evidentiary hearing. Specifically, during the course of Mr. Passantino's representation of Ms. Hutchinson, Defendant interfered in the attorney-client relationship by going behind Mr. Passantino's back to communicate with Ms. Hutchinson, in violation of clear ethics rules, and then convinced Ms. Hutchinson to testify to the January 6th Committee without Mr. Passantino's knowledge, and then published private information about Mr. Passantino's representation of Ms. Hutchinson to various media companies. After all this occurred, as detailed above, Defendant never bothered to form any sort of response to these egregious allegations until the day their response to Mr. Passantino's Complaint was due. Even then, it was simply to note they were unprepared to respond to the allegations that Mr. Passantino presented nearly a year prior.

6

111

## ARGUMENT

### I.  Plaintiff has stated a claim for invasion of privacy and conspiracy.

#### a.  Defendant invaded Mr. Passantino's privacy.

As Defendant has correctly noted previously, Mr. Passantino's invasion of privacy claim has five elements: "1) publicity; 2) absent waiver or privilege; 3) given to private facts; 4) in which the public has no legitimate concern; and 5) which would be highly offensive to a reasonable person of ordinary sensibilities." Dkt. No. 27 at 15 (citing *Wolf v. Regardie*, 553 A.2d 1213, 1216–17 (D.C. Ct. App. 1989)). Mr. Passantino has sufficiently pled each of these elements, and he can present evidence to this Court sufficient to establish the well-pled facts of his Complaint.

First, publicity is easily met by the fact that Defendant published the information to the media. Compl. at ¶¶ 82, 83. It does not appear that Defendant attempted to challenge this fact in its motion for judgment on the pleadings. Nevertheless, this is easily established by judicial notice of news articles, which evidence the leak from individuals associated with the January 6 Committee to the media. In addition, during an evidentiary hearing, Mr. Passantino would subpoena individuals who would testify as to the information that was provided and establish publication of his personal, private information.

7

112

Second, as alleged, Defendant was not privileged in releasing this information. *Id.* at ¶ 86. Again, Defendant does not appear to have contested this fact in its motion for judgment on the pleadings.[2]

Third, the released information constituted private facts. Defendant claims that Mr. Passantino has not identified what facts were private, however, this is not so. As alleged, the transcripts from the January 6th Committee hearings, which contained information relating to the intimate details of Mr. Passantino's representation of Ms. Hutchinson, were not publicly available, yet Defendant released the transcripts, nonetheless, to bring attention to the private facts relating to the representation. *Id.* at ¶¶ 58, 70. This more than satisfies the *Twombly* and *Iqbal* standards. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Plaintiff has pled that Defendant, through its agents, disseminated his private information to the media, resulting in damage to Mr. Passantino. Compl. at ¶¶ 83-85. These facts, as well-pleaded in the Complaint, are considered to be admitted.

---

[2] To the extent that Defendant would claim that its immunity is tantamount to a privilege, such an assertion would fail for the reasons outlined below.

8

113

In fact, these allegations include that the dissemination of information may be by additional disclosures other than simply providing the transcripts. The dissemination of private information may not have been only through the leaking of the transcripts. It very probably also was through direct conversations between agents of the January 6 Committee and outside third parties. Assuming Defendant disingenuously claims that it did not do so, an evidentiary hearing is required wherein Mr. Passantino will call witnesses who will corroborate the actual facts.

Defendant, in its motion for judgment on the pleadings, argued the transcripts eventually became public (insinuating that Defendant is actually aware of what the private facts are), so they were not private. Dkt. No. 27 at 16. This does not change the fact that, when the information was disclosed, it was private, privileged, and confidential which caused enormous professional and personal damages to Mr. Passantino. Defendant has presented no caselaw to indicate that an invasion of privacy claim may fail merely because the information eventually became public at a later time, after the defendant already committed the tort, and undersigned counsel is unaware of any. Indeed, at the time Defendant disseminated the information, it was, in fact, private. Compl. at ¶ 47.

In addition, as noted above, it is not only through the release of transcripts that this leak occurred. It is probable that agents of the Committee

also spoke directly with media sources about personal and private information. Thus, the logic of Defendant's argument suggests it is already public while conveniently ignoring that its conduct was the means by which it became public. This can be further borne out during an evidentiary hearing.

Defendant also has argued that, to the extent the facts were private, they do not relate to Mr. Passantino. Dkt. No. 29 at 16-17. This is not so. As shown throughout the Complaint, the private facts explicitly involved Mr. Passantino's representation of Ms. Hutchinson. Compl. at ¶¶ 34, 69, 70, 71, 72.

Fourth, as pled, the intimate details of Mr. Passantino's representation of Ms. Hutchinson were not a matter of public concern. Compl. at ¶¶ 69, 82. While Defendant attempts to transform this into an issue of public concern, by virtue of publicity surrounding the January 6th Committee, as noted by Chief Justice Rehnquist, along with Justices Thomas and Scalia, "[e]ven where the communications involve public figures or concern public matters, the conversations are nonetheless private and worthy of protection." *Bartnicki v. Vopper*, 532 U.S. 514, 554-55 (2001) (Rehnquist, J., dissenting). The same logic applies here in that intimate details of Mr. Passantino's representation of Ms. Hutchinson, as in all attorney-client relationships, was not a public concern.

Fifth, releasing information relating to the details of Mr. Passantino's representation of Ms. Hutchinson is highly offensive to a reasonable person. Defendant erroneously argues that the transcripts exonerated Mr. Passantino,

10

115

so it cannot be highly offensive. Dkt. No. 29 at 17-18. This misses the point. It was the fact that Defendant released private information about an attorney-client relationship that was highly offensive and damaging, precisely as intended.

Accordingly, Mr. Passantino has properly stated a claim for invasion of privacy.

**b.      Defendant entered into a civil conspiracy to invade Mr. Passantino's privacy.**

As for civil conspiracy, this claim has three elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme." *Friends Christian High School v. Geneva Financial Consultants*, 39 F. Supp. 3d 58, 64-65 (D.D.C. 2014) (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 445–46 (D.C. 2013)).

In its motion for judgment on the pleadings, Defendant argues that Mr. Passantino has not pled an underlying tort and his "bare" allegations fail. Dkt. No. 29 at 18-19. As described above, however, Mr. Passantino's claim for invasion of privacy is well-pleaded. In addition, as the D.C. District has held, "labelling the civil conspiracy allegations as 'bare bones' is not an argument." *Friends Christian High School*, 39 F. Supp. 3d at 65. Indeed, this argument

11

116

ignores the well-pleaded facts in Mr. Passantino's Complaint, which must be accepted not only on a judgment on the pleadings in the normal course, but also because Defendant is in default.

In *Friends Christian High School*, the court found the following to be satisfactory at the pleading stage:

> Lezell, Geneva and Ghosh "formed an agreement between and among themselves to withhold the escrowed funds and provide false and misleading information regarding their ability to obtain construction financing for [FCHS's] project" (¶ 32), "agreed, in violation of any agreements of the parties, to use escrowed funds for impermissible purposes and to withdraw those funds prior to those funds being earned" (¶ 33), "misl[ed] [FCHS] as to their ability to obtain financing" and "their relative qualifications/background" (¶ 34), "took possession of escrow funds in advance of those funds being earned" (¶ 34), and "materially withheld information related to the location and status of those funds" (¶ 34), acting "[a]t all time ... in furtherance of the common scheme or plan to defraud [FCHS] of the escrow funds." (¶ 35.)

*Id*.

