# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

STEFAN PASSANTINO,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

On appeal from the United States District Court
for the Northern District of Georgia
No. 4:23-CV-00300-ELR

## BRIEF OF APPELLEE
## UNITED STATES OF AMERICA.

THEODORE S. HERTZBERG
*United States Attorney*

A. JONATHAN JACKSON
*Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6000

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In addition to those listed in Appellant's brief, the following people and entities have an interest in the outcome of this appeal:

Hertzberg, Theodore S., United States Attorney

Jackson, A. Jonathan, Assistant United States Attorney

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case. The issues and positions of the parties, as presented in the record and briefs, are sufficient to enable the Court to reach a just determination.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure
Statement ................................................................... C-1

Statement Regarding Oral Argument ............................................... i

Table of Contents ................................................................ ii

Table of Citations ................................................................ v

Statement of Jurisdiction ........................................................ viii

Statement of the Issues ........................................................... 1

Statement of the Case ............................................................ 3

    A. Course of Proceedings and Disposition Below ..................... 3

    B. Statement of the Facts ....................................................... 14

        1. Passantino represented individuals testifying during the
congressional hearings concerning the events of January
2021—including Cassidy Hutchinson. ........................... 14

        2. Hutchinson's interactions with the Committee and
conclusion of relationship with Passantino ................... 15

        3. Interview transcripts made public. ............................... 16

        4. Passantino's alleged harms ........................................... 18

    C. Standard of Review ........................................................... 19

Summary of the Argument ....................................................... 20

Argument and Citations of Authority ........................................... 22

1. The district court correctly granted the United States' motion
for judgment on the pleadings. .................................................. 22

    A. The district court properly considered the United States'
motion and whether it had subject matter jurisdiction to
hear Passantino's claims. ...................................................... 22

B. The district court lacked subject matter jurisdiction over Passantino's claims because they are barred by 28 U.S.C. § 2680(h). .............................................................. 23

    1. Even if Passantino's claims are private facts claims, they are still barred by § 2680(h). ........................................ 26

    2. Any FTCA claim for civil conspiracy also fail under § 2680(h)...................................................................... 30

C. Passantino failed to state a valid claim for relief under District of Columbia law. .................................................... 31

    1. Passantino failed to plead a valid public disclosure of private facts claim. ........................................................ 31

    2. Passantino also failed to plead a valid civil conspiracy claim............................................................................... 38

2. The district court did not abuse its discretion by finding good cause to allow a late answer, set aside default, or by dismissing Passantino's motion for default judgment. .............................. 40

A. The district court applied the correct legal standard. ......... 40

B. The district court followed proper procedures. .................. 41

C. The district court's factual findings were not clearly erroneous.................................................................................... 43

D. Passantino's arguments that the district court abused its discretion fall short. .............................................................. 44

E. The district court did not abuse its discretion in denying Passantino's motion for default judgment as moot. ........... 46

F. Even if the district court abused its discretion by setting aside the default, Passantino failed to meet Rule 55(d)'s requirements to enter default judgment against the United States.................................................................................... 47

Conclusion.................................................................................... 48

Certificate of compliance with type-volume limit, typeface requirements, and type-style requirements................................49

Certificate of Service....................................................................50

# TABLE OF CITATIONS

**Federal Cases**

Anheuser Busch, Inc. v. Philpot,
    317 F.3d 1264 (11th Cir. 2003)......................................................... 41

*Arbaugh v. Y&H Corp.,
    546 U.S. 500 (2006) ......................................................................... 22

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) .................................................................... 33, 34

Bartnicki v. Vopper,
    532 U.S. 514 (2001) .................................................................... 36, 37

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ....................................................... 32, 33, 34, 39

Block v. Neal,
    460 U.S. 289 (1983) .................................................................... 10, 29

Budik v. Howard Univ. Hosp.,
    986 F. Supp. 2d 1 (D.D.C. 2013)................................................ 35, 37

*Cadman v. United States,
    541 F. App'x 911 (11th Cir. 2013) ................................................... 27

Carmichael v. Kellogg, Brown & Root Servs., Inc.,
    572 F.3d 1271 (11th Cir. 2009) ....................................................... 43

*Compania Interamericana Export-Import, S.A. v. Compania Dominicana de
    Aviacion,
    88 F.3d 948 (11th Cir. 1996) .................................................... 41, 42

Cont'l Cas. Co. v. Winder Lab'ys, LLC,
    73 F.4th 934 (11th Cir. 2023)......................................................... 19

*DeRoy v. Carnival Corp.,
    963 F.3d 1302 (11th Cir. 2020) ....................................................... 22

Dvoinik v. Rolff,
    No. 23-14147, 2024 WL 2974475 (11th Cir. June 13, 2024) ....... 19

Goble v. Ward,
    628 F. App'x 692 (11th Cir. 2015) ................................................... 30

Hodges v. United States,
    78 F.4th 1365 (11th Cir. 2023)....................................................... 44

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

*In re Deepwater Horizon BELO Cases,
 119 F.4th 937 (11th Cir. 2024)....................................... 40

In re Knight,
 833 F.2d 1515 (11th Cir. 1987).................................... 45

Johnson v. Evening Star Newspaper Co.,
 344 F.2d 507 (D.C. Cir. 1965)....................................... 37

Jones v. Harrell,
 858 F.2d 667 (11th Cir. 1988)........................... 19, 40, 46

Mason v. Lister,
 562 F.2d 343 (5th Cir. 1977)....................................... 47

Mclaughlin v. LaGrance,
 662 F.2d 1385 (11th Cir. 1981)................................... 45

Metz v. United States,
 788 F.2d 1528 (11th Cir. 1986)................................... 25

*Millbrook v. United States,
 569 U.S. 50 (2013)................................................... 24

*O'Ferrell v. United States,
 253 F.3d 1257 (11th Cir. 2001)........................25, 26, 27

Parnigoni v. St. Columba's Nursery Sch.,
 681 F. Supp. 2d 1 (D.D.C. 2010)........................... 35, 37

Pearson v. Dodd,
 410 F.2d 701 (D.C. Cir. 1969).................................... 36

*Perez v. Wells Fargo N.A.,
 774 F.3d 1329 (11th Cir. 2014).........................14, 41, 45

Robinson v. United States,
 734 F.2d 735 (11th Cir. 1984).................................... 19

Sec. & Exch. Comm'n v. Newton,
 No. 11-61455-CIV-ZLOCH,
 2012 WL 13005863, (S.D. Fla. Feb. 3, 2012) ............... 46

Staley v. Owens,
 367 F. App'x 102 (11th Cir. 2010) ............................... 19

Stansell v. Revolutionary Armed Forces of Colombia,
 120 F.4th 754 (11th Cir. 2024)................................40, 43

Surtain v. Hamlin Terrace Found.,
 789 F.3d 1239 (11th Cir. 2015).................................... 19

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

*Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy,*
242 F.3d 322 (5th Cir. 2001) .......................................... 23

*Zelaya v. United States,*
781 F.3d 1315 (11th Cir. 2015) ................................ 24, 25

**State Cases**

*Greenpeace, Inc. v. Dow Chem. Co.,*
97 A.3d 1053 (D.C. Ct. App. 2014) ......................... 26, 32

*Jones v. United States,*
828 A.2d 169 (D.C. 2003) .......................................... 35, 38