Here, Mr. Passantino's allegations are similar. Specifically, he pled that Defendant worked with unknown co-conspirators and media companies to invade Mr. Passantino's privacy (Compl. at ¶¶ 74, 89); that they had the common goal to harm Mr. Passantino's law practice and personally (*Id*); and that in furtherance of this plan, the media did disseminate this private information, which would have otherwise not been published by the media, and it harmed Mr. Passantino. *Id*. at ¶¶ 89, 90. There was no way for the media companies to have possession of the information but-for working in concert

12

117

with Defendant. *Id*. at ¶¶ 47, 55, 56, 57, 58. There is no escaping that fact. Thus, as was the case in *Friends Christian High School*, Mr. Passantino has pled each element, satisfying his burden. In addition, during an evidentiary hearing, Mr. Passantino would present witnesses, testimony, and documents that would establish each element of both of his causes of action.

### c.    Plaintiff's claims are not barred by 28 U.S.C. § 2680(h).

Section 2680(h) provides the United States with immunity from claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Importantly, this does not include invasion of privacy or civil conspiracy. In short, Defendant's entire argument in its motion for judgment on the pleadings as to why § 2680(h) bars Plaintiff's claims requires a misreading of the Complaint. *See* Dkt. No. 27 at 9-14.

Defendant claims it is not clear what private information Mr. Passantino is referring to. A plain reading of the Complaint, however, specifically states that Defendant leaked "wholly private" interviews to the media, in an attempt to harm Mr. Passantino by invading on his attorney-client relationship with Ms. Hutchinson. Compl. at ¶¶ 57, 69, 72, 82, 83. As the Complaint explains, through Cassidy Hutchinson's outreach, she got in touch with Mr. Passantino, who began representing her before the United States House Select Committee

13

on the January 6 Attack on the United States Capitol (the "January 6th Committee"). Compl. at ¶ 19. Mr. Passantino immediately gave Ms. Hutchinson standard, and appropriate legal advice before she testified on multiple occasions. *Id*. at ¶¶ 20-33. This relationship, and the confidential internal discussions, instructions, and advice were privileged.

The transcripts were not available to the public and could have only been leaked by an employee or agent of Defendant. *Id*. at ¶ 58. Specifically: "The Committee deliberately leaked information to news media, immediately before it would have quietly become public, in order to bring attention to private facts and, in doing so, damage Mr. Passantino." *Id*. at ¶ 70. Importantly, as with every other attorney-client relationship, the public had no interest in the attorney-client relationship between Mr. Passantino and Ms. Hutchinson. *Id*. at ¶ 69.

The United States of America, in defense of the actions of the January 6th Committee, has staked its defense, at least in part, on a claim that it defamed Mr. Passantino rather than invaded his privacy. Dkt. No. 27 at 9-12. While the January 6th Committee may very well have defamed Mr. Passantino, they also invaded his privacy, and the two claims do not rely on one another. Indeed, one claim does not preclude the other and does not serve as a bar to the other here, notwithstanding Defendant's desperate attempt.

14

119

The elements to prove defamation and invasion of privacy are distinct. While they do overlap in some regards, the information that is necessary to prove the elements of each are different. Here, Mr. Passantino's claims involve the communications between Congress and outside third parties, such as CNN, not because of any potentially defamatory content as Defendant contends, but rather, primarily because of the details regarding the conduct and information transmitted itself, regardless of content.

An evidentiary hearing could provide more information from individuals about with whom they communicated, exactly when those communications were made, the identities of all individuals involved in any way in conspiring to make such communications and what the content of those communications were regarding Mr. Passantino's personal nonpublic information. Notably, this is a content-neutral inquiry, which is sharply contrasted by defamation, which would require a context-intensive inquiry. Courts have recognized such distinctions before. *See Lorenzo v. United States*, 719 F. Supp. 2d 1208, 1213 (S.D. Cal. 2010).

Defendant then argues that, in the event Mr. Passantino is referring to the leak of the transcripts, this case is the inverse of *Block v. Neal*, 460 U.S. 289 (1983). Dkt. No. 27 at 12. In *Block*, the court denied the United States' motion because it found that the plaintiff pleaded an injury which was independent from an exempt claim the plaintiff brought and the otherwise

15

120

immune claim. *Block*, 460 U.S. at 289. The same can be said for this case. Indeed, rather than supporting Defendant's position, *Block* is instructive as to why this Court should refrain from granting Defendant's motion.

In *Block*, the plaintiff utilized a government program for financial and technical support in home buying. *Id*. at 290. After construction was completed on the home that the plaintiff had financed to buy, a government employee performed an inspection and found no defects. *Id*. at 292. Shortly after moving in, however, the plaintiff found significant defects and sued the government for negligence based on its inspection of the home. *Id*. The government claimed the claim really arose out of misrepresentation, not negligence and, therefore, it was immune pursuant to § 2680(h). *Id*. at 294. The Supreme Court discussed the differences between misrepresentation and negligence and found that because there were misstatements, the plaintiff could have had a misrepresentation claim if not for the government's immunity. *Id*. at 297. But the plaintiff also had a claim for negligence, which didn't rely on any misrepresentations, and instead relied on a different government breach of duty. *Id*. Therefore, the negligence claim did not arise out of a claim for misrepresentation. *Id*. Simply because the plaintiff had a claim for misrepresentation did not mean she was barred from pursuing a different claim arising out of other aspects of the government's conduct. *Id*.

16

121

Here, Mr. Passantino recognizes that Congress is immune from defamation. He did not bring such a claim. Instead, he is seeking recovery for the invasion of privacy and dissemination of his personal nonpublic information that was in the possession of Congress, which Congress conspired to give to CNN. It was CNN that used the information to lie and defame him, as was the ultimate goal of the conspiracy. This, like *Block*, involves a distinct set of conduct different from defamation. As discussed, Mr. Passantino brought this suit because the government disseminated private information, not because the government defamed him.

Finally, Defendant relies on three cases that are readily distinguishable. First, in *O'Ferrell*, the harm to the plaintiffs was solely the result of the release of false information relating to them being suspects in a crime, not the release of private information. *O'Ferrell v. United States*, 253 F.3d 1257, 1265-66 (11th Cir. 2001). Here, this case is patently different in that the harm regarding which Mr. Passantino complains stems not from the falsity of the statements, but from the release of information that was private. *O'Ferrell* was, in substance, a defamation case. In contrast, this case is not.

Second, in *Metz*, the court reasoned that the invasion of privacy only occurred because of the false arrest, which the government had immunity from pursuant to § 2680(h). *Metz v. United States,* 788 F.2d 1528, 1532 (11th Cir. 1986). The government's false arrest was "essential" to the invasion of privacy

17

122

claim. *Id.* at 1535. This is distinguishable here because the content of the statements is not essential to Mr. Passantino's claims. Rather, the issue is that the government released personal nonpublic information. Thus, Mr. Passantino's claim for invasion of privacy does not *rely* on any claim for defamation nor is any defamatory statement *essential* to Mr. Passantino's claim.

Third, *Cadman* is not instructive here because, again, there was no discussion regarding the release of private information. Rather, the plaintiff merely attempted to argue it was not defamation because the information was not false. *Cadman v. United States*, 541 Fed. Appx. 911, 914 (11th Cir. 2013). As thoroughly explained throughout, Mr. Passantino's harm stems from the release of private information, not defamatory remarks. While Mr. Passantino reserves the right to contest the truth or falsity of Defendants' statements writ large, he understands that this is not the forum for such a contest.

Accordingly, Defendant is not immune from this action. The same arguments apply to Mr. Passantino's civil conspiracy claim. As alleged, Defendant, through its agents, conspired with the media to disseminate private information that would not have otherwise been public. Compl. at ¶ 89. Mr. Passantino has not alleged that Defendant conspired with the media to spread false stories. Rather, he has alleged conspiracy to release private information. Thus, Defendant's arguments fail on both counts.