*Vassiliades v. Garfinckel's, Brooks Bros.,*
492 A.2d 580 (D.C. Ct. App. 1985) ............................ 37

*Weishapl v. Sowers,*
771 A.2d 1014 (D.C. Ct. App. 2001) ......................... 39

*Wolf v. Regardie,*
553 A.2d 1213 (D.C. Ct. App. 1989) ...................... 31, 32

**Federal Statutes**

28 U.S.C. § 1291 .............................................................. viii

28 U.S.C. § 1331 .............................................................. viii

*28 U.S.C. § 1346(b)(1) ............................................ viii, 26, 31

*28 U.S.C. § 2680(h) ..................... 4, 8, 10, 11, 13, 23-27, 29-31

**Federal Rules**

Fed. R. App. P. 4(b)(1)(A) ............................................ viii

Fed. R. App. P. 32(a)(5)(A) .......................................... 49

Fed. R. App. P. 32(a)(6) ............................................... 49

Fed. R. App. P. 32(a)(7)(B)(i) ...................................... 49

Fed. R. App. P. 32(f) .................................................... 49

*Fed. R. Civ. P. 8 .......................................................... 34

*Fed. R. Civ. P. 8(a) ................................................. 32, 39

*Fed. R. Civ. P. 12(h)(3) ............................................. 22

Fed. R. Civ. P. 55(c) ...................................................... 6

*Fed. R. Civ. P. 55(d) ......................................... 2, 21, 47

**Other Authorities**

Defamation, Black's Law Dictionary (12th ed. 2024) ................... 9, 26

Restatement (Second) of Torts § 558 (Am. L. Inst. 1977) ............... 26

Restatement (Second) of Torts § 652D (1977), cmt. b ..................... 34

Restatement (Second) of Torts § 652D (1977), cmt. g ..................... 36

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## STEFAN PASSANTINO,

*Plaintiff-Appellant,*

*v.*

## UNITED STATES OF AMERICA,

*Defendant-Appellee.*

## STATEMENT OF JURISDICTION

(A)  The district court had subject matter jurisdiction over the underlying case based on 28 U.S.C. §§ 1331 and 1346(b)(1).

(B)  The court of appeals has jurisdiction over this direct appeal from the judgment of the district court under 28 U.S.C. § 1291.

(C)  The notice of appeal was timely filed on February 13, 2025, within 60 days of the entry of the district court's judgment. Fed. R. App. P. 4(b)(1)(A).

(D)  This appeal is from a final order and judgment that disposes of all the parties' claims in this civil case.

# STATEMENT OF THE ISSUES

1. The Federal Tort Claims Act (FTCA) waives the United States' sovereign immunity for certain torts committed by federal employees but exempts claims "arising out of" certain intentional torts, including libel and slander, from this waiver. Passantino's claims arise from both. Did the district court correctly dismiss Passantino's claims for lack of subject matter jurisdiction?

2. A plaintiff can only recover under the FTCA where he plausibly alleges all elements of the underlying state-law claim. Here Passantino failed to allege the underlying elements of the two state law claims contained in his complaint. Did the district court properly dismiss his claims under the FTCA for failure to state a valid claim for relief?

3. Default was entered against the United States by the clerk after the government missed its answer deadline. The district court subsequently vacated the default and allowed a late filing for good cause. Did the district court act within its discretion by finding good cause to set aside default?

4. Rule 55(d) bars the entry of default judgment against the United States unless a claimant establishes a right to relief by evidence that satisfies the Court. Where Passantino's claims were barred by the United States' sovereign immunity and/or his failure to state a claim upon which relief can be granted, did the district court properly refuse to enter default judgment against the United States?

## STATEMENT OF THE CASE

### A. Course of Proceedings and Disposition Below

In December 2023, Stefan Passantino filed a complaint against the United States alleging invasion of privacy and civil conspiracy under the FTCA pursuant to D.C. law.[1] Counsel for the United States contacted Passantino's counsel to seek consent for an extension of time to file a responsive pleading on the day of the filing deadline.[2] The motion was filed the same day.[3] Passantino's counsel consented to the extension the next day.[4] The district court denied the extension motion via minute order.

Counsel for both parties attempted to come to an agreement to allow for a late filing of an answer a few days after the district court denied the extension.[5] Ultimately, they could not do so.[6]

Later, the district court entered an order to show cause as to why the case should not be dismissed for want of prosecution.[7] The

---

[1] Doc. 1 ¶¶ 76-90.

[2] Doc. 22-2.

[3] Doc. 18.

[4] Doc. 22-2.

[5] Docs. 22-5, 22-6.

[6] *Id.*

[7] Doc. 20.

United States then filed a motion for an extension of time to file a late answer based on excusable neglect.[8] Passantino subsequently moved for an entry of default against the United States in response to the district court's show cause order.[9] The clerk entered default on April 26, 2024.[10]

The United States filed a motion to set aside default, along with an answer, a few days after the clerk entered default.[11] Less than a week later, the United States filed a motion for judgment on the pleadings based on lack of subject matter jurisdiction and failure to state a valid claim for relief.[12]

In particular, the government argued that Passantino's claims were barred by 28 U.S.C. § 2680(h), because they arose out of libel and slander– intentional torts exempted from the FTCA's waiver of sovereign immunity. The government also argued that, even if the claims were not barred by its sovereign immunity, Passantino failed to plead facts sufficient to establish the underlying state law claims– invasion of privacy or civil conspiracy.

---

[8] Doc. 21.

[9] Doc. 22.

[10] Doc. 45, 2

[11] Docs. 24-25.

[12] Doc. 27.

The parties fully briefed the motions to file a late answer, to set aside default, and for judgment on the pleadings.[13] After briefing on the aforementioned motions, Passantino filed a motion for default judgment against the United States.[14] The parties completed briefing on the motion within a month.[15] Passantino then filed a motion asking the district court to take notice of an October 2024 news release and a December 2024 interim report both issued by the U.S. House of Representatives Committee on House Administration.[16] The parties completed briefing on the motion, and all filings in the case, in January 2025.[17]

Later that month, the district court issued an order granting the United States' motions to file a late answer and to set aside default, based on good cause.[18] The district court found that the United States

---

[13] Docs. 21, 25, 27, 30, 32-34.

[14] Doc. 35.

[15] Docs. 36-37.

[16] Doc. 39.

[17] Doc. 44.

[18] Doc. 45.

showed good cause to accept its late answer,[19] and to set aside the court's entry of default for four reasons.[20]

First, the district court found that there was no suggestion that the United States acted willfully or culpably in its failure to timely respond to the Complaint.[21] Rather, the district court found that the United States acted promptly to cure its mistake by requesting an extension of time, and by renewing that request prior to any entry of default.[22] The district court also noted that the United States filed its answer and a motion to set aside default only three days after default was entered.[23]

Second, the district court found that setting aside the default would not unduly prejudice Passantino.[24] The court's order found that the United States' untimely answer delayed the proceedings by

---

[19] The district court determined that, since Passantino sought a default judgment based on the United States' late filing, Rule 55(c)'s good cause standard also applied to the United States' motion to file out of time.

[20] Doc. 45, 10-14.

[21] *Id.* 10-11.

[22] *Id.* at 11.

[23] Doc. 45, 11.