18

123

## CONCLUSION

Mr. Passantino respectfully requests this Court enter default judgment against Defendant, United States of America. Alternatively, order an evidentiary hearing during which Mr. Passantino will call witnesses and present overwhelming evidence more than exceeding his burden under Federal Rule of Civil Procedure 55(d).

Dated: June 12, 2024                              Respectfully submitted,

                                                  */s/   Jesse R. Binnall*
                                                  Jesse R. Binnall (*pro hac vice*)
                                                  Shawn M. Flynn (*pro hac vice*)
                                                  Jared J. Roberts (*pro hac vice*)
                                                  BINNALL LAW GROUP, PLLC
                                                  717 King Street, Suite 200
                                                  Alexandria, Virginia 22314
                                                  Phone: (703) 888-1943
                                                  Fax: (703) 888-1930
                                                  Email: jesse@binnall.com
                                                       shawn@binnall.com
                                                       jared@binnall.com

                                                  Bryan P. Tyson (Ga. Bar No. 515411)
                                                  THE ELECTION LAW GROUP
                                                  1600 Parkwood Circle
                                                  Suite 200
                                                  Atlanta, GA 30339
                                                  Phone: 678-336-7249
                                                  Email: btyson@theelectionlawyers.com

                                                  *Attorneys for Plaintiff*

19

124

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing motion was prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/   *Jesse R. Binnall*
Jesse R. Binnall (*pro hac vice*)
*Attorney for Plaintiff*

20

125

## CERTIFICATE OF SERVICE

I certify that on June 12, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/   *Jesse R. Binnall*
Jesse R. Binnall (*pro hac vice*)
*Attorney for Plaintiff*

21

126

**TAB 45**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| STEFAN PASSANTINO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 4:23-CV-00300-ELR |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Defendant. | * | |
| | * | |

_____

**O R D E R**

_____

There are several motions currently pending before the Court. The Court sets

forth its reasoning and conclusions for each below.

**I.    Background[1]**

This case concerns Plaintiff Stefan Passantino's claims for invasion of privacy

and civil conspiracy against members of the U.S. House Select Committee to

Investigate the January 6th Attack on the United States Capitol (the "Committee").

See generally Compl. [Doc. 1]. Passantino, a practicing Washington D.C. attorney

and former White House ethics lawyer during the first Trump Administration,

---

[1] In determining whether the United States is entitled to judgment on the pleadings, the Court
accepts as true all material facts alleged in Passantino's pleading and construes all reasonable
inferences in his favor. Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014).

represented several clients who testified before the Committee, including Cassidy Hutchinson, a former Trump White House aide. Id. ¶¶ 3, 7, 14, 55. Passantino met Hutchinson and other Committee witnesses through the Save America Leadership PAC, a political action committee which covered Hutchinson's legal fees. Id. ¶¶ 18–20, 22, 63–65. To prepare Hutchinson for her testimony, Passantino gave her "standard lawyering instructions," including to comply with the subpoena, to testify truthfully, and to avoid speculation. Id. ¶¶ 24–28, 30.

In May 2022, Passantino accompanied Hutchinson to a Committee interview with Congresswoman Liz Cheney and Senior Investigative Counsel Dan George. Id. ¶ 40. Before that interview, Cheney and George contacted Hutchinson without Passantino's knowledge and advised her that Passantino "would not be advancing her interests" because he "was being paid by a Trump-affiliated third-party." Id. ¶ 35. According to Passantino, these statements undermined Hutchinson's trust in him and improperly disrupted their attorney-client relationship, which ultimately led her to seek new legal representation. Id. ¶¶ 36, 43.

Hutchinson participated in additional interviews with the Committee in September 2022. Id. ¶ 44. Though the transcripts of those interviews were not publicly available until after the Committee released its final report, a Committee member or staffer allegedly leaked the transcripts to CNN before they became public "to ensure maximum damage was done to Mr. Passantino's reputation and his

2

existing and future legal, political, and business clients." Id. ¶¶ 45, 47–48, 58. Passantino learned of this purported leak on December 19, 2022, when CNN reporters called to inform him that they intended to publish a piece about his representation of Hutchinson. Id. ¶ 46. During the call, one of the reporters advised Passantino that she obtained a transcript of Hutchinson's September 2022 interview and suggested that the Committee would allege he had counseled Hutchinson not to answer the Committee's questions fully and honestly. Id.

Later that day, the Committee released an executive summary of its final report, which stated, "[t]he Committee has substantial concerns regarding potential efforts to obstruct its investigation, including by certain counsel (some paid by groups connected to the former President) who may have advised clients to provide false or misleading testimony to the Committee." Id. ¶ 49. Soon after, CNN published an article entitled "Exclusive: Trump's former White House ethics lawyer told Cassidy Hutchinson to give misleading testimony to January 6 committee, sources say." Id. ¶ 54.

According to Passantino, the transcripts contradict CNN's story and instead show that Hutchinson repeatedly testified that Passantino told her not to lie to the Committee or perjure herself. Id. ¶¶ 59–60. Yet, CNN chose to run the story anyway, "likely because it was given to CNN by the Committee, members of the Committee, or a staffer of the Committee[.]" Id. ¶ 68. Passantino alleges that the Committee's

"false actions" in leaking the story "for political ends" resulted in physical threats to him and his family, harassment, and bar complaints, all of which caused severe personal and professional harm. Id. ¶ 74.

In December 2023, Passantino filed this suit under the Federal Tort Claims Act ("FTCA") alleging invasion of privacy (Count I) and civil conspiracy (Count II). See id. ¶¶ 76–90. The United States missed the deadline to respond to the Complaint and instead requested more time, which the Court denied for failure to show good cause. [Docs. 18; 19]. Thereafter, the United States requested another extension, this time with a more complete explanation for its delay, and filed a late Answer a few days later.[2] [Docs. 21; 24]. Before the United States filed its Answer, Passantino moved for an entry of default, which the clerk entered. [Doc. 22]. The United States now moves to set aside the entry of default and, through its motion for judgment on the pleadings, asks the Court to dismiss this case. [Docs. 25; 27]. Additionally, Passantino moves for default judgment and asks the Court to take judicial notice of two U.S. House reports related to this case. [Docs. 35; 39; 42]. All pending motions have been fully briefed and are ripe for this Court's review.[3] The

---

[2] Because the United States filed its Answer before the Court granted the request for extension, the Court construes the United States's Motion for Extension of Time to File Answer [Doc. 21] as a request to accept its out-of-time Answer.

[3] The day its response brief to Passantino's second motion for judicial notice was due, the United States filed an unopposed request for extension. [Doc. 43]. The Court grants that motion and accepts the United States's response as timely. [Doc. 44].

Court will begin with the motions for judicial notice, then take up the motions related to default judgment, and lastly address the motion for judgment on the pleadings.

## II.    Motions for Judicial Notice

Passantino asks the Court to take judicial notice of certain facts from two interim reports released by the U.S. House Committee on House Administration. [See Docs. 39-1; 42-1]. The first is an October 15, 2024 press release concerning text messages between then-Representative Liz Cheney and other individuals involved in this case (the "October Report").[4] [See Doc. 39-1]. The second is a December 17, 2024 report entitled "The Failures and Politization of the January 6th Select Committee" (the "December Report"), which reviews and critiques various actions taken by Cheney and other Committee members.[5] [See Doc. 42-1]. Passantino contends that the Reports support his invasion of privacy and conspiracy claims by showing that Cheney and others communicated with Hutchinson to discuss her attorney-client relationship with Passantino and used non-public information related to that relationship to damage him. [Docs. 39-1 at 5–6; 42-1 at 5–8]. The United States challenges the relevance of both Reports and argues that the

---

[4] See U.S. House of Representatives Comm. on House Admin., New Texts Reveal Liz Cheney Communicated with Cassidy Hutchinson (Oct. 15, 2024), https://cha.house.gov/press-releases?ID=46BC1893-41CA-4E6B-834C-2B2B2A6BDB70.