[24] *Id.* at 11-12.

only two weeks, and Passantino did not suffer any loss as a result.[25] In addition, the court found that, because the case was stayed and discovery had not begun, the delay did not place Passantino at a competitive disadvantage in litigating his case.[26]

Third, the district court found good cause to accept the late Answer and set aside default because it determined the United States presented meritorious defenses.[27] The court noted that the United States exceeded the standard for showing a meritorious defense, as its defenses completely resolved the case.[28] It also emphasized that Passantino could not escape dismissal of his claims simply because the United States filed its responsive pleading a few weeks late.[29]

Finally, the district court found good cause to allow the United States' late answer, and to set aside default, because doing so advanced the public interest and aligned with the strong policy preference for determining cases on their merits.[30] The court also recognized that the purpose of entering default is to let the defaulting party know that, by

---

[25] Doc. 45, 11.

[26] *Id.* at 11-12.

[27] *Id.* at 12.

[28] Doc. 45, 12.

[29] *Id.*

[30] Doc. 45, 12-13.

failing to engage, they could lose their right to litigate.[31] It determined that goal was achieved because the United States promptly filed an answer.[32] Thus, the district court denied Passantino's motion for default judgment as moot.[33]

The district court's order also granted the United States' motion for judgment on the pleadings, dismissing his complaint.[34] The court found that Passantino's FTCA claims were barred by § 2680(h)'s intentional torts exception for libel and slander.[35] More specifically, it found that Passantino's allegations all arose from statements, representations, and imputations—actions forming the basis of libel and slander.[36] Furthermore, the district court found that Passantino could not point to any actions independent of these statements and representations capable of forming the basis of another tort claim.[37] The court rejected Passantino's argument that his claims were not based on any defamatory injury, but instead on the publication of

---

[31] Doc. 45, 12-13.

[32] *Id.* at 13.

[33] Doc. 45, 13 n.7.

[34] Doc. 45, 31.

[35] Doc. 45, 25-26.

[36] *Id.* at 19.

[37] *Id.*

private information because it determined that—absent falsity—the statements caused no injury.[38] In addition, the district court rejected Passantino's labeling of his claims as "invasion of privacy" and civil conspiracy, citing this Court's precedent holding that the substance of a claim is what defines it—not a label.[39] And in Passantino's case, the court found that the substance of his claim was defamation.[40] The district court pointed to Passantino repeatedly alleging dissemination of false information to the media, thereby harming his reputation, finding that such allegations are traditionally understood as defamation.[41] It also referenced Black's Law Dictionary and the Second Restatement of Torts' definitions of defamation as encompassing precisely the kind of allegations spread throughout his complaint.[42] The district court cited numerous paragraphs throughout Passantino's complaint alleging publication of false stories and narratives harming him both professionally and personally.[43] And the district court rejected Passantino's argument that he was injured by

---

[38] Doc. 45, 19.

[39] *Id.*

[40] Doc. 45, 19-20.

[41] *Id.* at 20.

[42] Doc. 45, 20-21.

[43] *Id.* at 21-22.

the release of his private information as opposed to any false statements as a failed attempt to sidestep § 2680(h) and the true substance of his allegations.[44]

The district court contrasted Passantino's claims with those in the *Block v. Neal*, 460 U.S. 289 (1983).[45] The district court found that the allegations in *Block* differed from Passantino's, because while the plaintiff in that case brought some claims for conduct barred by § 2680(h), she also sustained injuries completely independent from the barred conduct.[46] Thus, even if the allegations barred by § 2680(h) were removed from the plaintiff's complaint, she could still recover for injuries caused by conduct actionable under the FTCA.[47] By contrast, the district court found that all the injuries described in Passantino's complaint rested on defamatory statements.[48] Thus, unlike the plaintiff in *Block*, the district court found no separate tortious conduct which could form a basis for Passantino's recovery.[49] More specifically, if the defamatory statements were ignored, the

---

[44] *Id.* at 22.

[45] Doc. 45, 22-26.

[46] Doc. 45, 23.

[47] *Id.*

[48] Doc. 45, 23.

[49] Doc. 45, 23-25.

remaining information vindicated Passantino by highlighting his honest character.[50] Furthermore, the court noted that neither Passantino's complaint, nor the judicially noticed documents he submitted in support, contain anything describing any of his private information.[51] In concluding its assessment of whether Passantino's claims were barred by § 2680(h), the district court determined that they were because they were "wholly attributable" to defamatory statements—conduct which § 2680(h) expressly exempts from waiver.[52]

The court's order granting the United States' motion for judgment on the pleadings also found that, even if Passantino's claims were not barred by § 2680(h), they failed to state a valid claim for relief under D.C. law.[53] After explaining that the FTCA only extends federal courts jurisdiction over claims where the United States, if a private person, would be liable under the law of the state where the alleged tortious act occurred, it determined that Passantino's complaint failed to plead valid claims under D.C. law.[54] First, it found that he did not

---

[50] Doc. 45, 24.

[51] *Id.*

[52] *Id.* at 25-26.

[53] Doc. 45, 26.

[54] Doc. 45, 26-30.

allege a valid claim for invasion of privacy.[55] The district court evaluated Passantino's invasion of privacy claim as one for public disclosure of private facts, a subset of invasion of privacy.[56] It determined that he failed to plead three of the five elements necessary to allege a valid private facts claim.[57] Namely, it found that he did not allege sufficient details about any private facts.[58] When it came to whether Passantino had properly pled two other elements of the claim, that the leaked private facts were highly offensive to a reasonable person, and that the public had no legitimate interest in them, the court ruled that he had only made conclusory statements to the former, and he was too vague as to the latter.[59] Thus, the district court found that Passantino failed to plead a valid claim for invasion of privacy.[60]

Second, the district court dismissed Passantino's civil conspiracy claim for failure to state a valid claim under D.C. law.[61] After detailing

---

[55] Doc. 45, 28-30.

[56] *Id.* at 27-28.

[57] Doc. 45, 28-29.

[58] *Id.* at 28-30.

[59] Doc. 45, 29.

[60] *Id.* at 30.

[61] *Id.* at 30-31.

the elements of civil conspiracy under D.C. law,[62] the court found that he failed to plead a valid conspiracy claim because the second element required the existence of an underlying unlawful act.[63] But here, because the court had already determined there was no valid invasion of privacy claim, and Passantino failed to plead anything else, his civil conspiracy claim also failed.[64] Thus, the district court dismissed Passantino's complaint on the basis that it lacked subject matter jurisdiction to hear the case pursuant to § 2680(h), and Passantino's complaint failed to state a valid claim under D.C. law, as required for the United States' sovereign immunity to be waived under the FTCA.[65] On February 13, 2025, Passantino timely noticed his appeal.[66]

---

[62] Doc. 30.

[63] Doc. 45, 30.

[64] *Id.* at 30-31.

[65] *Id.* at 31.

[66] Doc. 47.

### B. Statement of the Facts[67]

#### 1. Passantino represented persons testifying during the congressional hearings concerning the events of January 2021—including Cassidy Hutchinson.