[5] See U.S. House of Representatives Comm. on House Admin., Interim Report on the Failures and Politization of the January 6th Select Committee (Dec. 17, 2024), https://cha.house.gov/_cache/files/6/d/6dae7b82-7683-4f56-a177-ba98695e600d/145DD5A70E967DEEC1F511764D3E6FA1.final-interim-report.pdf.

Court should not consider the Reports for the truth of their contents. [See Docs. 40; 44].

Under Rule 201 of the Federal Rules of Evidence, a court *must* take judicial notice of facts "not subject to reasonable dispute" (i.e., facts that "can be accurately and readily determine from sources whose accuracy cannot be reasonably questioned") "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(b), (c). Courts commonly judicially notice facts contained in public documents because they are "sources whose accuracy cannot reasonably be questioned." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999); see also Universal Express, Inc. v. U.S. S.E.C., 177 F. App'x 52, 53 (2006) ("Public records are among the permissible facts that a district court may consider."); Henderson v. Sun Pharm. Indus., Ltd., 809 F. Supp. 2d 1373, 1379 n.4 (N.D. Ga. 2011) ("The Court is permitted to take judicial notice of documents made publicly available by a government entity."). Rule 201 also allows a court to judicially notice a fact "at any stage of the proceeding." Fed. R. Evid. 201(d).

Here, Passantino has provided both Reports, the authenticity of which the United States does not question. The Court likewise finds no reason to question the authenticity of the Reports, which are publicly available on an official government website. See Omnibus Trading, Inc. v. Gold Creek Foods, LLC, 591 F. Supp. 3d 1334, 1345 (N.D. Ga. 2021) (taking judicial notice of guidance documents published

on a federal agency's website). Moreover, Passantino specifically identifies which parts of the Reports are relevant to his claims and how they are relevant. Cf. Tolston v. City of Atlanta, 723 F. Supp. 3d 1263, 1323 (N.D. Ga. 2024) (declining to take judicial notice of facts unrelated to the proceeding). For example, Passantino explains that the text messages exchanged between Liz Cheney and others contained in the October Report demonstrate how members of the Committee accessed and leaked his private information. [Doc. 39-1 at 5–6].

Similarly, Passantino points to pages 19–25, 46–48, and 117 of the December Report to show that Liz Cheney communicated behind Passantino's back about his representation of Hutchinson, that Committee members considered the leaked information to be "not-yet-public," and that the U.S. House Committee on House Administration recommended a criminal investigation against Cheney because of her conduct involving Passantino. [Doc. 42-1 at 5–8]. These facts are relevant to Passantino's claims for invasion of privacy and conspiracy because they relate to the allegations contained directly in the Complaint—namely, that members of the Committee secretly communicated about and conspired to leak Passantino's private information.

Lastly, the United States correctly notes that the Reports serve a limited purpose—while the Court can judicially notice the existence of the Reports and the statements contained therein, it cannot use the Reports to establish the truth of those

statements. See Bryant, 187 F.3d at 1277–78 (judicially noticing SEC filings "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents"); cf. Sprengle v. Smith Maritime Inc., 660 F. Supp. 3d 1337, 1351–52 (M.D. Fla. 2023) (declining to judicially notice medical records used to establish that the plaintiff was at a certain place at a certain time). Thus, the Court takes judicial notice of the Reports only to the extent that they demonstrate the existence of certain statements, such as the text messages exchanged by Cheney, Hutchinson, and others involved in this case; the Court declines to use the Reports to assess the veracity of those statements. Accordingly, the Court grants Passantino's motions for judicial notice.

### III.    Motion to Set Aside Entry of Default and Related Motions

Passantino moved for default, which the Clerk properly entered, on grounds that the United States failed to timely respond to the Complaint. [Doc. 22 at 2]; see Fed. R. Civ. P. 55(a). The United States then filed a late Answer and now asks the Court to set aside the entry of default. [Docs. 24; 25-1]. Because the United States has shown good cause, the Court grants the United States's motion, accepts the late Answer, and sets aside the default.

#### A.    Legal Standard

Generally, a party must answer a complaint within 21 days of being served. Dyer v. Wal-Mart Stores, Inc., 535 F. App'x 839, 843 (11th Cir. 2013) (citing Fed.

R. Civ. P. 12(a)(1)(A)(i)). If a defendant fails to file a timely answer, "upon motion by the plaintiff, the clerk must enter default against the defendant pursuant to Fed. R. Civ. P. 55(a)." Insituform Techs., Inc. v. AMerik Supplies, Inc., 588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008). But the Court may, in its discretion, set aside an entry of default for "good cause" under Rule 55(c).[6] Id.; see also Perez v. Wells Fargo N.A., 774 F.3d 1329, 1338 (11th Cir. 2014).

"Good cause is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of substance." Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996) (cleaned up). While good cause "is not susceptible to a precise formula, . . . some general guidelines are commonly applied." Id. For example, courts consider "whether the default was culpable or willful, whether

---

[6] Ordinarily, courts evaluate whether to accept an out-of-time filing under the "more rigorous" "excusable neglect" standard of Rule 6(b)(1)(B). See E.E.O.C. v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir. 1990) (noting that the "excusable neglect" standard is "more rigorous" than the "good cause" standard). But because the entry of default here is premised on the United States's failure to timely answer, the Court will evaluate both the motion to set aside default and construed motion to accept the out-of-time Answer together, under a good cause standard. See Perez, 774 F.3d at 1338 (evaluating motion to file an out-of-time answer under Rule 55(c) "good cause" standard instead of Rule 6(b)(1)(B) "excusable neglect" standard where opposing party sought an entry of default); A. Garcia Trucking & Produce, LLC v. Mi Pueblo Supermarket, LLC, No. 1:18-CV-01127-ELR, 2019 WL 12285204, at *1–2 (N.D. Ga. June 17, 2019) (applying Rule 55(c) "good cause" standard to motion for entry of default premised on defendant's failure to timely answer); Lewis v. Home Depot, No. 1:14-CV-03871-AT-CMS, 2015 WL 11978530, at *2–3 (N.D. Ga. Sept. 30, 2015) (applying Rule 55(c) "good cause" standard to motion to set aside default and motion to file an out-of-time answer), R&R adopted, 2015 WL 12086092 (N.D. Ga. Oct. 26, 2015).

setting it aside would prejudice the non-moving party, and whether the defaulting party may have a meritorious defense." <u>Id.</u> Courts may look to other factors too, such as "whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default." <u>Id.</u> "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." <u>Id.</u>

"The defendant bears the burden of establishing good cause to set aside an entry of default." <u>Insituform Techs.</u>, 588 F. Supp. 2d at 1352. That said, the Eleventh Circuit has repeatedly held that there is strong public policy in favor of resolving cases on the merits and that defaults are disfavored. <u>See, e.g.</u>, <u>Surtain v. Hamlin Terrance Found.</u>, 789 F.3d 1239, 1244–45 (11th Cir. 2015); <u>In re Worldwide Web Sys., Inc.</u>, 328 F.3d 1291, 1295 (11th Cir. 2003); <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309, 1316–17 (11th Cir. 2002). "For that reason, any doubts regarding whether to set aside an entry of default should be resolved in favor of the party seeking relief." <u>Insituform Techs.</u>, 588 F. Supp. 2d at 1352.