At the time of the events relevant to this case, Passantino was a Washington, D.C. attorney in private practice; he formerly served as Deputy White House Counsel for President Donald Trump.[68] Passantino currently resides in Georgia.[69]

Passantino represented several witnesses before the United States House Select Committee to Investigate the events of January 6, 2021 ("Committee").[70] One such witness was Cassidy Hutchinson, a former Trump White House aide.[71] Passantino met Hutchinson and other Committee witnesses through the Save America Leadership PAC ("Save PAC"), a political action committee that covered Hutchinson's

---

[67] Because the United States prevailed on a motion for judgment on the pleadings, the facts are presented as alleged in Passantino's complaint. To determine whether the movant is entitled to a judgment on the pleadings, a court should "accept as true all material facts alleged in the non-moving party's pleading, and … view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

[68] Doc. 1 ¶¶ 7, 11-12.

[69] Doc. 1 ¶ 7.

[70] Doc. 1 ¶ 14.

[71] Doc. 1 ¶¶ 14, 55.

legal fees.[72] The group contacted Passantino, on Hutchinson's behalf, after the Committee served her with a deposition subpoena in January 2022.[73] Passantino prepared Hutchinson for her deposition by, among other things, instructing her to speak truthfully and to cooperate with the Committee.[74]

### 2. Hutchinson's interactions with the Committee and conclusion of relationship with Passantino

After the Committee interviewed Hutchinson twice, a member of the Committee contacted her directly and allegedly informed her that Passantino was not looking out for Hutchinson's best interests—rather he was looking out for President Trump because he was being paid by the Trump-affiliated Save PAC.[75] Hutchinson and the Committee Member did not share their communications with Passantino.[76] Passantino alleges that this conversation unjustifiably harmed his relationship with Hutchinson.[77] From that point on, Hutchinson

---

[72] Doc. 1 ¶¶ 18–20, 22, 63–65.

[73] Doc. 1 ¶¶ 17, 19-20.

[74] Doc. 1 ¶¶ 23-31.

[75] Doc. 1 ¶ 35.

[76] Doc. 1 ¶ 36.

[77] *Id.*

began communicating with the Committee, and one of its attorneys, without Passantino's knowledge.[78]

On May 12, 2022, the Committee arranged for Hutchinson to be interviewed for a third time, allegedly to "induce Mr. Passantino to obstruct Congress" during the interview.[79] Passantino represented Hutchinson at the third interview.[80] But Hutchinson terminated their attorney-client relationship after the interview.[81]

### 3. Interview transcripts made public.

Hutchinson engaged new counsel after terminating Passantino.[82] After a public appearance on cable television, Hutchinson sat for additional interviews with the Committee.[83] Transcripts of those interviews were subsequently provided to the news media, specifically CNN.[84] Reporters with CNN contacted Passantino to tell him that they had copies of the transcripts, and that they believed the Committee would accuse him of counseling Hutchinson to be

---

[78] Doc. 1 ¶¶ 37-38.

[79] Doc. 1 ¶¶ 39-40

[80] Doc. 1 ¶ 40.

[81] Doc. 1 ¶ 43.

[82] *Id.*

[83] Doc. 1 ¶ 44.

[84] Doc. 1 ¶¶ 45-47.

untruthful in her interviews.[85] Passantino alleges that the Committee provided the transcripts to CNN to intentionally harm his reputation.[86] The Committee later released a summary report stating that it had "substantial concerns regarding potential efforts to obstruct its investigation, including by certain counsel (some paid by groups connected to the former President) who may have advised clients to provide false or misleading testimony to the Committee."[87] Passantino believes this to be aimed at him and intended to ruin his reputation, as he takes issue with the Committee releasing the report without giving him an opportunity to respond to the false allegations.[88]

In December 2022, CNN published an article stating that the Committee claimed to have evidence that an unnamed Trump-affiliated attorney told a key witness to mislead the Committee in its investigation of the events of January 6th.[89] The article named Passantino as the lawyer, and the witness as his then-client Hutchinson.[90] However, Passantino alleges that he learned that CNN

---

[85] Doc. 1 ¶ 46.

[86] Doc. 1 ¶ 47.

[87] Doc. 1 ¶ 49.

[88] Doc. 1 ¶¶ 47, 50.

[89] Doc. 1 ¶ 54.

[90] Doc. 1 ¶ 55.

possessed text messages from Hutchinson showing that the article's accusations were false, as they showed that he told her to comply with the Committee's questioning.[91] He further asserts that the transcripts from Hutchinson 's interviews with the Committee confirmed that Passantino never told her to lie.[92] Passantino alleges that the Committee leaked private information, which included information that was not true, to CNN."[93] According to him, the Committee published the information to "advance a preordained political and legal narrative" that was "outrageous" in nature.[94]

### 4. Passantino's alleged harms

Passantino asserts that the Committee's publication of the details of his relationship with Hutchinson—specifically their attorney-client relationship—was intentional and harmed his reputation.[95] He claims that the publication of his so-called "private information," which really amounted to the publication of interview transcripts from the Committee's interviews of Hutchinson regarding the January 6th

---

[91] Doc. 1 ¶ 52.

[92] Doc. 1 ¶¶ 59-60.

[93] Doc. 1 ¶ 53.

[94] Doc. 1 ¶¶ 5-6, 34

[95] Doc. 1 ¶¶ 69, 71.

events, and false allegations, forced him to separate from one of his law firms.[96]

## C. Standard of Review

*De novo* is the standard of review for the district court's order granting judgment on the pleadings. *See Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 940 (11th Cir. 2023).

The district court's decisions to accept the United States' late answer and set aside default are reviewed for an abuse of discretion. *See Dvoinik v. Rolff*, No. 23-14147, 2024 WL 2974475, at *2 (11th Cir. June 13, 2024); *Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir. 1988); *Robinson v. United States*, 734 F.2d 735, 739 (11th Cir. 1984); *cf. Staley v. Owens*, 367 F. App'x 102, 105 (11th Cir. 2010) (finding district court's decision to grant out of time motion and accept late motion for summary judgment did not constitute an abuse of discretion).

The district court's denial of Passantino's motion for default judgment is also subject to the abuse of discretion standard. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015).

---

[96] Doc. 1 ¶¶ 69, 71, 74.

## SUMMARY OF THE ARGUMENT

The district court correctly concluded that Passantino's complaint fails for two independent reasons. First, his claims are barred by the United States' sovereign immunity because they arise from libel and slander, both of which are intentional torts exempted from the FTCA's limited waiver of sovereign immunity. Second, Passantino failed to plead a valid claim under state law.

Absent a waiver of sovereign immunity, the district court did not have subject matter jurisdiction to hear his claims. Furthermore, a lack of subject matter jurisdiction cannot be waived. Thus, whether the district court abused its discretion by accepting the United States' late answer, or setting aside its default—which it did not—is inconsequential. Irrespective of any late answer or default, the district court was obligated to dismiss Passantino's complaint because it lacked subject matter jurisdiction over this case. Accordingly, this Court should affirm the district court's order granting judgment on the pleadings.

The district court's order granting the motion to set aside the United States' default should be affirmed because the district court did not abuse its discretion. A district court's decision to set aside default is reviewed for an abuse of discretion. Here, the district court did not apply an incorrect legal standard, follow improper procedures,

or make clearly erroneous factual findings; it therefore did not abuse its discretion when it found good cause to set aside the default.

Finally, the district court did not abuse its discretion in denying Passantino's motion for the entry of default judgment. Rule 55(d) bars entry of default judgment against the United States absent proof of the underlying claim satisfactory to the district court. Passantino failed to meet this bar. The district court's order should be affirmed.