**B.    Discussion**

The United States has shown good cause for accepting its late Answer and setting aside the entry of default for four reasons. First, nothing suggests that the United States acted willfully or culpably in failing to timely respond to the

10

136

Complaint. Instead, it promptly acted to cure its mistake by requesting an extension to file its Answer, renewing its request before default was entered, and filing its Answer and motion to set aside just three days after default was entered. [See Docs. 18; 21; 24]; Joe Hand Promotions, Inc. v. Allen, No. CV 118-127, 2018 WL 5087233, at *1 (S.D. Ga. Oct. 18, 2018) ("[C]ourts are hesitant to deem a default willful when a litigant takes prompt action to cure."); Gray v. Mayberry, No. 3:18-CV-045, 2020 WL 1061359, at *2 (S.D. Ga. Feb. 3, 2020) ("[Defendant's] prompt response to entry of default is strong evidence of a cooperative spirit, with no malice or recklessness."); cf. Annon Consulting, Inc. v. BioNitrogen Holdings Corp., 650 F. App'x 729, 732 (11th Cir. 2016) (finding default willful where defendant knew of "the clerk's initial entry of default and still failed to file a responsive pleading" and waited over two months after default was entered to file a motion to set aside).

Second, setting aside the entry of default does not unduly prejudice Passantino. The United States's failure to timely answer delayed the proceedings by only two weeks. This delay has resulted in no loss to Passantino, financial or otherwise. Plus, because the proceedings are stayed and discovery has not yet begun, the delay has not deprived Passantino a competitive advantage in building his case. See Patel v. Baileys BP Shoppes, LLC, No. 1:19-cv-01409, 2020 WL 10459813, at *2 (N.D. Ga. Oct. 26, 2020) (finding no prejudice where opening default would not "increase difficulty litigating this case"); Aughnay v. Starr, No. 1:19-CV-2607-CC,

11

137

2019 WL 7343480, at *3 (N.D. Ga. Dec. 31, 2019) (explaining that prejudice based on delay requires "a showing that the delay will result in the loss of evidence, create increased discovery difficulties, or provide greater opportunities for fraud and collusion" (citation omitted)).

Third, the United States presents meritorious defenses. For purposes of setting aside an entry of default, those defenses "need only show a 'hint of a suggestion' to meet the requisite standard of a meritorious defense." Buonocore v. Credit One Bank, N.A., No. 3:14-CV-067 (CAR), 2014 WL 6620623, at *2 (M.D. Ga. Nov. 21, 2024) (quoting Moldwood Corp. v. Stutts, 410 F.2d 351, 352 (5th Cir. 1969)). Here, the United States's defenses exceed that standard—as explained below, they resolve this case entirely. Passantino cannot escape dismissal of his claims just because the United States filed its responsive pleading a couple weeks late. See id. (explaining that entry of default is not "a tactical device to be used to avoid litigation of a claim on the merits").

Lastly, the Court finds that setting aside default advances the public interest and aligns with the strong policy preference of determining cases on their merits. See Surtain, 789 F.3d at 1244–45. While the Court agrees with Passantino that rules are important and that no party, even the United States, is above them, refusing to set aside the entry of default is not the proper solution. "The purpose of the entry of default is to give notice to a party that unless they engage in the litigation process,

12

138

they could lose their right to do so." <u>Buonocore</u>, 2014 WL 6620623, *2. Here, the entry of default achieved that goal by prompting the United States to file its Answer. Thus, the Court accepts the United States's out-of-time Answer and sets aside the entry of default.[7]

## IV.    Motion for Judgment on the Pleadings

In his Complaint, Passantino asserts claims under the FTCA for invasion of privacy (Count I) and civil conspiracy (Count II). <u>See</u> Compl. ¶¶ 76–90. The United States argues that these claims are barred by the FTCA's intentional tort exception and fail to state a claim upon which relief can be granted. For the reasons below, the Court agrees with the United States and dismisses this case.

### A.    Legal Standard

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." <u>Samara v. Taylor</u>, 38 F.4th 141, 149 (11th Cir. 2022). Thus, in evaluating a motion for judgment on the pleadings, a court analyzes whether the complaint "contain[s] sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1131 n.2 (11th Cir. 2002). Put differently,

---

[7] As a result, the Court denies as moot Passantino's motion for default. [Doc. 35]; <u>see</u> <u>Patel</u>, 2020 WL 10459813, at *3 ("In the light of that ruling [to set aside the entry of default], the Court denies Plaintiff's motion for default judgment as moot.").

when deciding a motion for judgment on the pleadings, a court looks to see whether the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998) (citing Fed. R. Civ. P. 12(c)). "In determining whether a party is entitled to judgment on the pleadings," a court "accept[s] as true all material facts alleged in the non-moving party's pleading[s] and . . . view[s] those facts in the light most favorable to the non-moving party." Perez, 774 F.3d at 1335.

**B.    Discussion**

1.    Sovereign Immunity and the FTCA

"Sovereign immunity generally protects the United States and its agencies against suit." Smith v. United States, 14 F.4th 1228, 1230–31 (11th Cir. 2021). This principle is "axiomatic" and has long been recognized as a universal feature of the American legal system. United States v. Mitchell, 463 U.S. 206, 212 (1983); see also Cohens v. Virginia, 19 U.S. 264, 411–12 (1821) ("The universally received opinion is, that no suit can be commenced or prosecuted against the United States."). But "[s]overeign immunity does not bar all claims against the United States—only those

filed *without its consent*." <u>Smith</u>, 14 F.4th at 1231. Put simply, someone cannot sue the federal government without the federal government's permission.

That permission must be "unequivocally expressed in statutory text." <u>Fed. Aviation Admin. v. Cooper</u>, 566 U.S. 284, 290 (2012). And any waiver of sovereign immunity "must be strictly construed in favor of the United States and not enlarged beyond what the language of the statute requires." <u>United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res.</u>, 508 U.S. 1, 7 (1993) (cleaned up). Similarly, "courts are required to strictly observe all terms and conditions that accompany a waiver of sovereign immunity." <u>Smith</u>, 14 F.4th at 1231 (quotations omitted). "If there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit." <u>Zelaya v. United States</u>, 781 F.3d 1315, 1321 (11th Cir. 2015).

By enacting the FTCA, Congress "waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment." <u>Brownback v. King</u>, 592 U.S. 209, 212 (2021) (quotations omitted). "The Act gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment.'" <u>Millbrook v. United States</u>, 569 U.S. 50, 52 (2013) (quoting 28 U.S.C. § 1346(b)(1)). But the Act

15

also includes a few important limiting conditions "which serve to block the waiver of sovereign immunity that would otherwise occur under the FTCA." Zelaya, 781 F.3d at 1322. Two such limiting conditions are decisive in this case. First, the FTCA's waiver exception in 28 U.S.C. § 2680(h) bars Passantino's claims because they arise out of torts for which Congress has not waived the United States's sovereign immunity. Second, to state a valid FTCA claim, Passantino must plausibly allege all the elements of invasion of privacy and civil conspiracy; he has not.

2.      Section 2680(h) Exception

The FTCA's "broad waiver of sovereign immunity is subject to a number of exceptions set forth in § 2680." Millbrook, 569 U.S. at 52. One such exception, known as the "intentional torts exception," preserves the government's immunity from suit for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]" Id. (quoting § 2680(h)). The Supreme Court has made clear that "the express words of the statute" bar not only the intentional torts listed in § 2680(h) but also "any claim arising out of" that list. United States v. Shearer, 473 U.S. 52, 55 (1985). "The phrase 'arising out of' is interpreted broadly to include all injuries that are dependent upon one of the listed torts having been committed." Zelaya, 781 F.3d at 1333 (citing Shearer, 473 U.S. at 55); accord Block v. Neal, 460 U.S. 289, 297 (1983) ("[T]he statutory exception

16

142

undoubtedly preserves sovereign immunity with respect to a broad range of government actions.").