## ARGUMENT AND CITATIONS OF AUTHORITY

**1. The district court correctly granted the United States' motion for judgment on the pleadings.**

    **A. The district court properly considered the United States' motion and whether it had subject matter jurisdiction to hear Passantino's claims.**

The district court was right to rule on the United States' motion for judgment on the pleadings. Passantino argues that the district court wrongly ruled on the motion because it was filed while the United States was in default and after a late answer. But this argument improperly elevates procedure over the threshold question of subject matter jurisdiction. As the Supreme Court has instructed, "[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006). "Rule 12(h)(3) instructs: whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." *Id.* at 506. Moreover, "subject-matter jurisdiction underlies a court's power to hear a case." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020). "Federal courts have an obligation to examine sua sponte their own jurisdiction over a case." *Id.* Some circuits have even held that district courts must assess subject matter jurisdiction before

entering default. *See Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("The Tenth Circuit ha[s] held that, '[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties. We agree.").

Given the primacy of subject matter jurisdiction, the district court was right, and even required, to assess whether it had subject matter jurisdiction to hear Passantino's claims, notwithstanding the United States' late answer. Thus, contrary to Passantino's argument, the district court was not precluded from considering the United States' motion for judgment on the pleadings even if it had declined to allow the late answer.[97]

## B. The district court lacked subject matter jurisdiction over Passantino's claims because they are barred by 28 U.S.C. § 2680(h).

The district court could not hear Passantino's claims because they are barred by 28 U.S.C. § 2680(h). Section 2680(h) lists various intentional torts that are not covered by the FTCA's sovereign

---

[97] As discussed below, the district court correctly found good cause to accept the United States' late answer and to set aside default. Thus, it was also proper for the court to review the United States' motion for judgment on the pleadings.

immunity waiver, and thus, federal courts lack subject matter jurisdiction to hear them. *See Millbrook v. United States*, 569 U.S. 50, 52 (2013). More specific to Pasasantino's claims, § 2680(h) maintains the United States' sovereign immunity as to any claim "arising out of . . . libel or slander." 28 U.S.C. § 2680(h). *See id.* Because the FTCA is a limited waiver of sovereign immunity, FTCA "exceptions 'must be strictly construed in favor of the United States,' and when an exception applies to neutralize what would otherwise be a waiver of immunity, a court will lack subject matter jurisdiction over the action." *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015). Consequently, here, even accepting all the allegations of the complaint as true, § 2680(h) bars Passantino's claims because they undoubtedly arise out of libel and slander.

While Passantino argues that his claims are more properly classified as a public disclosure of private facts claim rather than libel or slander, this Court's precedent demonstrates that his claims nonetheless arise from the two excluded defamation-based torts. Despite § 2680(h) listing specific torts, this Court does not strictly construe the exception to include only those named torts, but also situations where injuries arise from a listed tort. *See Zelaya* 781 F.3d at 1333. And a claim "arises out of" a tort listed in § 2680(h) where the governmental conduct essential to the plaintiff's claim is encompassed

by the tort. *See O'Ferrell v. United States*, 253 F.3d 1257, 1266 (11th Cir. 2001) ("[T]he exceptions in the FTCA are not limited to the torts specifically named therein, but rather encompass situations where 'the underlying governmental conduct which constitutes an excepted cause of action is essential to plaintiff's claim'") (*citing Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986)). This includes situations where, as Passantino does here, the claimant labels the tort as one not listed within § 2680(h). *See Zelaya*, 781 F.3d at 1333-34 (further explaining that "a plaintiff cannot circumvent the [intentional tort] exception simply through the artful pleading of its claims").

Passantino's claims arise from libel and slander because, at their core, they rest on his assertions of the Committee's statements being false. Passantino consistently talks about a false and harmful narrative pushed by the Committee—namely that he instructed Hutchinson to lie to the Committee.[98] Without that falsity, there is no harm, as otherwise, the now-public transcripts and information merely state that he did not tell Hutchinson to lie.[99] And because defamation is commonly understood to be false statements injurious to one's

---

[98] Doc. 1 ¶¶ 2,5-6, 34, 48-49

[99] Doc. 1 ¶¶ 24–28, 30.

25

reputation and published to a third party,[100] the Committee's alleged defamatory conduct is the sole basis of Passantino's complaint.

### 1. Even if Passantino's claims are private facts claims, they are still barred by § 2680(h).

Passantino contends that his claims are not for libel and slander, but public disclosure of private facts. Regardless, they are still barred by § 2680(h) because, as this Court has ruled similarly in the past, they nonetheless arise out of libel and slander. The FTCA extends federal courts' jurisdiction to consider only claims in which "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under D.C. law, private facts claims are a subset of the tort of invasion of privacy. *See Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061 (D.C. Ct. App. 2014). This Court has found, several times, that invasion of privacy claims are barred by § 2680(h) where the conduct essential to the claim constitutes a tort excepted under § 2680(h). In *O'Ferrell*, this Court affirmed the dismissal of invasion of privacy based FTCA claims that arose from alleged leaks to the media of misrepresentations implicating the plaintiff in mail bombings and threats. *O'Ferrell*, 253

---

[100] *See* Restatement (Second) of Torts § 558 (Am. L. Inst. 1977); *see also Defamation, Black's Law Dictionary* (12th ed. 2024).

F.3d at 1266. While the plaintiffs, like Passantino, argued that their invasion of privacy claims did not constitute libel and slander—in their case because they suffered mental harm from reading the false statements—this Court nonetheless rejected any such distinction. *See id.* at 1266. The *O'Ferrell* Court pointed to the government's alleged underlying conduct that was key to their claims—publishing to third parties statements that were false and defamatory—and instead found that it constituted an excepted tort under § 2680(h). Similarly, in *Cadman v. United States*, the plaintiff tried to bring a false light invasion of privacy claim (as well as a negligence claim) related to statements made by Immigration and Customs Enforcement agents about the plaintiff's handling of an agency program. *See Cadman v. United States*, 541 F. App'x 911 (11th Cir. 2013). Although a false light invasion of privacy claim is not one of the torts specifically listed in § 2680(h), this Court affirmed the district court's dismissal of the complaint for lack of subject matter jurisdiction. *See id.* at 914. The Court concluded that, despite the plaintiff's attempt to relabel his claims, "all of the allegedly tortious actions" were "based on 'statements, representations, or imputations'" by the government, and there was no other independent government action on which the plaintiff's claims could rest. *Id.* This closely aligns with Passantino's claims, as he attempts to characterize them as private facts claims

because of the statements allegedly provided to CNN.[101] But like *Cadman*, Passantino's alleged injuries all depend on the falsity of the Committee's statements. As Passantino states himself, he suffered the consequences of "false actions taken against" him by the Committee.[102] Further, he repeatedly claims that he never told Hutchinson to lie.[103] Rather, Passantino claims that the Committee nonetheless released a report implying that he "may have advised clients to provide false or misleading testimony."[104] Passantino also emphasizes that the Committee created a "harmful" and "outrageous narrative" around his, as he put it, "non-existent" efforts to impede their investigation by directing Hutchinson to lie.[105] Passantino's brief tries to distance his claims from *Cadman* because he argues that his harm does not depend on the falsity of the Committee's statements.[106] But in addition to the previously mentioned allegations in his complaint stating otherwise,[107] Passantino's injuries cannot be untied

---

[101] Doc. 1 ¶ 83.