Put differently, "a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim." Metz v. United States, 788 F.2d 1528, 1534 (11th Cir. 1986) (quoting Block, 460 U.S. at 297), cert. denied, 479 U.S. 930 (1986). While § 2680(h) bars "claims arising out of a certain type of factual situation," Shearer, 473 U.S. at 55, a plaintiff is free to pursue "a distinct claim arising out of other aspects of the Government's conduct." Block, 460 U.S. at 297. The court's "task is to identify those circumstances which are within the words and reason of the exception—no less and no more." Metz, 788 F.2d at 1534 (quotation marks omitted) (quoting Kosak v. United States, 465 U.S. 848, 853 n.9 (1984)).

Here, the United States argues that § 2680(h) bars Passantino's claims because they arise out of libel and slander. [See Doc. 27 at 5–14]. According to the United States, the Complaint alleges that the Committee leaked false statements about Passantino to the media and that without those false statements, the Complaint does not support a viable claim for invasion of privacy or civil conspiracy. [Id. at 10–11]. Passantino contends that the libel/slander exception of § 2680(h) does not bar his claims because, regardless of the truth or falsity of the leaked information,

17

143

the harm arises from the Committee's disclosure of private facts, not from any false or defamatory remarks it made about Passantino.[8] [Doc. 32 at 7–12].

The Eleventh Circuit has read the § 2680(h) libel/slander exception to bar invasion of privacy claims arising out of defamation. The most analogous case is Cadman v. United States, 541 F. App'x 911 (11th Cir. 2013). The plaintiff in Cadman, a federal contractor working for a private firm, was tasked with implementing and overseeing a government program. Id. at 912. After the program stirred some controversy, federal agents published statements to the media blaming the plaintiff for the program's problems. Id. When a news story broke and the plaintiff was terminated from his firm, he brought D.C. law claims for invasion of privacy and negligence under the FTCA. Id. The Eleventh Circuit upheld the district court's dismissal for lack of subject matter jurisdiction, determining that his claims were barred by "the libel-slander-misrepresentation exemption" of § 2680(h). Id. at 914. The plaintiff's claims were entirely "based on statements, representations, and imputations" by the government—the type of conduct the FTCA expressly immunizes. Id. (quotation marks omitted). And because the plaintiff could not point

---

[8] Passantino also argues that the United States's motion should be denied as procedurally improper because the late Answer constitutes a non-operative pleading, rendering a motion for judgment on the pleadings premature. [Doc. 32 at 4–7]. Because the Court accepts the United States's late Answer, the pleadings closed before the United States filed this motion, which is now ripe.

to any "other independent government action" to establish his claims, the court lacked subject matter jurisdiction to consider them. Id.

This case is on all fours with Cadman. At bottom, "all of the [Committee's] allegedly tortious actions here are based on statements, representations, or imputations"—actions that would form the basis of a claim barred by the libel/slander exception of § 2680(h). Id. (quotation marks omitted). And Passantino cannot point to any action by the Committee independent of these "statements, representations, or imputations" upon which to base his claims. Passantino insists that this "suit is not based on the defamatory sting of the ensuing publication" but rather "the publication of private information." Compl. ¶ 83. But this assertion contradicts the whole of Passantino's claims, which necessarily depend on the falsity of the information the Committee leaked to the media. Without that false information, Passantino cannot attribute any of the harm alleged in the Complaint to an act by the Committee.

Passantino calls his claims "invasion of privacy" and "civil conspiracy," but in substance, he asserts a claim for defamation. And it is "the substance of the claim and not the language used in stating it which controls." Zelaya, 781 F.3d at 1334 (cleaned up); see also Shearer, 473 U.S. at 55 (emphasizing that "[n]o semantical recasting of events" could save the plaintiff's claim from § 2680(h) exemption). The Complaint repeatedly alleges that the Committee created and disseminated false

information to the media that harmed Passantino's reputation. That is an allegation of defamation, as it is traditionally and commonly understood.[9]

A defamation claim requires: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) . . . the existence of special harm caused by the publication." Restatement (Second) of Torts § 558 (Am. L. Inst. 1977); see also Defamation, Black's Law Dictionary (12th ed. 2024) (defining "defamation" as "[a] false written or oral statement that damages another's reputation"). A "statement" is simply a "communication" that tends "to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559. And "[p]ublication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." Id. § 577

---

[9] When evaluating whether a claim falls within a § 2680(h) exception, courts within the Eleventh Circuit do not look to the law of a particular state, but rather the "traditional and commonly understood definition" of the tort excepted by that section. Metz, 788 F.2d at 1535 n.8 (quoting United States v. Neustadt, 366 U.S. 696, 706 (1961)). Other courts have relied on restatements and other persuasive authority to define exempted claims. See, e.g., O'Ferrell v. United States, 968 F. Supp. 1519, 1528–29 (M.D. Ala. 1997) (relying on the Restatement (Second) of Torts to define "defamation"), aff'd, 253 F.3d 1257 (11th Cir. 2001); Jimenez-Nieves v. United States, 682 F.2d 1, 6 (1st Cir. 1982) (same).

146

Passantino's entire Complaint "resound[s] in the heartland of the tort of defamation[.]" <u>Jimenez-Nieves v. United States</u>, 682 F.2d 1, 6 (1st Cir. 1982). The Complaint alleges that the Committee:

(a) created a false story that Passantino advised Hutchinson to lie to the Committee, Compl. ¶ 2 ("generated a harmful narrative"), ¶ 5 ("create[d] a narrative"), ¶ 6 ("gave an outrageous narrative"), ¶ 34 ("advance[d] a preordained political and legal narrative"), ¶ 49 (released an executive summary raising "substantial concerns" that "certain counsel" (purportedly Passantino) "may have advised clients to provide false or misleading testimony to the Committee");

(b) published that false story by leaking it to CNN, <u>id.</u> ¶ 2 ("published private information and promoted that narrative"), ¶ 5 ("leaked information . . . to create a narrative that would injure Mr. Passantino"), ¶ 6 ("gave an outrageous narrative to media sources"), ¶ 34 ("leaked private information to news agencies"), ¶ 55 ("[t]his allegation to CNN was leaked by the Committee"), ¶ 68 ("the story . . . was given to CNN by the Committee");

(c) leaked the story with the intent to injure Passantino, <u>id.</u> ¶ 3 ("The Committee . . . had a deliberate goal to ruin Mr. Passantino[.]"), ¶ 5 ("leaked information . . . to create a narrative Mr. Passantino"), ¶ 34 ("leaked private information to news agencies in order to harm Mr. Passantino"), ¶ 47 ("the Committee . . . leaked this transcript to CNN to ensure maximum damage was done"), ¶ 53 ("leaked private information in order to cause a damaging news story"), ¶ 70 ("The Committee deliberately leaked information to news media[.]"); and

(d) caused Passantino significant personal and professional harm through the leak, <u>id.</u> ¶ 5 ("resulted in serious personal damage to Mr. Passantino"), ¶ 6 ("caused him significant economic, reputational, and emotional harm"), ¶ 34 ("resulting in significant damage to his personal and business relationships as well as causing him significant emotional trauma"), ¶ 69 ("resulting in significant reputational, emotional, and economic damage to Mr. Passantino"), ¶ 74 ("Mr. Passantino has suffered severe financial and reputational harm, has been exposed to numerous physical threats to himself and his family, harassment, has received numerous, well-publicized bar complaints filed by groups which Mr. Passantino never

interacted with or had an opportunity to rebut, and has suffered significant emotional harm."), ¶ 84 ("destruction of his professional career"), ¶ 85 ("they impugn Mr. Passantino's character and ethics, traits that are essential to his work and all relationships, both personal and professional").