[102] Doc. 1 ¶ 74.

[103] Doc. 1 ¶¶ 23-30, 52.

[104] Doc. 1 ¶ 49.

[105] Doc. 1 ¶¶ 2,5-6.

[106] Doc. 1 ¶¶ 48-49.

[107] Doc. 1 ¶¶ 2,5-6.

from the Committee's allegedly false statements. As the district court recognized, if this Court ignores the allegedly false statements by the Committee that were supposedly shared with CNN, there is no tort at all: Passantino would only be taking issue with the Committee releasing hearing transcripts and speaking with Hutchinson. His private facts claim cannot stand without the underlying false nature of the Committee's statements.

Thus, Passantino's situation is essentially the opposite of that in *Block v. Neal*, U.S. 289, 296-97 (1983). Although the plaintiff in *Neal* alleged a misrepresentation claim that was barred by § 2680(h), the plaintiff also — unlike Passantino — suffered injuries purely from the government's negligence. *See Neal*, 460 U.S. at 297-98. By contrast, here the alleged harm cannot be separated from the claimed falsity of the Committee's statements about Passantino's representation of Hutchinson. In fact, the only private facts leaked by the transcripts— taking the allegations of Passantino's complaint as true—are that he instructed Hutchinson to be truthful.[108] In *Neal*, a negligence claim remained after the government's misrepresentations were removed as barred by § 2680(h). *See id.* But in Passantino's case, the only thing left

---

[108] "As the transcripts of Ms. Hutchinson's testimony make clear, she confirmed under oath that Mr. Passantino did not advise her to lie to the Committee or perjure herself." Doc. 1 ¶ 59.

after removing any defamation or false light claims is a complaint objecting to the publication of truthful statements about his character. Thus, even if his claim is characterized as private facts claim, at its core it necessarily arises from libel and slander and therefore § 2680(h) bars Passantino's claims.

### 2. Any FTCA claim for civil conspiracy also fail under § 2680(h).

Passantino's civil conspiracy claim fails under § 2680(h) for the same reasons as his private facts claim — because it arises from libel and slander. Passantino seems to allege that the Committee conspired with CNN to publish false information about his relationship with Hutchinson [109] In particular, he claims the Committee wanted CNN to claim that Passantino told Hutchinson to lie to the Committee to obstruct its investigation.[110] To the extent that Passantino alleges civil conspiracy based on an agreement between the Committee and CNN to publish the false news article, such a claim is based on libel. As discussed above, libel is a tort listed as excepted by § 2680(h). A conspiracy claim based on a tort excepted by the statute "arises out of" an excepted tort and thus is also barred for lack of subject matter jurisdiction. *Cf. Goble v. Ward*, 628 F. App'x 692, 699 (11th Cir.

---

[109] Doc. 1 ¶¶ 54-55, 87-90.

[110] Doc. 1 ¶¶ 54-55.

2015) ("Although Count IV alleges civil conspiracy, not misrepresentation, § 2680(h)'s clause forbidding '[a]ny claim arising out of ... misrepresentation [ or] deceit' applies to Count IV.'") (internal citations omitted). Consequently, the district court was also right to dismiss Passantino's conspiracy claims under § 2680(h).

### C. Passantino failed to state a valid claim for relief under District of Columbia law.

Even if Passantino's claims are not barred by sovereign immunity, they still fail because he has not stated a valid claim for invasion of privacy or civil conspiracy under D.C. law. In FTCA cases, the substantive law governing the underlying tort is determined by the law of the place where the alleged tortious conduct occurred. *See* 28 U.S.C. § 1346(b)(1). Here, the alleged conduct took place in Washington D.C., thus D.C. law governs.[111]

#### 1. Passantino failed to plead a valid public disclosure of private facts claim.

Under D.C. law, "[i]nvasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded." *Wolf v. Regardie*, 553 A.2d 1213, 1216–17 (D.C. Ct. App. 1989). The four constituent torts are: (1) intrusion upon one's solitude or seclusion; (2) public disclosure of

---

[111] Doc. 1 ¶ 7.

private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit. *See Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061 (D.C. Ct. App. 2014). Because Passantino fashions his claims as those for "public disclosure of private facts,"[112] he must show: 1) publicity; 2) absent waiver or privilege; 3) given to private facts; 4) in which the public has no legitimate concern; and 5) which would be highly offensive to a reasonable person of ordinary sensibilities. *See Wolf*, 553 A.2d at 1220.

As an initial matter, Passantino does not specify what "private facts" the Committee allegedly disclosed. To the extent that he references the Committee's alleged leak of the transcripts of Hutchinson's interviews, he fails to specify the particular facts contained in those transcripts that he contends are private or why he believes they are private. Similarly, he does not allege sufficient facts to show that private facts at issue do not involve a matter of public concern, or that their disclosure would be highly offensive. His claim fails on this basis alone because his Complaint does not give the United States the "fair notice" required by Rule 8(a). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (holding that a complaint fails to state a claim when it does not "give the defendant fair notice

---

[112] Doc. 1, ¶¶ 82, 83.

of what the . . . claim is and the grounds upon which it rests); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (holding that bare assertions that amount to nothing more than a formulaic recitation of the elements are conclusory and not entitled to be assumed true).

While it is correct that Passantino need only plead a short and plain statement for relief, as the district court noted, he failed to provide essentially any details intimating any facts of a private nature were released. Rather, he relies on conclusory labels which simply restate the elements of a private facts claim—only using the word "private" to describe the leaked facts without any additional details. As *Twombly* discussed, detailed factual allegations are not required; but they must be enough to suggest the underlying claims are true and more than mere speculation. *See Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true"). Here, Passantino repeatedly describes the allegedly leaked facts as private, and he asks that this Court deem them such simply because they involved his representation of Hutchinson. Yet he gives nothing more to push these allegations from possible to plausible. *See id* at 557 (stating that merely possible allegations fall short of the plausible ones needed to state a valid claim for relief). And that is not sufficient to plead a valid claim for relief.

*See id.* That Passantino seeks discovery to confirm whether the Committee leaked his private information through conversations, or by publishing the transcripts of its interviews with Hutchinson, further demonstrates that he cannot and has not plead plausible private facts claim. *See Iqbal*, 556 U.S. at 678–79. (finding that Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions).

Reviewing the transcripts as a whole, Passantino's allegations do not satisfy the elements of a public disclosure claim. They were not "private" in any meaningful sense; the Committee always possessed the authority to release them publicly, and indeed, Passantino alleges that they were formally released to the public after the Committee released its final report.[113] Nor has Passantino alleged how the transcripts included private facts about him. The tort of public disclosure of private facts is intended to protect the disclosure of facts regarding an individual's private life. *See* Restatement (Second) of Torts § 652D (1977), Comment b ("The rule stated in this Section applies only to publicity given to matters concerning the private, as distinguished from the public, life of the individual."). Passantino's legal representation of Hutchinson in a high-profile congressional investigation does not involve an intimate detail of his private life. *See*

---

[113] Doc. 1 ¶ 58.

*Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 12 (D.D.C. 2013) (dismissing claim for public disclosure of private facts where plaintiff's status and achievements as a medical doctor practicing in a university hospital would seem to be information that is already public); *Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 21-22 (D.D.C. 2010) (dismissing claim for public disclosure of private facts where the allegedly private fact "would have been evident to at least a segment" of the community). This is especially true where Passantino alleges that he is a prominent and well-renowned attorney.[114] Finally, it should be noted that the attorney client privilege, which Passantino repeatedly alleges was violated by the Committee when it interviewed Hutchinson,[115] is generally viewed as being held by the client—not the attorney—and may be freely waived by that client. *Cf Jones v. United States*, 828 A.2d 169, 175 (D.C. 2003) (finding that communications having been made by client to attorney, and client permanently protecting that information from disclosure, as requirements for application of attorney client privilege). Thus, to the extent that Hutchinson provided any information about conversations she had with Passantino to the Committee, she was free to waive her right to keep that information private.

---

[114] Doc. 1 ¶¶ 7, 11-12.

[115] Doc. 1 ¶¶ 2, 4, 36, 69, 88.

As to the fourth element, the transcripts involved a matter of public concern: an investigation carried out by a select committee of the U.S. House of Representatives. The underlying interviews of Hutchinson were conducted by the Committee to investigate the actions of public officials. The public has an interest in an investigation carried out by legislative branch officials of a widely publicized national event like the one that occurred on January 6, 2021. *See Pearson v. Dodd*, 410 F.2d 701, 703 (D.C. Cir. 1969) (finding that publication of authors' version of U.S. Senator's relationship with lobbyists for foreign interests, and their biography of his career, was a matter of public interest not subject to an invasion of privacy claim); Restatement (Second) of Torts § 652D cmt. g. ("News" includes publications concerning, inter alia, crimes, arrests, deaths resulting from drugs, and other "matters of genuine, even if more or less deplorable, popular appeal."). Thus, Passantino fails to plead facts sufficient to establish the public concern element of a private facts claim.

In an attempt to overcome the public concern element, Passantino relies on the dissent in *Bartnicki v. Vopper*, which stated that communications between public figures can nonetheless be private and worthy of protection. *See Bartnicki v. Vopper*, 532 U.S. 514, 554-55 (2001) (Rehnquist, J., dissenting). However, *Bartnicki* involved illegally

intercepted and wiretapped phone conversations that were disclosed by a third party, as opposed to the participants. *See id.* at 517-528. Here, all of Passantino's alleged private facts relate to the Committee's discussions with Hutchinson during panel interviews—not intercepted conversations with him. In sum, Passantino's failure to sufficiently allege the disclosure of facts that are not a matter of public concern required the dismissal of his claim. *See Parnigoni*, 681 F. Supp. 2d at 21-22 ("'It is a defense to a claim of invasion of privacy that the matter publicized is of general public interest.'") (quoting *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 589 (D.C. Ct. App. 1985)).

Finally, Passantino's complaint asserts that the transcripts, far from being "highly offensive to a reasonable person of ordinary sensibilities," vindicated Passantino by showing that he did not advise Hutchinson to lie, perjure herself, or obstruct the Committee's investigation.[116] *See Budik*, 986 F. Supp. 2d at 12 (holding that the disclosure of plaintiff's status and achievements as a medical doctor is not the type of information that would be highly offensive to a reasonable person of ordinary sensibilities); *Johnson v. Evening Star Newspaper Co.*, 344 F.2d 507, 508 (D.C. Cir. 1965) (affirming dismissal of claims for public disclosure of private facts where the newspaper identified the plaintiff as an innocent victim of a mistaken

---

[116] Doc. 1 ¶¶ 15, 59.

identification as a person who committed serious crimes). Passantino's brief argues that the mere fact that the information released in the transcripts involved him and Hutchinson, during a period in which he served as her attorney, makes them highly offensive. But he provides no supporting citation, and conclusory allegations do not suffice. In reality, any information relating to Passantino that would be "highly offensive" involve allegedly false statements and narratives to which he objects, not any private facts contained in the transcripts.

Stepping back, it is also worth noting that Passantino consistently ignores the fact that the transcripts reveal information that his client Hutchinson disclosed to the Committee. Thus, the information published had already lost its private and privileged nature when the Committee received it—again differentiating the facts here from those in *Bartnicki*. This is especially true considering the attorney client privilege is held by the client—not the attorney. *Cf Jones*, 828 at 175. Since Passantino failed to sufficiently allege facts to support at least three required elements of the tort, the district court's dismissal of Passantino's invasion of privacy claim should be affirmed.

### 2. Passantino also failed to plead a valid civil conspiracy claim.

To establish a prima facie case of civil conspiracy, Passantino must prove: (1) an agreement between two or more persons (2) to

participate in an unlawful act or a lawful act in an unlawful manner, (3) injury caused by an unlawful overt act performed by one of parties to the agreement, (4) pursuant to and in furtherance of the common scheme. *See Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. Ct. App. 2001). D.C. law does not recognize an independent tort action for civil conspiracy. *See id.* Thus, to allege a valid civil conspiracy claim, Passantino must allege facts sufficient to state a claim for his underlying invasion of privacy claim. *See id.* As shown above, he failed to do so. Consequently, his civil conspiracy claim fails as well.

Passantino's Complaint also fails to allege specific facts sufficient to establish an agreement between the Committee and a co-conspirator, one of the essential elements of a civil conspiracy claim. *See Weishapl*, 771 A.2d at 1023. Conclusory allegations that an agreement exists do not suffice to state a claim under Rule 8(a). *See Twombley*, 550 U.S. at 556-57. Therefore, Passantino's bare allegation, without any supporting facts, that the "[Committee] and its agents engaged in the foregoing actions in agreement with unnamed co-conspirators, including individuals that worked at media companies, to accomplish their goal of invading Mr. Passantino's privacy and attorney-client relationship to cause harm to his practice of law and standing in the community," are insufficient to state a claim for civil

conspiracy. Accordingly, this Court should affirm the district court's dismissal of Passantino's civil conspiracy claim.

2. **The district court did not abuse its discretion by finding good cause to allow a late answer, set aside default, or by dismissing Passantino's motion for default judgment.**

A district court's decision on a motion to set aside default is reviewed only for abuse of discretion. *See Harrell*, 858 F.2d at 669. This is a deferential standard. *See In re Deepwater Horizon BELO Cases*, 119 F.4th 937, 944 (11th Cir. 2024) ("This standard 'places a heavy thumb—really a thumb and a finger or two—on the district court's side of the scale . . . Under the abuse of discretion standard, we defer to the district judge's decision unless it is 'manifestly erroneous'"). Abuse is only found where a district court: 1) applies an incorrect legal standard; 2) follows improper procedures in making a determination; or 3) makes findings of fact that are clearly erroneous. *See Stansell v. Revolutionary Armed Forces of Colombia*, 120 F.4th 754, 761 (11th Cir. 2024).