Passantino attempts to sidestep § 2680(h)'s libel/slander exception by arguing that the harm alleged in the Complaint derives not from the Committee's false statements about him, but from the Committee releasing his "private information." [Doc. 32 at 7–9]. That private information, according to Passantino, consists of privileged "internal discussions" with Hutchinson that the Committee purportedly leaked to the media. [Id. at 8]. The problem with Passantino's argument is that if the Committee's defamatory statements are set aside, the Complaint fails to establish a connection between the "internal discussions" about Passantino's "private information" and the harm alleged in the Complaint. And without that connection, there is no valid FTCA claim.

The Supreme Court clarified this point in Block v. Neal, 460 U.S. 289 (1983), which both Parties cite in support of their respective positions. In Block, a government agency oversaw the construction of the plaintiff's home, but that construction turned out to be defective. Id. at 297. After conducting three inspections, the agency misrepresented that the construction met appropriate standards when it had not. Id. at 292. When the plaintiff eventually realized that she had purchased a defective home, she sued the agency on grounds that it had not

22

148

properly conducted or supervised the inspection. Id. at 290. The Court held that although the plaintiff alleged that she was injured by the government's negligent misrepresentations—conduct expressly immunized by § 2680(h)—her claim could move forward because the injury she alleged was not "wholly attributable to reliance on the Government's misstatements." Id. at 297. Rather, her injury was, at least in part, attributable to other conduct not barred from recovery—the agency's negligent failure to properly inspect the home during construction. Id. at 298. In other words, even if allegations related to the government's misrepresentations were removed from the complaint, the plaintiff could still recover for injuries caused by other government conduct not immunized by the FTCA.

Passantino's claims are different. The linchpin connecting the Committee to Passantino's injury is the defamatory story the Committee allegedly leaked—that Passantino told Hutchinson to lie to the Committee during her interviews. Those allegations cannot form the basis for recovery, and, unlike the plaintiff in Block, Passantino asserts no other tortious act that can form the basis for recovery. When allegations related to the defamatory story are set aside, the only conduct alleged in support of Passantino's invasion of privacy claim is that the government leaked private information related to Passantino's attorney-client relationship with Hutchinson. But neither the Complaint nor any other pleading clarifies what this "private information" is. The only sources that provide even a hint about the

23

149

substance of the leaked private information are the transcripts of the Committee's interview with Hutchinson and the judicially noticed Reports. But neither contains facts plausibly connecting the Committee's conduct with Passantino's alleged injury.

The transcripts, as alleged in the Complaint, do not contain any information about Passantino or his relationship with Hutchinson that could plausibly cause the types of personal and professional harm he alleges. If anything, the transcripts vindicate Passantino by making clear that he "did not advise [Hutchinson] to lie to the Committee or to perjure herself." Compl. ¶ 59. The judicially noticed Reports are equally vague about the substance of the "private information" the Committee allegedly leaked to the media. The October Report reveals that Liz Cheney talked to Hutchinson behind Passantino's back, encouraged Hutchinson to fire him, and assisted Hutchinson in obtaining new representation, but it does not identify what private information about Passantino the Committee leaked. See October Report, supra note 4.

The December Report only further undermines Passantino's claims by showing that the private information about Passantino the Committee disclosed to the media and in a complaint to the D.C. Bar was, in fact, defamatory. For example, in finding that Cheney and Hutchinson attempted to disbar Passantino, the December Report repeatedly states that the Committee defamed Passantino by "creat[ing] a

narrative that would make Passantino the scapegoat"; "manufactur[ing] the story that Passantino gave Hutchinson faulty advice—such as instructing Hutchinson to withhold information, to misrepresent her testimony, and even that Passantino implied he would help Hutchinson with future employment in return for favorable testimony"; and "accus[ing] Passantino of instructing Hutchinson to lie to congressional investigators, sharing information about her testimony with the press over her objections, sharing information about her testimony with other attorneys, and not disclosing who was paying the bills for her representation." See December Report, supra note 5, at 46–48. Apart from the litany of defamatory remarks, neither Report even hints at what Passantino means by "private information."

Rather, Passantino's injury is "wholly attributable" to the Committee's defamatory statements—conduct expressly immunized by § 2680(h). Block, 460 U.S. at 297. And no reading of the Complaint, even in a light most favorable to Passantino, supports Passantino's argument that his claims are based upon "other independent government action." Cadman, 541 F. App'x at 914. Regardless of how artfully Passantino pleads his claims, he cannot circumvent the inevitability that his suit arises out of defamation—a conclusion that immunizes the United States and leaves this Court without jurisdiction over this case. See Zelaya, 781 F.3d at 1321 ("If there is no specific waiver of sovereign immunity as to a particular claim filed

against the Government, the court lacks subject matter jurisdiction over the suit.").
For that reason, his claims are dismissed.

3.    Failure to State a Claim

As a secondary argument in support of judgment on the pleadings, the United
States argues that even if § 2680(h) does not bar Passantino's claims for invasion of
privacy and civil conspiracy, those claims still fail to state a claim upon which relief
can be granted under D.C. law. The Court again agrees with the United States.

The FTCA extends federal courts jurisdiction to consider only claims in which
"the United States, if a private person, would be liable to the claimant in accordance
with the law of the place where the act or omission occurred." 28 U.S.C.
§ 1346(b)(1). Thus, if an FTCA plaintiff fails to plausibly allege all elements of the
underlying state law claim, the claim has not been pled "in accordance with the law
of the place where the act or omission occurred," and the United States retains
sovereign immunity.[10] Id.; see, e.g., Smith, 14 F.4th at 1231 (holding the court
lacked subject matter jurisdiction over an FTCA action because plaintiffs failed to
prove the duty element of their underlying state law negligence claim). And with
sovereign immunity intact, the court lacks subject matter jurisdiction over the claim.
Zelaya, 781 F.3d at 1321. In this way, the merits and jurisdiction of FTCA claims

---

[10] Here, the alleged conduct took place in Washington, D.C., which means D.C. law governs the
merits determination of Passantino's claims. See 28 U.S.C. § 1346(b)(1); Smith, 14 F.4th at 1231.

are uniquely "intertwined"—"all elements of a meritorious claim are also jurisdictional." <u>Brownback</u>, 592 U.S. at 217 (cleaned up). Thus, the Court evaluates the merits of each of Passantino's claims to determine whether it retains jurisdiction over them.

### a.     Invasion of Privacy

Under D.C. law, "[i]nvasion of privacy is not seen as one tort, 'but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded.'"[11] <u>Betz v. Synchrony Bank</u>, No. 22-2235 (JEB), 2023 WL 3303669, at *4 (D.D.C. May 8, 2023) (quoting <u>Wolf v. Regardie</u>, 553 A.2d 1213, 1216–17 (D.C. 1989)). The Parties appear to agree that the specific type of invasion of privacy claim Passantino is alleging is "public disclosure of private facts." [<u>See</u> Docs. 27 at 15; 32 at 13]. To prevail on such a claim, a plaintiff must prove: "(1) publicity, (2) absent any waiver or privilege, (3) given to private facts, (4) in which the public has no legitimate concern, (5) and which would be highly offensive to a

---

[11] D.C. courts have defined those four types of invasion of privacy claims as "(1) intrusion upon one's solitude or seclusion; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit." <u>Wolf v. Regardie</u>, 553 A.2d 1213, 1217 (D.C. 1989).

reasonable person of ordinary sensibilities." <u>Doe v. Bernabei & Wachtel, PLLC</u>, 116 A.3d 1262, 1267 (D.C. 2015) (quoting <u>Wolf</u>, 553 A.2d at 1220).[12]

Here, the Complaint fails to plausibly allege the third, fourth, and fifth elements. Beginning with the third element, the Complaint does not allege sufficient details about the "private facts" the Committee allegedly published. While the Complaint contains no shortage of references to "private facts" and "private information" about Passantino that the Committee allegedly leaked to the media, it is virtually silent on what those private facts are. Compl. ¶¶ 2, 34, 53, 69, 70, 72, 82–84, 86, 89. The most Passantino offers about the substance of these facts is that they relate "to the intimate details of Mr. Passantino's representation of Ms. Hutchinson." [Doc. 32 at 12–13]. But neither the Complaint nor the Committee transcripts purportedly containing these "intimate details" shed any light on what the details are or why they are private. As explained, the transcripts, as alleged in the Complaint, only serve to vindicate Passantino because they make clear that Passantino instructed Hutchinson not to lie to the Committee or perjure herself.