A. **The district court applied the correct legal standard.**

The district court correctly applied the good cause standard to determine that it should accept the United States' late answer and to set aside default. As the court explained, it was required to assess

whether to accept the United States' late answer for good cause, rather than excusable neglect, because Passantino sought entry of default based on untimeliness.[117] While out of time answers are normally evaluated under the stricter excusable neglect standard, good cause is the correct standard where a motion for default is based on an untimely answer. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) ("Perez was entitled to have her motion to file an out-of-time answer to the counterclaim considered under the 'good cause' standard applicable to setting aside a default rather than under the 'more rigorous,' 'excusable neglect' standard"); *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1267 (11th Cir. 2003) (noting good cause as the proper standard for setting aside default). Thus, the district court properly used the good cause standard to assess the United States' motions to file a late answer and to set aside default.

**B. The district court followed proper procedures.**

The district court's order found good cause only after assessing the factors typically associated with the mutable standard.[118] *See Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) ("Good cause is a mutable

---

[117] *Id.* 9 n.6.

[118] Doc. 45, 10-13.

standard, varying from situation to situation"). It assessed the factors

standardly used in determining good cause: whether the default was

culpable or willful, whether setting it aside would prejudice the

adversary, whether the defaulting party presents a meritorious defense.

*See id.* It also looked at other factors courts sometimes use, such as

whether the public interest was implicated and whether the defaulting

party acted promptly to correct the default.[119] *See id.*

First, the court found that there was nothing to suggest that the

United States acted willfully or culpably because it acted promptly to

address the default—even noting that courts are hesitant to find

willfulness where litigants act promptly.[120] Second, the district court

found that because Passantino's ability to litigate the case was not

prejudiced by the two-week filing delay.[121] It highlighted proceedings

being stayed and discovery having not yet begun as further reasons

why there was no harm to Passantino's case.[122] Third, the district

court found that the United States presented meritorious defenses

that disposed of the case entirely.[123] Finally, the district court found

---

[119] Doc. 45, 10-12.

[120] Doc. 45, 10-11.

[121] *Id.* at 12.

[122] Doc. 45, 11-12.

[123] *Id.* at 12.

that it was in the public interest do so, as it aligned with the policy preference of deciding cases on the merits.[124]

## C. The district court's factual findings were not clearly erroneous.

The district court did not make any clearly erroneous factual findings when it found good cause to accept the late answer and set aside default. *See Stansell*, 120 F.4th 754 (citing clearly erroneous factual findings as a basis for finding abuse of discretion). The clearly erroneous standard is highly deferential. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1280 (11th Cir. 2009). The district court's determination must be affirmed so long as it is plausible under the record. *See id.* Here, the district court found that the United States did not act willfully or culpably in missing the responsive pleading deadline by looking to how quickly it addressed its untimeliness. The court did so after making the following factual findings: the United States' filed an extension motion, renewed that request prior to entry of default, and it promptly filed its answer and motion to set aside default.[125] It also found that the timeline of the United States' filings did not unduly prejudice Passantino, because

---

[124] Doc. 45, 12-13.

[125] Doc. 45, 10-11.

the proceeding were only delayed two weeks.[126] Hence, the district court looked at the dates of the United States' filings, chose to view them as prompt instead of delayed, and made its factual findings accordingly. Contrary to Passantino's assertions, such findings cannot be characterized as clearly erroneous. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Hodges v. United States*, 78 F.4th 1365, 1374–75 (11th Cir. 2023). In sum, the district court did not make any clearly erroneous factual findings, and it did not abuse its discretion in accepting the United States' late answer and setting aside default.

### D. Passantino's arguments that the district court abused its discretion fall short.

Passantino's arguments regarding the district court's consideration of the late answer and motion for judgment on the pleadings contain two main errors. First, Passantino's argument that the district court should have applied the excusable neglect standard to the United States' late answer is incorrect. As the district court's order explained, and as was previously discussed in this brief, the excusable neglect standard is inappropriate for determining whether to accept a late

---

[126] *Id.* at 11-12.

answer where a party seeks default based on the late filing. Rather, the good cause standard applies. *Perez* at 1335.[127]

Second, Passantino's arguments that the district court abused its discretion in finding good cause fail for reliance on inapposite case law. Passantino first cites *In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) (per curiam). However, the *Knight* court applied the excusable neglect standard without analyzing whether it was the appropriate standard. In contrast, this Court, in *Perez,* carefully considered whether the good cause or excusable neglect standard should be applied in deciding whether to set aside a default and concluded that the former should apply. *See Perez,* 774 F.3d at 1338. Therefore, *Knight*'s application of the excusable neglect standard is inapposite here.

Next, Passantino cites *Mclaughlin v. LaGrance,*. *See* 662 F.2d 1385, 1387-88 (11th Cir. 1981). However, *McLaughlin* did not involve default because the late filing was not an initial responsive pleading. *See id.* Passantino cites to *Sec. & Exch. Comm'n v. Newton*, an unpublished district court case, for the proposition that the district court was wrong to find good cause here for the United States. *Newton*, however, is readily distinguishable for multiple reasons. Unlike here, the *Newton* court granted the defendant's motion for an

---

[127] Doc. 45, 9 n.6.

extension of time to file an answer, but the defendant nonetheless still failed to file by the extended deadline. *See* Defendant's Answer, *Sec. & Exch. Comm'n v. Newton*, No. 11-61455-CIV-ZLOCH, 2012 WL 13005863, (S.D. Fla. Feb. 3, 2012). When the defendant in *Newton* eventually filed his answer, it was four months late. *See id.* Here, the United States submitted multiple extension motions and ultimately filed its answer only two weeks after the initial deadline. Moreover, the delay was due to the United States' attempt to negotiate with Passantino's counsel. Finally, even if the Court were to find the Newton's court's reasoning persuasive, that would not be sufficient to find an abuse of discretion. In sum, Passantino's arguments for why the district court erred are inapplicable to the facts here.

### E. The district court did not abuse its discretion in denying Passantino's motion for default judgment as moot.

The district court also did not abuse its discretion in denying Passantino's motion for default judgment as moot. Once the district court found that the default should be set aside, Passantino's motion for default judgment was rendered moot since a default judgment can only be entered where a party is in default. *See Harrell*, 858 F.2d at 669.

### F. Even if the district court abused its discretion by setting aside the default, Passantino failed to meet Rule 55(d)'s requirements to enter default judgment against the United States.

Even if the district court had abused its discretion by setting aside default—and it did not—default judgment could not be entered because Passantino cannot prove his claims. "A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court." Fed. R. Civ. P. 55(d). As shown above, Passantino cannot establish viable claims under the FTCA. Default judgment is improper under these circumstances. *See Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) ("Since the government responded to the motion for default judgment promptly, indicating that it had not abandoned the litigation, and since the district court ultimately found plaintiff's claim unable to withstand summary judgment, the refusal to enter the default was not an abuse of discretion"). Thus, this Court should affirm the district court's denial of Passantino's motion for default judgment.

## CONCLUSION

The district court's orders should be affirmed.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*

*/s/ A. Jonathan Jackson*
A. JONATHAN JACKSON
*Assistant United States Attorney*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,063 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared by a proportionally spaced typeface using Microsoft Word 365-word processing software in 14-point Goudy Old Style.

June 30, 2025

/s/ A. Jonathan Jackson

A. JONATHAN JACKSON
*Assistant United States Attorney*

# CERTIFICATE OF SERVICE

Today, this brief was uploaded to the Court's website using the CM/ECF system, which automatically sends notification to the parties and counsel of record.

June 30, 2025

/s/ A. Jonathan Jackson

A. JONATHAN JACKSON
*Assistant United States Attorney*