---

[12] One important feature of this tort is that it "seeks to redress reputation injuries made all the more painful because the public revelations about deeply private and intimate matters are *undeniably true*." <u>Benz v. Wash. Newspaper Pub. Co.</u>, No. 05-1760 (EGS), 2006 WL 2844896, at *7 (D.D.C. Sept. 29, 2006) (cleaned up and emphasis added) (upholding public disclosure of private facts claim premised the release of plaintiff's true information (e.g., her phone number and address)). This distinction makes sense; after all, facts and falsities are mutually exclusive. Because invasion of privacy requires the disclosure of *true* facts, any allegations in the Complaint that the Committee made *false* statements have no bearing on the plausibility of Passantino's invasion of privacy claim.

28

Compl. ¶¶ 58–60. The Court is hard pressed to see how an attorney's advice to his client not to lie to Congress is a "private fact" in any sense. Passantino points to only one other potential source of the leaked private information outside the transcripts: "direct conversations between agents of the January 6 Committee and outside third parties." [Doc. 32 at 14]. But yet again, Passantino leaves the United States and this Court guessing as to what private information was exchanged during those conversations.

The Complaint fails as to the fourth element (that the private facts were of no legitimate public concern) and fifth element (that the private facts are highly offensive to a reasonable person of ordinary sensibilities) for the same reason. The Complaint pleads in conclusory fashion that the "public had no interest in the attorney-client relationship between Mr. Passantino and Ms. Hutchinson" and that "[t]he facts disclosed would be offensive to any reasonable person." Compl. ¶¶ 69, 85. But such "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The Complaint simply does not contain enough facts about the leaked private information for the Court "to infer more than a mere possibility" that the public had no legitimate interest them or that they were highly offensive. Id. at 679.

While the Court agrees with Passantino that he need only plead a short and plain statement to plausibly allege his invasion of privacy claim, the Court disagrees

that Passantino has done so here. Without providing "further factual enhancement," merely reciting the element of a claim is insufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 557. Passantino contends that "discovery will bear out the actual facts here," [Doc. 32 at 14], but Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678–79. Because Passantino offers only unsupported conclusions about the private facts allegedly leaked by the Committee, he fails to state a valid invasion of privacy claim under the FTCA.

> ### b.   *Civil Conspiracy*

The elements of civil conspiracy consist of: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme. Acosta v. Islamic Republic of Iran, 574 F. Supp. 2d 15, 27 (D.D.C. 2008) (citing Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983)). The "unlawful act" Passantino rests his civil conspiracy claim on is invasion of privacy, which, as explained above, fails as a matter of law. Because the Complaint alleges no other unlawful act, the civil conspiracy claim fails too. See Friends Christian High School v. Geneva Fin. Consultants, 39 F. Supp. 3d 58, 65 (D.D.C. 2014) ("[T]here is no independent action in the District of Columbia for civil conspiracy; rather, it is

a means for establishing vicarious liability for an underlying tort." (quoting <u>Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.</u>, 749 A.2d 724, 738 (D.C. 2000))).

In sum, the United States is entitled to judgment on the pleadings because Passantino's claims arise out of defamation, which 28 U.S.C. § 2680(h) expressly immunizes, and because the Complaint fails to assert all the required elements of invasion of privacy and civil conspiracy. For these reasons, "[t]he sovereign immunity of the United States thus 'remains intact' for the claims brought in this lawsuit and 'no subject matter jurisdiction exists.'" <u>Smith</u>, 14 F.4th at 1234 (quoting <u>Bennett v. United States</u>, 102 F. 3d 486, 488 n.1 (11th Cir. 1996)). And without subject matter jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## V. Conclusion

For the reasons above, the Court **GRANTS** the United States's construed motion to file an out-of-time Answer [Doc. 21], Motion to Set Aside Entry of Default [Doc. 25], and Motion for Extension of Time [Doc. 43]. The Court also **GRANTS** Passantino's Motions for Judicial Notice [Docs. 39; 42] and **DENIES AS MOOT** his Motion for Default Judgment [Doc. 35]. Additionally, the Court **GRANTS** the United States's Motion for Judgment on the Pleadings [Doc. 27] and **DISMISSES** the Complaint. The Court **DIRECTS** the Clerk to **TERMINATE** this case.

31

157

**SO ORDERED**, this 22nd day of January, 2025.

Eleanor L. Ross
United States District Judge
Northern District of Georgia

158

**TAB 46**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

STEFAN PASSANTINO,
                Plaintiff,

vs.

UNITED STATES OF AMERICA,
                Defendant.

CIVIL ACTION FILE

NO.  4:23-cv-00300-ELR

**J U D G M E N T**

     This action having come before the court, Honorable Eleanor L. Ross, United States District Judge, for consideration of the defendant's Motion for Judgment on the Pleadings and having been granted said Motion, it is

     **Ordered and Adjudged** that the action be **DISMISSED**.

     Dated at Rome, Georgia, this 22nd day of January, 2025.

KEVIN P. WEIMER
CLERK OF COURT

By: _s/A. White_____
     , Deputy Clerk

Prepared, Filed, and Entered
in the Clerk's Office
January 22, 2025
Kevin P. Weimer
Clerk of Court

By: _s/A. White_____
     Deputy Clerk

159

**TAB 47**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

**STEFAN PASSANTINO**,

  *Plaintiff,*

**v.**

              Case No. 4:23-CV-00300-ELR

**UNITED STATES OF AMERICA**,

  *Defendant.*

## <u>PLAINTIFF'S NOTICE OF APPEAL</u>

Plaintiff, Stefan Passantino, hereby gives notice of his appeal to the United States Court of Appeals for the Eleventh Circuit from this Court's Order and Judgment, *see* Docs. 45, 46, entered on January 22, 2025, granting the United States's "construed motion" to file an out-of-time Answer (Doc. 21), the United States's Motion to Set Aside Entry of Default [Doc. 25], the United States's Motion for Extension of Time (Doc. 43), and the United States's Motion for Judgment on the Pleadings (Doc. 27). And, additionally, denying Plaintiff's Motion for Default Judgment (Doc. 35) as moot.

Dated: February 13, 2025      Respectfully submitted,

              */s/ Jesse R. Binnall*
              Jesse R. Binnall (*pro hac vice*)
              Shawn M. Flynn (*pro hac vice*)

160

Jared J. Roberts (*pro hac vice*)
Binnall Law Group, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com
  shawn@binnall.com
  jared@binnall.com

Bryan P. Tyson (Ga. Bar No. 515411)
Clark Hill PLC
3630 Peachtree Rd. NE
Suite 550
Atlanta, Georgia 30326
Phone: 678-370-4377
Email: btyson@clarkhill.com

*Attorneys for Plaintiff*

2

161

## CERTIFICATE OF SERVICE

I certify that on February 13, 2025, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/    *Jesse R. Binnall*
Jesse R. Binnall (*pro hac vice*)

*Attorney for Plaintiff*

3

162

# CERTIFICATE OF SERVICE

I certify that on May 7, 2025, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Jesse R. Binnall*
Jesse R. Binnall

*Counsel for Appellant*
*Stefan Passantino*